# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| WILLIAM PLAGENS, Individually and on behalf of all others similarly situated, | Case No: |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | JURY TRIAL DEMANDED |
| JENNIFFER D. DECKARD, MARK E. BARRUS, MICHAEL F. BIEHL, ANDREW D. EICH, RICHARD A. NAVARRE, | |
| Defendants. | |

Plaintiff William Plagens ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of public documents and announcements issued by Covia Holdings Corporation ("Covia") f/k/a Fairmount Santrol Holdings Inc. ("Fairmount Santrol" and, collectively with "Covia," the "Company"), United States Securities and Exchange Commission ("SEC") filings, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Covia and/or Fairmount Santrol securities between March 15, 2016 and June 29, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Covia and/or Fairmount Santrol securities during the Class Period and was economically damaged thereby.

7.      Defendant Jenniffer D. Deckard ("Deckard") has served as the President and Chief Executive Officer ("CEO") of Fairmount Santrol from the start of the Class Period to June 2018, when Fairmount Santrol merged with Unimin. Defendant Deckard also served as the President and CEO of Covia from June 2018 to March 2019.

8.      Defendant Mark E. Barrus ("Barrus") has served as the interim Chief Financial Officer ("CFO") of Fairmount Santrol from the start of the Class Period to May 2016.

9.      Defendant Michael F. Biehl ("Biehl") has served as the CFO of Fairmount Santrol from May 2016 to May 2018.

10.     Defendant Andrew D. Eich ("Eich") has served as the CFO of Covia from June 2018 to the end of the Class Period.

11.     Defendant Richard A. Navarre ("Navarre") has served as the CEO of Covia from September 2019 to the end of the Class Period.

12.     Each of the Defendants:

        (a)      directly participated in the management of the Company;

        (b)      was directly involved in the day-to-day operations of the Company at the highest levels;

        (c)      was privy to confidential proprietary information concerning the Company and its business and operations;

        (d)      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

        (e)      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

## RELEVANT NON-PARTY

13.     Covia purports to be in the business of minerals and materials solutions for the industrial and energy markets, including producing proprietary sand for use in fracking. Covia is incorporated in the state of Delaware and its headquarters are located at 3 Summit Park Drive, Suite 700, Independence, OH 44131. Covia shares traded on the New York Stock Exchange ("NYSE") under the ticker symbol "CVIA." On June 30, 2020, NYSE delisted Covia stocks, and now the Company's shares trade over-the-counter ("OTC") under the ticker symbol "CVIAQ." Prior to a merger with Unimin Corporation ("Unimin") on or about June 2018, shares of Fairmount Santrol traded on the NYSE under the ticker symbol "FMSA." On or about June 1, 2018, Fairmount Santrol and Unimin entered a strategic combination, whereupon Fairmount Santrol shareholders received approximately $0.73 in cash consideration and .2 shares of Covia for each held share of Fairmount Santrol. Any remaining Fairmount Santrol shares that couldn't be converted into a whole Covia share were redeemed for cash. Fairmount Santrol was headquartered in Chesterland, OH.

14.     On June 29, 2020, the Company announced that it filed for Chapter 11 bankruptcy in the United States Bankruptcy Court in the Southern District of Texas.

## DEFENDANTS' MISCONDUCT
### Background

15.     In the 2010s, as fracking became widely accepted and brought the U.S. closer to energy

4

independence. Sand, used as a proppant, is an integral component of fracking. Proppant sand became a growing business. In a competitive industry, the Company differentiated itself with its purportedly high-quality fracking sand. The Company marketed the new products to the biggest drillers. Drillers paid a premium at the time for specialized sand from Fairmount and other producers, seeking to improve output by any means. At its peak price in the mid-2010s, a type of sand whose grains are coated with resin went for $250 a ton, a markup of $150 a ton over the cost of raw sand.

**Materially False and Misleading**
**Statements Issued During the Class Period**

16.     On March 15, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's fiscal year 2015 financial results and position. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Deckard and Barrus attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

17.     The 2015 10-K discussed the Company's alleged proprietary proppant, stating in part:

> "*Develop and Commercialize High Performance Proprietary Proppants. **We have a history of developing innovative technologies that increase the effectiveness of well completions, from conventional wells to the most complex, multi-stage horizontal wells.*** We have a new state-of-the-art research and development facility and a team of scientists, material engineers and process engineers focused on developing innovative and proprietary proppants."

> (Emphasis added.)

