## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| WILLIAM PLAGENS, Individually and on behalf of all others similarly situated, | Case No.: 1:20-CV-02744-JPC |
| Plaintiff, | Judge J. Philip Calabrese |
| | **CLASS ACTION** |
| v. | **Oral Argument Requested** |
| JENNIFFER D. DECKARD, MARK E. BARRUS, MICHAEL F. BIEHL, ANDREW D. EICH, RICHARD A. NAVARRE, | |
| Defendants. | |
| SERGIO BARON, Individually and On Behalf of All Others Similarly Situated, | Case No.: 1:21-CV-00238-JPC |
| Plaintiff, | **CLASS ACTION** |
| v. | |
| JENNIFFER D. DECKARD, MARK E. BARRUS, MICHAEL F. BIEHL, ANDREW D. EICH, and RICHARD A. NAVARRE, | |
| Defendants. | |

**MOVANT THOMAS PHELPS MEMORANDUM OF LAW IN OPPOSITION TO**

**COMPETING LEAD PLAINTIFF MOTIONS**

1

Lead Plaintiff Movant Thomas Phelps ("Movant" or "Dr. Phelps") respectfully submits this opposition to the competing lead plaintiff motions. Dkt. Nos. 5, 6, and 7.

## **BACKGROUND**

Under the PSLRA, "[t]o determine which candidate should be Lead Plaintiff, the Court engages in a two-step inquiry, calculating which candidate has the largest financial interest, and then determining whether that candidate meets the typicality and adequacy requirements of Rule 23(a)." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 302 (S.D. Ohio 2005) (citing *In re Cavanaugh,* 306 F.3d 726, 730 (9th Cir.2002)); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); 15 U.S.C. §78u-4(a)(3)(B)).

Utilizing this simple process confirms that Dr. Phelps is the presumptive Lead Plaintiff and the Court should grant Movant's motion. Dr. Phelps has triggered the PSLRA's "most adequate plaintiff" presumption.

First, Dr. Phelps has the largest financial interest in this litigation as he has the largest financial interest under the first two of the four *Lax* factors.

|  | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Loss |  |
|---|---|---|---|---|---|
| Thomas Phelps "Dr. Phelps" | **1,338,925** | **724,400** | $629,938.35 | $585,642.43 | Dkt. No. 8-5 |
| Paul Antosca "Mr. Antosca" | 26,000 | 26,000 | **$786,249.00** | **$785,716.50** | Dkt. No. 6-6 |
| Sergio Baron "Mr. Baron" | 70,860 | 70,860 | $492,643.82 | $490,907.16 | Dkt. No. 5-5 |

2

| Christopher Palmer "Mr. Palmer" | 1,312 | 1,312 | $44,193.20 | $44,166.17 | Dkt. No. 7-5 |
|---|---|---|---|---|---|

Second, as set forth in Dr. Phelps' opening papers, he has made a *prima facie* showing of adequacy and typicality under Rule 23. Dkt. No. 8-1. Dr. Phelps is a sophisticated individual and a medical doctor at the Cleveland Clinic. *Id*. at 9.

Finally, the presumption that Dr. Phelps is the "most adequate plaintiff"—*i.e.* the presumptive lead plaintiff—"may be rebutted only upon proof." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Because competing movants can offer no proof to rebut the presumption in favor of Dr. Phelps, the Court should grant Movant's motion in its entirety and deny the competing lead plaintiff motions. *See In re Cardinal Health, Inc.*, 226 F.R.D. at 302 ("The presumption [] may be rebutted only upon ***proof***") (emphasis added) (quoting 15 U.S.C. § 78u–4(a)(3)(iii)(II))).

## ARGUMENT

## I.     DR. PHELPS SHOULD BE APPOINTED LEAD PLAINTIFF

Dr. Phelps has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Dr. Phelps has the largest financial interest utilizing two of the four *Lax* factors of any movant before the Court. *In re Cardinal Health, Inc.*, 226 F.R.D. at 303 ("The four-factor inquiry has been widely accepted in the case law and various treatises because it provides courts with additional information."). The *Lax* factors are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 5, 2017).

While some Courts weigh the last *Lax* factor more heavily, other Courts weigh all of the factors. *TransDigm Grp., Inc.*, 2017 WL 6028213, at \*2 ("As the approximate losses suffered is an element of the *Lax* test, this Court will weigh all four factors to select the lead plaintiff in this case. All four factors will be given equal weight."); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co. Inc.,* 229 F.R.D. 395, 404 (S.D.N.Y.2004) ("While certain other courts have declined to follow the *Lax* test, they have done so in favor of a test that focuses on one or more of the factors identified in *Lax*.").

