# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| WILLIAM PLAGENS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFFER D. DECKARD, MARK E. BARRUS, MICHAEL F. BIEHL, ANDREW D. EICH, and RICHARD A. NAVARRE,<br><br>Defendants. | Case No.  1:20-cv-02744-JPC |
| SERGIO BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFFER D. DECKARD, MARK E. BARRUS, MICHAEL F. BIEHL, ANDREW D. EICH, and RICHARD A. NAVARRE,<br><br>Defendants. | Case No.  1:21-cv-0238-JPC |

**SERGIO BARON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL**

Sergio Baron ("Baron" or "Movant") submits this memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel, and in reply to the two oppositions filed by competing lead plaintiff movants.

## I. PRELIMINARY STATEMENT

Only two competing movants filed opposition memoranda to Baron's lead plaintiff motion: Paul Antosca ("Antosca," Dkt. No. 16); and Thomas Phelps ("Phelps," Dkt. No. 15). Both Antosca and Phelps claim larger financial interests than Baron does, yet they raise baseless attacks against Baron, essentially conceding that typicality and adequacy issues preclude appointing either of them as lead plaintiff. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) ("Once the court 'identifies the plaintiff with the largest stake in the litigation,' further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements."). Regardless, their attacks are without merit. Antosca claims that Baron provided "insufficient" background information to assess his adequacy, but Baron's opening motion literally provided the exact information they say is needed, stating that he has five years of investment experience, that he is a civil engineer who currently works as an oil analyst, and that he resides in Westchester County, New York. Antosca apparently seeks a supplemental declaration from Baron attesting to the same facts, which is not a requirement of the PSLRA. Anotosca's made-up declaration requirement is unheard of and not supported by precedent, and certainly not a basis to disqualify Baron. Likewise, Phelps frivolously argues that "Baron attested under penalty of perjury to purchasing Company stock at prices outside of the day's trading range" and that the "most obvious explanation for this discrepancy is that Mr. Baron submitted inaccurate trading information." Dkt. No. 15 at 11. A cursory review of Baron's certification demonstrates that these transactions are either within the daily trading range or attributable to options

assignments, meaning Baron was obligated to complete the requirements of the options contract at the specified strike price. As such, there is nothing in Baron's certification that is inaccurate.

Moreover, Antosca does not address the typicality issues that plagues his own motion. While Antosca's alleged losses are greater than Baron's, Antosca must be disqualified because his losses are entirely traceable to purchases that precede Fairmount Santrol's merger with Unimin Corporation in June 2018 (the "Merger"), and as such, his claims may be subject to a release of claims pursuant to the settlement of a class action brought in connection with the Merger. Though Phelps asserts that he has the largest financial interest according to two of the four factors commonly considered by courts, he neglects that Baron suffered more losses than Phelps did (the most important factor).[1]

Since Baron is both adequate and typical of the class he seeks to represent, Baron is the presumptively "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Moreover, since no movant has rebutted the presumption, Baron should be appointed lead plaintiff, and his selection of counsel should be approved.[2]

## II.  ARGUMENT

### A.  Baron is the *Bona Fide* Movant with the Largest Financial Interest

The PSLRA does not specify a means of calculating the "largest financial interest," so "the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *St. Clair Cnty. Empls.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *3 (M.D. Tenn. Jan. 9, 2019) ("Many courts have

---

[1] Due to a clerical mistake, Baron incorrectly argued that Phelps was a net seller during the class period in his opposition brief. *Baron v. Deckard*, Case No. 1:21-cv-238 (N.D. Ohio), Dkt. No. 10 at 7. Baron hereby withdraws the argument.

