# EXHIBIT A

(Reply Brief)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM PLAGENS, Individually and on behalf of all others similarly situated, | No. 1:20-cv-02744 |
| Plaintiff, | |
| v. | |
| JENNIFFER D. DECKARD, ET AL., | |
| Defendants. | |
| SERGIO BARON, Individually and on behalf of all others similarly situated, | No. 1:21-cv-00238 |
| Plaintiff, | |
| v. | |
| JENNIFFER D. DECKARD, ET AL., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PAUL ANTOSCA'S**
**MOTION FOR CONSOLIDATION OF RELATED ACTIONS,**
**APPOINTMENT AS LEAD PLAINTFF AND**
**APPROVAL OF HIS SELECTION OF LEAD COUNSEL,**
**AND IN OPPOSITION TO COMPETING MOTIONS**

i

## TABLE OF CONTENTS

I.     Mr. Antosca is the presumptive lead plaintiff because he has the largest financial interest and largest "approximate loss" in the relief sought. ...........................................................1

II.    Mr. Antosca Meets the Typicality and Adequacy Requirements. ......................................5

       A.     Mr. Antosca is not atypical because he purchased securities during the first half of the Class Period but not the second...............................................................6

       B.     A significant portion of the proposed Class, including Mr. Antosca, did not have their claims released. ................................................................................8

       C.     Mr. Antosca's PSLRA Certification is accurate. ......................................................9

III.   The Court should approve Mr. Antosca's selection of counsel. .......................................10

IV.   Conclusion .......................................................................................................................10

i

## TABLE OF AUTHORITIES

CASES                                                                                                              PAGE(S)

*In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996) ........................................... 6

*Beattie* v. *Century Tel., Inc.*, 511 F.3d 554 (6th Cir. 2007) ............................................................ 7

*Blitz* v. *AgFeed Industries, Inc.*, 2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012) ........................ 2

*In re Cardinal Health, Inc. Securities Litigation*, 226 F.R.D. 298 (S.D. Ohio 2005) ................... 5

*City of Hollywood Firefighters' Pension Fund* v. *TransDigm Group, Inc.*,
    2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) ..................................................................... 7

*In re Hebron Tech. Co., Ltd. Securities Litigation*,
    2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020)................................................................... 8

*Lax* v. *First Merchs. Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ................... 1

*Owens* v. *FirstEnergy Corp.*, 2020 WL 6873421 (S.D. Ohio Nov. 23, 2020) ..................... *passim*

*Pio* v. *Gen. Motors Co.*, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014).................................... 4, 5

*Ross* v. *Abercrombie & Fitch Co.*, 257 F.R.D. 435 (S.D. Ohio May 21, 2009) ............................ 7

There are now three competing movants for appointment as lead plaintiff, following Mr. Palmer's notice last week that did not raise a specific objection to any competing movant. *See* ECF No. 14. They are Mr. Antosca, Mr. Baron, and Mr. Phelps.

Mr. Antosca has the largest "approximate loss" of the three remaining movants, which Messrs. Baron and Phelps acknowledge. The arguments that Messrs. Baron and Phelps raise against Mr. Antosca are incorrect legally and factually.

I. **Mr. Antosca is the presumptive lead plaintiff because he has the largest financial interest and largest "approximate loss" in the relief sought.**

This is a complex securities action, as evidenced by the fact that in the lead plaintiff opposition briefs filed by Messrs. Antosca, Baron, and Phelps, each has advanced slightly different figures as to certain of each others' financial interests based on the four factors articulated in *Lax* v. *First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

However, and most importantly, all three movants agree on two facts:

*First,* Mr. Antosca has the largest "approximate loss" under the fourth (and most important) *Lax* factor. Baron Opp. (ECF No. 10) at 2; Phelps Opp. (ECF No. 15 at 2).[1] The "dominant approach" within the Sixth Circuit treats this fourth *Lax* factor as "determinative." *Owens* v. *FirstEnergy Corp.*, 2020 WL 6873421, at *9 (S.D. Ohio Nov. 23, 2020).