18.     On March 9, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's fiscal year 2016 financial results and position. The 2016 10-K contained SOX certifications signed by

Defendants Deckard and Biehl attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

19.     The 2016 10-K discussed the Company's alleged proprietary proppant, stating in pertinent part:

> "*Coated Proppant.*
> **We coat a portion of our API-spec produced sand with resin to enhance its performance as a proppant** using proprietary resin formulations and coating technologies.
>
> *          *          *
>
> We have a history of partnering with our customers to **develop innovative solutions to enhance the effectiveness of well completions**, from conventional shallow wells to the most complex, multi-stage, horizontal wells.  The nature of our vertically integrated model allows us to participate in each phase of proppant manufacturing and delivery and provides us a unique perspective into the current and future needs of our customers.  **Our technical sales team works closely with market participants to demonstrate the value proposition our proppants offer** and stimulate market demand using data indicating enhanced hydrocarbon recoveries."
>
> (Emphasis added.)

20.     In May 2017, the Company undertook internal investigations of its claims that its proprietary proppants performed better than ordinary sand. Fairmount Santrol scientists testified that, according to internal tests, the Company's most-marketed products did not perform much better than ordinary sand. However, the Company did not act on this information and continued to market its proprietary proppants as better than ordinary sand.

21.     Also in 2017, a Fairmount Santrol whistleblower filed a whistleblower complaint with the SEC.

22.     On March 13, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's fiscal year 2017 financial results and position. The 2017 10-K contained SOX certifications signed by

Defendants Deckard and Biehl attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.     The 2017 10-K discussed the Company's alleged proprietary proppant, stating in relevant part:

> "*Value-Added Proppants.*
> **We coat a portion of our API-spec produced sand with resin to enhance its performance as a proppant** using proprietary resin formulations and coating technologies.
>
> *       *       *
>
> **Research and Development and Technical Innovation**
> **We have a history of partnering with our customers to develop innovative solutions to enhance the effectiveness of well completions**, from conventional shallow wells to the most complex, multi-stage, horizontal wells.  The nature of our vertically integrated model allows us to participate in each phase of proppant manufacturing and delivery and provides us a unique perspective into the current and future needs of our customers.  **Our technical sales team works closely with market participants to demonstrate the value proposition our proppants offer and stimulate market demand using data indicating enhanced hydrocarbon recoveries.**"

> (Emphasis added.)

24.     On or about June 1, 2018, Fairmount Santrol and Unimin announced the completion of their strategic combination. As part of the deal, shareholders of Fairmount Santrol received $0.73 in cash consideration and 0.2 shares of Covia common stock for every share of Fairmount Santrol held. Any remaining Fairmount Santrol shares that could not be converted into a whole Covia share were redeemed for cash.

25.     The statements contained in ¶¶16-24 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's proprietary 'value-added' proppants were not

7

necessarily more effective than ordinary sand; (2) the Company's revenues, which were dependent on its proprietary 'value-added' proppants, was based on misrepresentations; (3) when Company insiders raised this issue, the Defendants did not take meaningful steps to rectify the issue; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### THE TRUTH SLOWLY MATERIALIZES AND EMERGES

26.    On March 22, 2019, after market hours, the Company filed a Form 10-K for the fiscal year ended December 31, 2018 (the "2018 10-K") with the SEC, which provided the Company's fiscal year 2018 financial results and position. The 2018 10-K contained SOX certifications signed by Defendants Deckard and Eich attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

27.    In the 2018 10-K, the Company revealed that it had received a subpoena from the SEC investigating certain value-added proppants. In relevant part, the 2018 10-K stated:

> "*On March 18, 2019, we received a subpoena from the SEC seeking information relating to certain value-added proppants marketed and sold by Fairmount Santrol or Covia within the Energy segment since January 1, 2014.* We are cooperating with the SEC's investigation.  Given that the investigation is ongoing and that no civil or criminal claims have been threatened or brought to date, we cannot predict what, if any, further action the SEC may take regarding its investigation, and cannot provide an estimate of the potential range of loss, if any, that may result.  Accordingly, no accrual has been made with respect to this matter."

> (Emphasis added.)

28.    Despite the SEC subpoena, the Company continued to make unfounded claims regarding its proppants. The 2018 10-K discussed the Company's alleged proprietary proppant, stating in pertinent part:

"*Value-Added Products.*
***We coat a portion of our sand with resin to enhance certain performance characteristics as a proppant*** using proprietary resin formulations and coating technologies."

(Emphasis added.)

29.     On this news, the Company's share prices dropped by $0.45, or approximately 6.9%, from closing at $6.50 on March 22, 2019 to close at $6.05 on March 25, 2019, the next trading day.