Indeed, even where the fourth factor is weighed most heavily, courts note that "where the movants had employed different methodologies to calculate their losses, revised those methodologies from brief to brief, and attacked one another's calculations—it is less useful." *St. Clair Cty. Employees' Ret. Sytem v. Acadia Healthcare Co.*, 2019 WL 494129, at \*4 (M.D. Tenn. Jan. 9, 2019).

Moreover, "some courts have found the second factor-retained shares-to be the most determinative factor in approximating an investor's potential recovery." *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at \*4 (E.D. Mich. Oct. 24, 2014); *see also In re Network Assocs., Inc. Sec. Litig.,* 76 F.Supp.2d 1017, 1027 (N.D.Cal.1999) (concluding net shares purchased should be used to determine financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery"); *In re Critical Path, Inc. Sec. Litig.,* 156 F.Supp.2d 1102, 1108 (N.D.Cal.2001) (finding net shares purchased "determinative" of financial interest); *In re Cable & Wireless PLC Sec. Litig.,* 217 F.R.D. 372, 375 n. 4 (E.D.Va. Apr.21, 2003).

Dr. Phelps clearly has the largest interest under the first two factors. First, Dr. Phelps purchased 1,338,925 Company shares during the Class Period—more than 13x the competing

movants combined. *See* Dkt. Nos. 5-5, 6-8, 7-5, and 8-5. Second, Dr. Phelps net purchased 724,400 Company shares during the Class Period—more than 7x the competing movants combined. *Id.*

Importantly, in such a situation where the loss calculation is not straightforward—here due to the Merger (defined below)—the *Lax* factors provide even more helpful information. Indeed, "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses." *Pio*, 2014 WL 5421230, at *4; *see also In re Cardinal Health, Inc.,* 226 F.R.D. at 303.

Here, Dr. Phelps has the largest interest by two of the three "most objective" factors. *See Pio*, 2014 WL 5421230, at *4. Mr. Antosca has a larger interest by only one of the "most objective" factors and the largest approximate loss. *Id.* Given the facts of this case, including the Merger, any perceived tie should in these factors should go to Dr. Phelps.

"The movant that timely demonstrates [he] has 'the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23' is entitled to a presumption that [he] is the most adequate plaintiff." *TransDigm Grp., Inc.*, 2017 WL 6028213, at *2. Put differently, once the Court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 730.

Like all purported class members, Dr. Phelps alleges that Defendants violated the Securities Exchange Act of 1934 ("Exchange Act") by publicly disseminating false and misleading statements about Covia Holdings Corporation ("Covia") f/k/a Fairmount Santrol Holdings Inc. ("Fairmount Santrol" and, collectively with "Covia," the "Company") business. Dr. Phelps purchased Company shares, pre- and post-Merger, at artificially inflated prices and was damaged

5

thereby. These claims are also premised on the same legal and remedial theories and are based on the same misstatements and omissions as the class' claims. Thus, Movant satisfies the typicality requirement. *See generally In re Cardinal Health, Inc.,* 226 F.R.D. at 304 (citing *In re American Medical Sys.,* 75 F.3d 1069, 1082 (6th Cir.1996) ("A Plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.")).

Dr. Phelps has demonstrated his adequacy as class representative by submitting a sworn certification affirming his willingness to serve as, and carry out the responsibilities of, class representative. Dkt. No. 8-4. Based on his financial interest in the litigation and satisfaction of the Rule 23 requirements at this stage, Dr. Phelps has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Importantly, "a straightforward application of the statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Cavanaugh*, 306 F.3d at 732. Once the Court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 730, 732 ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.").

## II.    DR. PHELPS' SELECTION OF COUNSEL SHOULD BE APPOINTED

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cardinal Health, Inc.*, 226 F.R.D. at 305 ("Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.") (citing *Cavanaugh*, 306 F.3d at 733).

Here, Dr. Phelps has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Rosen Law has the resources and expertise to litigate this action efficiently and aggressively. As the Firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 8-6. Indeed, Rosen is one of the preeminent securities class action law firms in the country. Rosen has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. *Id*. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen as the Number 3 securities class action firm both in terms of amount recovered for investors – $438,340,000 – and the number of settlements – 12.[1] Founding partner, Laurence Rosen was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[2]

Thus, the Court may be assured that by approving Movant's selection of counsel, the members of the class will receive excellent legal representation.