[2] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)

exercised that discretion by . . . consider[ing] for each potential lead plaintiff (1) the number of shares purchased; (2) the number of net shares purchased . . . ; (3) the total net funds expended . . . ; and (4) the approximate losses suffered."). To determine approximate losses suffered, courts in the Second Circuit have accepted the modified LIFO methodology where losses related to securities that were not held at a corrective disclosure are excluded. *See e.g.*, *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (losses from sales prior to a corrective disclosure "are not recoverable under *Dura* and cannot be considered in calculating [movant's] losses") (citing *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 342-43 (2005)). Following the sound logic of the Second Circuit, the Court should apply *Dura* principles at this stage to determine which movant has the largest financial interest and to ensure that certain movants' financial interest is not overstated. *See Khunt*, 102 F. Supp. 3d at 531 ("If a loss is not *Dura* eligible then it is not redressable through the putative class action [and] the loss cannot logically contribute to his financial stake in that action.").

Here, as the following chart demonstrates, Baron has the second largest financial loss:[3]

| Name | Gross Shares | Net Shares | Net Expenditure | *Modified LIFO Losses* |
|---|---|---|---|---|
| Antosca | 26,000 | 26,000 | -$786,252.00 | *-$785,719.50* |
| Baron | 160,836 | 78,200 | -$355,875.05 | *-$484,192.16* |
| Phelps | 1,338,925 | 724,400[4] | -$614,690.07 | *-$401,579.15[5]* |

Phelps seemingly argues that the four factors should be given equal weight, *see* Dkt. No. 15 at 3-4, however, he offers little reason to deviate from the decisions of "this Court [to] treat[] the fourth *Olsen-Lax* factor as the determinative one," *Owens v. FirstEnergy Corp.*, 2020 WL

---

[3] The data in this chart is derived from the movants' loss charts. As is customary, the gross and net share figures do not include options transactions.

[4] This figure has been updated from Baron's opposition brief to correct a clerical mistake.

[5] This figure has been updated from Baron's opposition brief to correct a clerical mistake.

6873421, at *10 (S.D. Ohio Nov. 23, 2020) (collecting cases). Though he claims "the loss calculation is not straightforward—here due to the Merger," Phelps does not explain what aspects of the Merger complicate the loss analysis. *See* Dkt. No. 15 at 5; *see also St. Clair Cnty.*, 2019 WL 494129 at *5 ("The Court thus finds no reason to depart from its prior practice of looking to the fourth *Olsten-Lax* factor as the most important.").

Phelps also argues that the net shares purchased is the most determinative factor. Dkt. No. 15 at 4 (citing *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014)). But, in *Pio*, the court found that all four factors weighed in favor of the same movant. 2014 WL 5421230, at *8 ("In short, the Court finds that the fourth *Lax* factor, like the first three factors, favors New York Teachers."). Moreover, cases that rely heavily on the "net shares purchased" recognize that "[t]his approach gets into trouble only if the amount of the 'fraud premium' varied over the course of the class period." *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999); *see also In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) ("This approach assumes that the 'fraud premium,' which is the amount by which the stock is inflated because of the alleged misrepresentations, stayed constant throughout the class period."). Here, the complaint alleges that the fraud was revealed through a series of partial corrective disclosures: March 22, 2019 (6.9% decline in stock price); November 6, 2019 (4.3%); June 29, 2020 (37.5%). Since the fraud premium varies throughout the Class Period, the net shares purchased is not an appropriate measure of largest financial interest in the litigation.

Therefore, the Court should weigh the "approximate losses suffered" most heavily and should employ the modified LIFO methodology. As a result, Baron has the second largest financial interest after Antosca, who is atypical because he purchased Covia securities exclusively before the Merger.