*Second,* Mr. Antosca also expended the largest "net funds" in Covia securities under the third *Lax* factor. ECF No. 10 at 2; ECF No. 15 at 2.

Mr. Antosca's approximate loss under the fourth *Lax* factor is approximately $200,000 to $300,000 greater than Messrs. Baron's and Phelps's loss; a significant difference. Under the "dominant approach" in the Sixth Circuit, this means that all parties agree Mr. Antosca has the

---

[1] Mr. Baron only filed his Opposition brief in the *Baron* action, No. 21-cv-00238 (N.D. Ohio). References to the Antosca and Phelps Opposition briefs are to filings in the *Plagens* action, No. 20-cv-02744 (N.D. Ohio).

largest financial interest in the relief sought. *Owens*, 2020 WL 6873421, at *9.

As a last-ditch effort to salvage his lead plaintiff application, Mr. Phelps wrongly argues that the first two factors outlined in *Lax*—(1) gross shares purchased and (2) net shares purchased—should be determinative. This argument is based on a flawed reading of the authority he cites and the weight of authority in the Sixth Circuit.

First, the "dominant approach" within the Sixth Circuit "is to treat the loss factor as determinative." *Owens*, 2020 WL 6873421, at *9. By this factor, Mr. Antosca is indisputably the movant with (by far) the largest financial interest in the relief sought. Not only is the fourth *Lax* factor the "dominant approach" within the Sixth Circuit, but it is also the one relied upon by the Courts of Appeals for the Third and Ninth Circuits. *See id.* at 10 (collecting cases); *Blitz* v. *AgFeed Indus., Inc.*, 2012 WL 1192814, at *7 (M.D. Tenn. Apr. 10, 2012) ("a number of courts have discussed the fact that, of the four factors set forth in the Manual for Complex Litigation, the most important factor is the approximate losses suffered by the plaintiff").

The court in *Owens* rejected the argument advanced by Mr. Phelps that net shares purchased should be determinative and concluded that "the figures that [the competing lead plaintiffs] have submitted facilitate the Court's consideration of the loss factor without presenting the need for relying on the candidates' retained shares. The Court therefore declines to resort to this method and does not treat the parties' net shares purchased as the most instructive *Olsen-Lax* factor."). 2020 WL 6873421, at *9. Similarly here, the competing lead plaintiffs have presented straight-forward loss numbers using a similar (LIFO) methodology for calculating each movant's loss. The Court need not resort to the other factors. *See Owens*, 2020 WL 6873421, at *11 ("In keeping with the courts of this Circuit and its previous decisions, this Court treats the fourth loss *Olsen-Lax* factor as the determinative one. LACERA has suffered the largest LIFO losses

regardless of whether bond gains are included in the calculation, and LACERA therefore has the largest financial interest in this matter."). Furthermore, *Owens* distinguished many of the cases Mr. Phelps relies upon, noting that those cases presented "unusual circumstances that render[ed] loss an inadequate factor on its own." 2020 WL 6873421, at *8 (distinguishing cases).

But putting those aside, even though Mr. Antosca did not purchase as many shares by volume, he expended *significantly* more funds than Mr. Phelps because Mr. Antosca purchased securities when they were priced higher. *See* ECF No. 15 at 2. While the competing movants disagree about certain precise numbers for each other, Messrs. Baron and Phelps do not dispute that Mr. Antosca has the largest "net funds" expended under the third *Lax* factor. *See* Baron Opp. (ECF No. 10) at 5; Phelps Opp. (ECF No. 15) at 2.

Thus, even if this Court were to reject Chief Judge Marbley's finding in *Owens* that the "dominant approach" within the Sixth Circuit is to treat the fourth *Lax* factor as determinative, Mr. Antosca is still the presumptive lead plaintiff based on a holistic review of all four *Lax* factors, because Mr. Antosca has not only the largest "approximate loss," but he also spent far more funds on the subject securities than Messrs. Baron or Phelps did, thus making the fact that Phelps purchased more shares based on volume alone misleading and much less important.