30.     On November 6, 2019, during market hours, the Company filed a Form 10-Q for the quarterly period ended September 30, 2019 (the "3Q19 10-Q") with the SEC, which provided the Company's third quarter financial results and position. The 3Q19 10-Q contained SOX certifications signed by Defendants Navarre and Eich attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

31.     In the 3Q19 10-Q, the Company revealed that, in addition to the March 18, 2019 SEC subpoena, additional information was requested and subpoenaed regarding current and former employees. In part, the 3Q19 10-Q stated:

"On March 18, 2019, in connection with a non-public SEC investigation, we received a subpoena seeking information relating to certain value-added proppants marketed and sold by Fairmount Santrol or Covia within the Energy segment since January 1, 2014. ***Since the issuance of that subpoena, the SEC has requested additional information and subpoenaed certain current and former employees to testify.*** We have been cooperating with the SEC's investigation. The investigation is ongoing, and we cannot provide an estimate of the potential range of loss, if any, that may result. Accordingly, no accrual has been made with respect to this matter."

(Emphasis added.)

32.     On this news, the Company's share prices dropped by $0.07, or approximately 4.3%, from opening at $1.63 on November 6, 2019 to close at $1.56.

9

33.     On June 29, 2020, after market hours, the Company announced that it had entered into a comprehensive restructuring agreement with lenders and voluntarily filed petitions under Chapter 11 of the United States Bankruptcy Code to implement the agreement.

34.     On June 30, 2020, the NYSE delisted the Company, stating in part, "the Company is no longer suitable for listing [. . .] after the Company's June 29, 2020 disclosure that the Company filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code[.]"

35.     On this news, the Company's share prices fell $0.18, or 37.5%, from closing at $0.48 on June 29, 2020, suspending trading June 30, 2020, and resuming trading OTC on July 1, 2020 at $0.30.

36.     On August 10, 2020, after market hours, the Company filed a Form 10-Q for the quarterly period ended June 30, 2020 (the "2Q20 10-Q") with the SEC, which provided the Company's third quarter financial results and position. The 2Q20 10-Q contained SOX certifications signed by Defendants Navarre and Eich attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

37.     The 2Q20 10-Q announced that the Company had received a Wells Notice from the SEC indicating the staff's recommendation to the Commission that the SEC file an action against the company. In pertinent part, the 2Q20 10-Q stated:

> "*On July 7, 2020, we received a written Wells Notice from the SEC staff indicating the staff's preliminary determination to recommend to the Commission that the SEC file an action against the Company relating to the subject of this investigation.* A Wells Notice is neither a formal charge of wrongdoing nor a finding that the Company violated any law. Rather, the Wells Notice provides the Company an opportunity to respond to issues raised by the SEC staff and offer its perspective prior to any SEC decision. The Company will continue to cooperate with the SEC's investigation and will make a submission to

the SEC staff setting forth why no action should be commenced against it.  The investigation is ongoing, and we cannot provide an estimate of the potential range of loss, if any, that may result.  Accordingly, no accrual has been made with respect to this matter."

(Emphasis added.)

38.     On November 19, 2020, an article titled, "Some Fracking Sand Was 'Revolutionary,' or Maybe It Was Just Sand," was published on Bloomberg Businessweek, outlining the years-long fraudulent attempts by the Company to upsell its proprietary 'value-added' sand.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Covia and/or Fairmount Santrol securities publicly traded on the NYSE or OTC during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Covia and/or Fairmount Santrol securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Covia and/or Fairmount Santrol securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Covia and/or Fairmount Santrol securities met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, the Company filed periodic public reports;

- The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Covia and/or Fairmount Santrol's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

46.     Based on the foregoing, the market for Covia and/or Fairmount Santrol securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the ADSs, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against the Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with

their purchases of Covia and/or Fairmount Santrol securities during the Class Period.

52. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Covia and/or Fairmount Santrol were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

53. Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

54. As a result of the foregoing, the market price of Covia and/or Fairmount Santrol securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Covia and/or Fairmount Santrol

securities during the Class Period in purchasing Covia and/or Fairmount Santrol securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

55.     Had Plaintiff and the other members of the Class been aware that the market price of Covia and/or Fairmount Santrol securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Covia and/or Fairmount Santrol securities at the artificially inflated prices that they did, or at all.

56.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

57.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Covia and/or Fairmount Santrol securities during the Class Period.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Defendants

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

60.     As officers and/or directors of a publicly owned company, the Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition

and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Covia and/or Fairmount Santrol securities.

62.     By reason of the above conduct, the Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 10, 2020               Respectfully submitted,

**KARON LLC**
/s/ Daniel Karon
Daniel Karon, Esq.
700 W. St. Clair Ave., Ste. 200,
Cleveland, Ohio 44113
Telephone: (216) 622-1851
Email: dkaron@karonllc.com

*Liaison Counsel for Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com

*Counsel for Plaintiff*