## III.    COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied as Movant has the greatest financial interest in the litigation, satisfies the requirements of Rule 23, and should therefore be appointed Lead Plaintiff without further analyses. "Once the Court has identified the party with the largest financial interest, the Court analyzes that party alone to see if it complies with the requirements of Rule 23." *In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at *3 (W.D. Tenn. Dec. 15, 2010) (internal citation omitted); *Cavanaugh*, 306 F.3d at 732 ("The statutory process is

---

[1] https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.
[2] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

That said some facts bear noting about the competing movants.

## A.    MR. ANTOSCA IS INADEQUATE AND ATYPICAL

### 1.    MR. ANTOSCA SUBMITTED INACCURATE TRADING INFORMATION

Mr. Antosca submitted trading data for three transactions that do not comport with the daily trading range of Fairmount Santrol. *Compare* Dkt. No. 6-6 *with* Karon Declaration in Support of Movant Thomas Phelps to Competing Lead Plaintiff Motions ("Karon Opposition Decl."), Ex. A. This is true while utilizing Mr. Antosca's conversion noted in his certification. *Id.*

Therefore, Mr. Antosca attested under penalty of perjury to purchasing Fairmount Santrol stock at prices outside of the day's trading range. Courts have readily denied lead plaintiff motions in the past where errors in a movant's filings caused the court to question the movant's reliability to serve as a class representative. *See*, *e.g.*, *Irving Firemen's Relief & Ret. Fund v. Tesco PLC,* 2015 WL 1345931, at *2-3 (S.D.N.Y. Mar. 19, 2015) (finding that discrepancies in movant's financial data precluded the court from verifying movant's claimed losses, which undermined movant's adequacy as lead plaintiff); *Karp v. Diebold Nixdorf, Inc.,* 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration,* 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (same); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (same); *see also Camp v. Qualcomm Inc.,* 2019 WL 3554798, at *2 (S.D. Cal. Aug. 5, 2019) (citing *Nager v. Websecure, Inc.*, 1997 WL 773717, at *2 n.1 (D. Mass. Nov. 26, 1997)).

### 2.    MR. ANTOSCA IS ATYPICAL AND INADQUATE

Mr. Antosca is inadequate and atypical as he is subject to unique defenses. *In re Cardinal Health, Inc.*, 226 F.R.D. at 302; 15 U.S.C. § 78u–4(a)(3)(iii)(II).  Mr. Antosca purchased all of his shares prior the merger of Fairmount Santrol and Unimin Corporation (the "Merger"). This is problematic because, Mr. Antosca's claims here may be subject to the release of claims from the class action brought in connection with the Merger. *See Jennings v. Fairmount Santrol, Inc., et al.*, case no. 1:18-cv-00931-CAB. That case resulted in a settlement and a release of claims "***related to any disclosures (or lack thereof) to Fairmount Santrol's stockholders concerning the Merger*** … in any forum, including individual, direct, class, derivative, representative, legal, equitable, or any other type or in any other capacity, whether state or federal, common law, or statutory, ***including, without limitation, claims under the federal securities laws (the "Released Claims") shall be fully, finally, and forever released, settled, and discharged***[.]" *Id*. Dkt. No. 30-3 at 24. As with the Company, before and after the Merger, defendants made statements regarding the main issue alleged, information regarding proppants, such defenses would be fatal to Mr. Antosca since he purchased all of his shares prior to the Merger. With these clear issues at play it is important to note that, "[t]here is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial." *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) (citing *In re Netflix Inc., Sec. Litig.*, 2012 WL 1496171, at * 5 (N.D. Cal. Apr. 27, 2012)).

Additionally, that Mr. Antosca exclusively purchased shares prior to the Merger he has little incentive to prosecute this case on behalf of the whole class—particularly those who bought after the 2018 Merger. "Rule 23 requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" *TransDigm Grp., Inc.*, 2017 WL 6028213, at *3 (citing Fed. R. Civ. P. 23(a)(3))). Thus, Mr. Antosca's interest is not aligned with the *whole*

class, rendering his interest in conflict and antagonistic to much of the Class. *See Id.* ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.... '[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'") (citing *Amchem Prods. v. Windsor,* 521 U.S. 591, 625-26 (1997)).

Additionally, if for whatever reason, the Class Period is shortened, in particular if it is shortened to exclude pre-Merger transactions, the Class would be without representation if Mr. Antosca was lead plaintiff. The statute of limitations nor the statute of repose are tolled for securities claims. *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1808, 201 L. Ed. 2d 123 (2018) (statute of limitations not tolled for securities claims); *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* 137 S. Ct. 2042, 2055, 198 L. Ed. 2d 584 (2017) (statute of repose not tolled for securities claims).