**B.      Antosca Is Atypical Because He Did Not Purchase Shares After the Merger**

Though Antosca claims the largest financial loss, he is atypical of class members because he purchased Covia securities solely before the merger in June 2018 between Covia (then-named Fairmount Santrol) and Unimin Corporation. Due to the settlement of a class action related to the Merger, Antosca may have released claims "related to any disclosures (or lack thereof) to Fairmount Santrol's stockholders concerning the Merger . . . including, without limitations, claims under the federal securities laws." *Jennings v. Fairmount Santrol, Inc., et al.*, Case No. 1:18-cv-00931-CAB, Dkt. No. 30-3 at 24. Regardless of whether this release actually encompasses the claims alleged in the instant action, there is a non-speculative risk that Defendants will raise it as a defense, making it a focal point of the litigation. *Gross v. AT&T Inc.*, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019) ("Before disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed."). Thus, Antosca will be forced to expend significant resources litigating an issue that is not applicable to most other class members. *See, e.g., In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7-9 (Sept. 16, 2020) ("[E]ven ultimately unsuccessful unique defenses may divert attention from the substance of the basic claim, and class members are entitled by someone unhindered by such distractions.") (internal quotation marks omitted). In contrast, Baron purchased Covia and/or Fairmount Santrol securities before and after the Merger, so he does not face similar issues jeopardizing his typicality.

**C.      The Presumption that Baron is the Most Adequate Plaintiff Has Not Been Rebutted**

Having disqualified Antosca, Baron is the movant with the next largest financial interest and is thus the presumptively most adequate plaintiff. As demonstrated below, the Court should reject the specious attacks raised by the competing movants against Baron. Since the presumption

5

that Baron is the most adequate plaintiff cannot be rebutted by "proof," Baron should be appointed as lead plaintiff, and other movants should not be entitled to further consideration.

### 1. Antosca Imposes Requirements Not Described in the PSLRA

Antosca seeks to disqualify Baron, claiming he failed to provide additional information about his background as required by courts in other districts. *See* Dkt. No. 16 at 4. This is simply false. In his opening motion, Baron stated that he "resides in Westchester County, New York and has been managing his own investment portfolio for five years. He is a civil engineer who currently works as an oil analyst for a consulting firm." *See* Dkt. No. 5-1 at 8. Thus, while few courts require movants to provide more information than the PSLRA mandates, Baron has provided enough information to satisfy the outlier standards set by the decisions discussed by Antosca. *Cf. Perez v. HEXO Corp.*, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) (declining to appoint movant who "fail[ed] to provide *any* information regarding his experience in his preliminary motion"); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (disqualifying movant that "provided no such information"); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (no information provided). However, if the Court requests any additional information beyond that required by the PSLRA, Baron would of course provide it.

Likewise, the purported "deficiencies" with Baron's certification are baseless. Antosca complains that Baron's certification states he is "duly authorized to institute legal action against Covia and other defendants" but Covia is not a named defendant. Dkt. No. 16 at 4. This is mere semantics. Covia (along with the named defendants) issued the materially misleading statements that are the subject of the alleged violations of the federal securities laws, and Covia is not a named defendant only because it is currently in bankruptcy proceedings. Dkt. No. 1 at ¶ 33. Moreover, Antosca suggests that the language that Baron is "duly authorized to institute legal action" raises

6

questions as to the ownership of the securities, Dkt. No. 16 at 4, but Baron's certification clearly states "*My* transactions in Covia securities during the Class Period set forth in the Complaint are" attached, *see* Dkt. No. 5-4 (emphasis added). There is no doubt that Baron purchased the securities listed in his certification.

### 2.     Baron's Trading Information Is Accurate

Phelps' attacks regarding the accuracy of Baron's trading information are completely without merit. All of the prices that Phelps claims to be inaccurate are either within the daily trading range according to Bloomberg historical trading information or attributable to options assignments that required Baron to complete the requirements of the options contract at the specified strike price. *See* Declaration of Richard S. Wayne, Exs. A, B. Therefore, there is no basis to claim that Baron's certification is inaccurate.