This also means that even though Messrs. Antosca, Baron, and Phelps arrived at different conclusions in their opposition briefs about who has the largest exposure under the first or second *Lax* factors, that is irrelevant because this Court has sufficient information based on the third and fourth *Lax* factors, on which all the parties agree about the order of exposure.[2]

---

[2] Mr. Antosca and Mr. Phelps arrived at different conclusions regarding Mr. Phelps's exposure under the first and second *Lax* factors because it appears Mr. Phelps failed to take into account the 0.2 exchange rate for the shares he received as a result of the Merger when his pre-Merger purchases were exchanged.

The cases Mr. Phelps cite do not alter this conclusion. Mr. Phelps relies heavily on *Pio* v. *Gen. Motors Co.*, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) for the proposition that "some courts have found the second [*Lax*] factor-retained shares-to be the most determinative factor…." ECF No. 15 at 4 (citing *id.* at *4). As an initial matter, *Pio* is six years older than *Owens*, which analyzed the weight of authority within the Sixth Circuit and concluded that the "dominant approach" is to "treat the loss factor as determinative." *Owens*, 2020 WL 6873421, at *9. Second, the movant in *Pio* arguing that the first three *Lax* factors should control was also the movant with the largest interest as to the first two *Lax* factors **and** the *third* factor. *See* 2014 WL 5421230, at *6. Here, of course, Mr. Antosca has the largest interest based on the third *Lax* factor – total funds expended – because he spent much more than Mr. Phelps did on what the *Pio* court deemed an "objective" factor. Finally, unlike here, the competing movants in *Pio* did not submit their loss numbers using consistent methodologies, thus requiring the court to examine the other factors. Indeed, as the court in *Owens* recognized in rejecting the argument that net shares purchased was determinative:

> As previously discussed, the *Pio* case presented the Court with unusual challenges *because the parties submitted a wide array of methodologies and criteria for calculating financial loss. Pio*, 2014 WL 5421230, at *4 ("[The movants] have not framed their arguments in [*Olsen-Lax*] factor terms, instead presenting a dizzying array of damages calculations in their briefs and declarations.") (internal quotations omitted). To avoid "wading through complex [and] fact-dependent arguments relative to the parties' calculations," the Court instead opted to use the retained shares calculations that one party submitted "for purposes, only, of assessing the final *Lax* factor." *Id.* at *7. *The Pio court's use of the retained shares methodology has since been recognized as a "proxy for estimating total loss" that is not necessary when the parties present more straightforward loss calculations.*

---

Furthermore, Mr. Antosca's opposition brief, ECF No. 16, inadvertently had a typo regarding Mr. Baron's gross shares purchased and net shares purchased: they should be 160,836 and 78,200 shares, respectively. *See id.* at 2.

*Owens*, 2020 WL 6873421, at *9 (bold and italics added).

Mr. Antosca submits that the retained shares methodology is not a proxy for estimating total loss here because while Mr. Antosca purchased fewer shares than Mr. Phelps, Mr. Antosca's purchases were at a higher price per share, making such a comparison meaningless.

Mr. Phelps also cites to *In re Cardinal Health, Inc. Securities Litigation*, but in that case, Chief Judge Marbley (who decided *Owens*) also relied on the fourth *Lax* factor in determining which movant had the greatest financial interest. *See* 226 F.R.D. 298, 304 (S.D. Ohio 2005). Furthermore, *Owens* rejected a movant who was a net seller, as Mr. Phelps may be here. *See* Baron Opp. (ECF No. 10) at 5 (arguing that Mr. Phelps is a net seller). So rather than support Mr. Phelps's argument that Mr. Antosca does not have the largest financial interest, *Cardinal Health* rather confirms that Mr. Phelps has a lesser financial interest.