In short, "[Mr. Antosca] would be susceptible to unique defenses, and thus is not an adequate Lead Plaintiff." *In re Cardinal Health, Inc.*, 226 F.R.D. at 311. "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative." *Koos v. First Nat'l Bank,* 496 F.2d 1162, 1164 (7th Cir. 1974).

In contrast, Dr. Phelps purchased his shares throughout the class period—before and after the Merger. Thus, he is not subject to the any unique defenses about the Merger that could eliminate his claims. Moreover, Dr. Phelps does not have divided incentives over claims prior to or after the Merger, since he bought shares before and after the Merger.

**B.     MR. BARON IS INADEQUATE AND ATYPICAL**

**1.     MR. BARON SUBMITTED INACCURATE TRADING INFORMATION**

10

Like Mr. Antosca, Mr. Baron also submitted trading data that does not comport to the daily trading range for Company shares on the days stated. Mr. Baron submitted trading data for 18 transactions that do not comport with the daily trading range of Company shares—both pre- and post-Merger. *Compare* Dkt. No. 5-5 *with* Karon Opposition Decl. Ex. B. Therefore, Mr. Baron attested under penalty of perjury to purchasing Company stock at prices outside of the day's trading range. The most obvious explanation for this discrepancy is that Mr. Baron submitted inaccurate trading information. Courts have readily denied lead plaintiff motions in the past where errors in a movant's filings caused the court to question the movant's reliability to serve as a class representative. *See* Sec. III.A.1, *supra*.

## 2. MR. BARON ENGAGED IN OPTIONS TRANSACTIONS, GAINS

Mr. Baron engaged in options trading. Dkt. Nos. 5-4 and 5-5. Options transactions even when coupled with other securities transactions, such as common stock, can demonstrate atypicality. Courts have found options traders to be incapable of properly representing a class of stockholders given the fundamental differences between stocks and options. *Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (declining to appoint movant with largest financial interest as lead plaintiff whose interest was heavily in options because he was not "an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)" and his appointment "as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'"); *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012) ("[T]he price and value of a single share of common stock is very different from the price and value of a single call option. The options' valuable lives are

11

limited, their value is conditional, and there is a large disparity between their price and their potential value."); *see also Comrie v. Enterasys Networks, Inc*., 837 A.2d 1, 18 n.87 (Del. Ch. 2003); *Micholle v. Ophthotech Corp*., 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018).

Mr. Baron appears to have also sold put options. While selling put options is generally betting the price of Company securities will rise, selling puts further raises questions about his typically and adequacy. *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (questions raised regarding the sale of put options would "[u]ndoubtedly … remain, and are certain to become focal points at class certification. Accordingly, because factual issues unique to [movant] 'would likely threaten to become the focus of the litigation,' the Court declines to appoint [movant] lead plaintiff.") (internal footnote omitted.))

Further, Mr. Baron made gains from his options transactions, further demonstrating that his trading is unlike the typical investor here. Dkt. No. 5-5 at 3.

### 3.    MR. BARON ENGAGED IN SHORT SELLING

Even more problematic, Mr. Baron bought put options and sold call options (Dkt. No. 5-4 at 9-13)—betting that the price of Company securities would fall.

The typical class member in this case was not investing in Company securities with hopes the price would fall like Mr. Baron. Thus, Mr. Baron, is atypical and inadequate. *See e.g., In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-1110 (N.D. Cal. 2001) ("It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall. Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."); *see also Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018), *reconsideration denied*

12

*sub nom. In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002); *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at *3, *7 (E.D. Tex. Feb. 28, 2014).

## CONCLUSION

For the foregoing reasons, Dr. Phelps' motion should be granted in its entirety and the competing motions should be denied.

Dated: February 22, 2021           Respectfully submitted,

**KARON LLC**
By: */s/ Daniel R. Karon*
Daniel R. Karon (0069304)
Beau D. Hollowell (0080704)
700 W. St. Clair Ave., Ste. 200
Cleveland, Ohio 44113
Telephone: (216) 622-1851
Fax: (216) 241-8175
Email: dkaron@karonllc.com
       bhollowell@karonllc.com

*[Proposed] Liaison Counsel for Lead Plaintiff and Class*

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq. (admitted *pro hac vice*)
Laurence M. Rosen, Esq. (admitted *pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Daniel R. Karon