### 3.     Baron's Options Trading Does Not Render Him Atypical

Phelps argues that Baron is atypical because he engaged in options trading, Dkt. No. 15 at 11, but the putative class encompasses investors "who purchased or otherwise acquired publicly traded Covia and/or Fairmount Santrol *securities*," i.e. common stock and options, Dkt. No. 1 at ¶ 1 (emphasis added). Phelps relies on *Cook v. Allergan PLC*, where the court found that a movant who traced "approximately 60% of his claimed losses [to] options trading" may be atypical "of the average *common stockholder*," *i.e.*, the action did not include options transactions.[6] 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (emphasis added).[7] Here, Baron is clearly part of the

---

[6] *See Cook v. Allergan PLC*, Case No. 1:18-cv-12089 (S.D.N.Y.), Dkt. No. 1 at ¶ 1 ("all investors who purchased or otherwise acquired Defendant Allergan plc . . . common stock"); *Klein v. Allergan plc*, Case No. 1:18-cv-12219 (S.D.N.Y.), Dkt. No. 1 at ¶ 1 ("all persons and entities who purchased or otherwise acquired Allergan shares").

[7] The other cases cited by Phelps are also inapposite. *See Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012) (options trader did not have the largest financial interest); *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1 (Del. Ch. 2003)

class and typical of other investors. *See In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) ("options-related losses are properly considered" in action brought on behalf of those who "purchased or otherwise acquired *LightInTheBox securities*"). And, "as [Phelps] notes, [Baron] does not claim any losses from options trading." *Chauhan v. Intercept Pharms.*, 2021 WL 235890, at *7 (S.D.N.Y. Jan. 25, 2021) (appointing movant with more than $500,000 in common stock losses and nearly $180,000 in options gains); *see also* Dkt. No. 15 at 12; *cf. Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (disqualifying movant where "82% [of his losses] arose from options-related transactions").

The sale of options does not yield a contrary result because Baron also traded in and had substantial losses from common stock transactions. *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (sale of options does not render movant who "traded in both common stock and options" atypical, noting that "investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here 'whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct'") (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001)). Likewise, the nuances of Baron's trading strategy do not make him atypical because he was holding common stock at all relevant times and thus was not a "short seller." In fact, Phelps ignores that movants with sophisticated investment strategies that involve selling options and have common stock losses are often appointed lead plaintiff. *See e.g., Chauhan*, 2021 WL 235890, at *6 (appointing movant that sold options as part of their "trading strategy designed to hedge against risk" because "the use

---

(breach of contract action); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (movant group "*only* traded put and call option contracts") (internal quotation marks omitted).

8

of a sophisticated investment strategy [does not] necessarily undermine[] reliance, particularly at this stage of the litigation").

*     *     *

Therefore, the presumption that Baron is the most adequate plaintiff has not been rebutted, and he should be appointed lead plaintiff.

## III.    CONCLUSION

For the foregoing reasons, Baron respectfully requests that the Court deny the competing lead plaintiff motions and enter an order: (1) consolidating the above-captioned actions; (2) appointing Baron as lead plaintiff; (3) approving his selection of Glancy Prongay & Murray LLP as lead counsel and Strauss Troy Co., LPA as liaison counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  March 1, 2021

**STRAUSS TROY CO., LPA**

By:  _/s/ Richard S. Wayne_
Richard S. Wayne (0022390)
Robert R. Sparks (0073573)
Jeffrey A. Levine (0095334)
The Federal Reserve Building
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202
Telephone: (513) 621-2120
Facsimile: (513) 241-8259
rswayne@strausstroy.com
rrsparks@strausstroy.com
jalevine@strausstroy.com

_Liaison Counsel for Sergio Baron and Proposed Liaison Counsel for the Class_

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (_Admitted Pro Hac Vice_)
Charles H. Linehan (_Admitted Pro Hac Vice_)
1925 Century Park East, Suite 2100

9

Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com

*Counsel for Sergio Baron and Proposed Lead Counsel for the Class*

**THE PORTNOY LAW FIRM**
Lesley Portnoy
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court this 1st day of March, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  If a party is not given notice electronically through the Court's system a copy will be served by ordinary United States mail, first class postage prepaid, this 1st day of March, 2021.

/s/ Richard W. Wayne
Richard S. Wayne (0022390)