All movants have submitted similar loss calculations using consistent methodologies, and neither Mr. Baron nor Mr. Phelps dispute that Mr. Antosca has a larger financial interest under the third and fourth *Lax* factors. "At this early stage of the litigation, the court should not be wading through complex or fact-dependent arguments relative to the parties' calculations, nor should it be combing through competing expert reports or analyzing and resolving which attacks to credit by a party or its expert on the loss calculations of the opposing party." *Pio*, 2014 WL 5421230, at *7. Under the "dominant approach" applied by courts within this Circuit, Mr. Antosca is indisputably the movant with the largest financial interest in the action due to his "approximate loss"—in addition to also being the movant who has the largest interest under the third *Lax* factor.

## II.    Mr. Antosca Meets the Typicality and Adequacy Requirements.

Messrs. Baron and Phelps may only rebut the presumption that Mr. Antosca has made a *prima facie* showing of typicality and adequacy with "proof" to the contrary. *See Cardinal Health*,

226 F.R.D. at 302. In their opposition briefs, Messrs. Baron and Phelps do not advance any "proof" at all, only inaccurate arguments and speculation.

Mr. Antosca meets the typicality requirement if his claims arise out of the same conduct or series of events and rely on the same legal theory as the claims of the other class members. *Owens*, 2020 WL 6873421, at \*11 (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). "A candidate for lead plaintiff demonstrates that it can fairly and adequately represent the interests of class members under Rule 23(a)(4) when it appears that (1) the candidate's interests do not conflict with those of the class and (2) the candidate's selected counsel is qualified to lead the litigation." *Owens*, 2020 WL 6873421, at \*11.

No competing movant has argued that Mr. Antosca's selected counsel is not qualified to lead the litigation. Their arguments as to the other factors have no merit, as set forth below.

### A. Mr. Antosca is not atypical because he purchased securities during the first half of the Class Period but not the second.

Messrs. Baron and Phelps argue that Mr. Antosca is "atypical and inadquate" [*sic*] because he purchased Fairmount shares prior to the merger. *See* Phelps Opp. at 8-9; Baron Opp. at 10. This argument makes no sense and is contrary to settled law regarding typicality in securities class actions that they themselves cite. In fact, by even making the argument, Messrs. Baron and Phelps are demonstrating their own inadequacy to represent the Class because they are arguing that many members of the proposed Class they seek to represent (*i.e.*, pre-merger purchasers) are "situated differently" from the rest (*i.e.*, post-merger purchasers).

First, neither the PSLRA nor the Exchange Act require a representative plaintiff to have purchased the damaged securities *throughout* the Class Period to have standing to bring claims on behalf of all class members.

Second, the cases Messrs. Baron and Phelps cite do not support their position, but rather demonstrate why Mr. Antosca *is in fact a typical and adequate representative*. "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'" *City of Hollywood Firefighters' Pension Fund* v. *TransDigm Group, Inc.*, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) (quoting *Beattie* v. *Century Tel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). Thus, *TransDigm* confirms that Mr. Antosca's claims are typical because they arise out of the same "course of conduct"—Defendants' Class Period misstatements and omissions—as all of the absent Class members in both the *Baron* and *Plagens* complaints.

Just because Mr. Antosca did not purchase shares again after the Merger does not alter this analysis, and none of the cases Baron or Phelps cite say so. First, the only case Mr. Phelps cites, *TransDigm*, does not support that point.

Second, Mr. Baron misrepresents what the court said in *Ross* v. *Abercrombie & Fitch Co.*, 257 F.R.D. 435, 445 (S.D. Ohio May 21, 2009). In fact, the *court's* conclusion was the opposite of what Mr. Baron apparently asserts:

| Mr. Baron's Brief: | The Actual Language in *Ross*: |
|---|---|
| As a pre-merger shareholder, Antosca will face unique questions based on the timing of his purchases regarding reliance on misstatements after the merger. *See e.g.* [*sic*] *Ross* v. *Abercrombie & Fitch Co.*, 257 F.R.D. 435, 445 (S.D. Ohio May 21, 2009) (raising doubts as to typicality of plaintiff based on timing of purchases because "there is a material distinction between [P]laintiff's claims and those of investors who bought *after* the consensus estimate exceeded $0.63 per share.") | "Defendants assert that 'there is a material distinction between [P]laintiff's claims and those of investors who bought *after* the consensus estimate exceeded $0.63 per share.' ([Memo of Law] at 17.) The Court disagrees. Differences in the timing of stock purchases by class representatives do not make their claims atypical if plaintiffs allege a common scheme of misrepresentation." 257 F.R.D. at 445. |

Thus, instead of supporting Mr. Baron's argument that Mr. Antosca's claims may be atypical, the court's actual finding in *Ross* confirms Mr. Antosca's claims *are* typical. *See also Ross*, 257 F.R.D.

7

at 445 ("All purchasers of stock during a class period share a common interest in showing that the stock was unlawfully inflated.") (quotation omitted).

Next, Mr. Baron cites *In re Hebron Tech. Co., Ltd. Securities Litigation*, 2020 WL 5548856, at *8-9 (S.D.N.Y. Sept. 16, 2020) for the proposition that Mr. Antosca will supposedly need to spend significant resources asserting that because he did not purchase after the Merger, his claims are not atypical. ECF No. 10 at 6. But *Hebron* dealt with a completely different issue: the competing movant in that case had bought more securities *after* the fraud began to be revealed to investors. *Hebron*, 2020 WL 5548856, at *8-9.

In short, none of the cases Messrs. Baron and Phelps cite support their argument that Mr. Antosca is even *potentially* atypical because he did not purchase *again* after the Merger. The PSLRA requires Messrs. Baron and Phelps to put forward ***proof*** that Mr. Antosca is not typical in order for the challenges to succeed. Their opposition briefs fall far short of that.

**B.      A significant portion of the proposed Class, including Mr. Antosca, did not have their claims released.**

Mr. Phelps argues that a previous unrelated release from claims concerning the Merger of Fairmount and Unimin renders class members like Mr. Antosca atypical because he purchased his shares before the Merger was consummated. ECF No. 15 at 9. First, Mr. Phelps appears to misunderstand that these actions are not alleging claims related to the terms of the stockholder vote related to the Merger, but rather misstatements regarding the quality of the Company's proprietary "value added" proppants.

Second, the disclosure lawsuit Mr. Phelps is referring to sought supplemental disclosures in the disclosure documents provided to shareholders in connection with the merger of Fairmount and Unimin—not monetary relief based on misstatements outside of the merger documents as is the case here. Attached as Exhibit 1 to the Supplemental Declaration of Guillaume Buell,

submitted herewith, is the plaintiffs' memorandum of law in support of the *Jennings* settlement. (Mr. Phelps did not attach it to his opposition, but rather just cited to its entry on the docket.) That document represented to the court that the very settlement release Mr. Phelps cites was "narrow" and "limited to the disclosure claims and fiduciary duty claims relating to the decision to enter into the Merger." *See id.* at 20. The supplemental disclosures the *Jennings* settlement obtained related to, *inter alia*, potential conflicts of interest by Wells Fargo, a financial advisor in the merger; terms of non-disclosure agreements; and cash flow and other financial metrics. *See id.* at 15-19. Thus, the issues presented in *Jennings* are not what the cases before this Court are about.

As a result, Mr. Phelps does not—because he cannot—provide any detail regarding how the settlement in *Jennings* impacts the claims in this action except a speculative guess that it "may." ECF No. 15 at 9. This *speculation* is not the "*proof*" that the PSLRA requires to rebut the presumption that Mr. Antosca's claims are typical. And it is contrary to the scope of the release in *Jennings* itself, which was termed "narrow" and limited only to disclosure and fiduciary duty claims.

Third, this argument is also evidence again of Mr. Phelps's inadequacy to represent the proposed Class. Mr. Phelps is essentially arguing that a significant number of the very shareholders he now seeks to represent may not have valid claims. This in and of itself raises serious questions about Mr. Phelps's own adequacy to represent the Class.

### C.     Mr. Antosca's PSLRA Certification is accurate.

Mr. Phelps's argument that Mr. Antosca's PSLRA Certification is inaccurate is wrong. It misunderstands the fact that Mr. Antosca's Certification deducts the cash consideration he received from the Covia/Fairmount merger ***during the Class Period*** in presenting his Class Period transactions to the Court. Attached as Exhibit 1 to this reply memorandum is a chart that demonstrates for the Court the simple manner in which Mr. Antosca calculated the accurate cost

9

of his Class Period transactions in Fairmount Santrol by taking this cash consideration into account. Importantly, contrary to Mr. Phelps's assertions, the chart demonstrates that Mr. Antosca's original trade confirmation purchase prices (shown in Column 2) were well within the range of trading prices on each of the purchase dates.

In short, Mr. Antosca deducted the $94,900 total value of the cash consideration he received in the merger (Column 5 - captioned "Cash Received in Merger") from his $881,149 original purchase cost basis (Column 4 - captioned "Original Cost Basis"). Then, this $786,249 reduced cost basis amount (Column 6 – captioned "Total Adjusted for Cash Received in Merger") was applied against the 0.2 Covia shares received for each Fairmount share in the merger (Column 7 - captioned "Original Shares Adjusted for Merger Exchange Rate") to calculate an accurate per-share transaction that reflects the $94,900 cash received in the Merger (Column 8 - captioned "Adjusted Price"). Had this not been done, Mr. Antosca would have presented inflated figures that did not reflect his actual transaction cost during the Class Period. Mr. Phelps is thus wrong that Mr. Antosca's Certification is inaccurate. In fact, it would have been *in*accurate for Mr. Antosca not to reflect the cash consideration received in the merger.

## III.     The Court should approve Mr. Antosca's selection of counsel.

As set forth in his opening papers, Mr. Antosca's chosen counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute this action effectively and expeditiously. No competing movant has argued to the contrary. Therefore, the Court should also approve Mr. Antosca's selection of the Thornton Law Firm LLP as Lead Counsel and of Goldman, Scarlato & Penny, P.C. as Liaison Counsel.

## IV.     Conclusion

For the foregoing reasons, Mr. Antosca respectfully requests that the Court issue an Order (1) consolidating the *Plagens* and *Baron* actions; (2) appointing Mr. Antosca as Lead Plaintiff for

the Class; (3) approving Thornton Law Firm LLP as Lead Counsel and Goldman Scarlato & Penny,

P.C. as Liaison Counsel for the Class; and (4) denying the competing motions of Messrs. Baron,

Phelps, and Palmer.

Dated: March 1, 2021                          Respectfully submitted,

                                         /s/ *Alan Rosca*
                                         Alan Rosca (OH 0084100)
GOLDMAN SCARLATO & PENNY, P.C.
23250 Chagrin Boulevard, Suite 100
Beachwood, Ohio 44122
Tel.: (216) 570-0097
Fax: (484) 580-8717
Email: rosca@lawgsp.com

Paul Scarlato (*pro hac vice* submitted)
Mark Goldman (*pro hac vice* submitted)
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Tel: (484) 342-0700
Fax: (484) 580-8717
Email: scarlato@lawgsp.com
Email: goldman@lawgsp.com

*Liaison Counsel for Paul Antosca and Proposed*
*Liaison Counsel for the Class*

THORNTON LAW FIRM LLP
Guillaume Buell (*pro hac vice*)
David Bricker (*pro hac vice*)
1 Lincoln Street
Boston, MA 02111
Telephone: (617) 531-3933
Facsimile: (617) 720-2445
Email: gbuell@tenlaw.com
Email: dbricker@tenlaw.com

*Counsel for Paul Antosca and Proposed Lead*
*Counsel for the Class*

11