# EXHIBIT A TO EXHIBIT B

(*Jennings* Brief, Exhibit to Buell Declaration)

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN JENNINGS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>FAIRMOUNT SANTROL HOLDINGS INC., JENNIFFER D. DECKARD, MATTHEW F. LEBARON, WILLIAM E. CONWAY, MICHAEL G. FISCH, CHARLES D. FOWLER, STEPHEN J. HADDEN, MICHAEL C. KEARNEY, WILLIAM P. KELLY, MICHAEL E. SAND, and LAWRENCE N. SCHULTZ,<br><br>    Defendants. | Cons. Case No. 1:18-cv-00931-CAB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY
CERTIFICATION OF THE SETTLEMENT CLASS, AND
<u>APPROVAL OF NOTICE TO THE SETTLEMENT CLASS</u>**

i

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ......................................................................................................... 1

II.    DESCRIPTION OF THE LITIGATION ...................................................................... 4

III.   THE SETTLEMENT................................................................................................... 11

IV.    THE PROPOSED SETTLEMENT IS WELL WITHIN  THE RANGE FOR
       PRELIMINARY APPROVAL..................................................................................... 13

   A.  The Applicable Legal Standard ............................................................................ 13

   B.  The Settlement Is Within The Range Of Possible Approval................................ 14

V.     PROPOSED SCHEDULE OF EVENTS .................................................................... 22

VI.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES UNDER RULES 23(a), 23(b)(1) AND (b)(2) AND
       PROPOSED NOTICE IS APPROPRIATE ................................................................ 23

   A.  The Class Is Sufficiently Numerous..................................................................... 24

   B.  Common Questions of Law and Fact Exist.......................................................... 25

   C.  Plaintiff's Claims are Typical of Those of the Class............................................ 25

   D.  PlaintiffS Will Adequately Protect the Interests of the Class ............................. 26

   E.  The Requirements of Rule 23(b) Are Satisfied.................................................... 26

       1.  Rule 23(b)(1)................................................................................................. 26

       2.  Rule 23(b)(2)................................................................................................. 27

   F.  The Proposed Plan of Class Notice Is Appropriate.............................................. 27

VII. CONCLUSION .......................................................................................................... 28

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*In re American Med. Sys.,*
  75 F.3d 1069 (6th Cir. 1996) ................................................................. 24-25

*In re Bioclinica, Inc.,*
  No. 8272-VCG, 2013 Del. Ch. LEXIS 52 (Del. Ch. Feb. 25, 2013) .........................................17

*Bittinger v. Tecumseh Prods. Co.,*
  123 F.3d 877 (6th Cir. 1997) ................................................................................24

*Brown v. Brewer,*
  No. CV-06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) ........18

*In re BTU International, Inc. Stockholders Litigation,*
  No. 10310-CB (Del. Ch. Feb. 18, 2016) (Order) ......................................................20

*Cates v. Cooper Tire & Rubber Co.,*
  253 F.R.D. 422 (N.D. Ohio 2008) ......................................................................27

*Coleman v. GM Acceptance Corp.,*
  220 F.R.D. 64 (M.D. Tenn. 2004) ......................................................................26

*Collier v. BrightPoint, Inc.,*
  No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616 (S.D. Ind. Feb. 21, 2013).........13

*Corum v. Fifth Third Bancorp.,*
  No. 99 CV-268-H, 2004 U.S. Dist. LEXIS 4651 (W.D. Ky. Mar. 3, 2004).............................23

*In re Crestwood Midstream Partners Unitholder Litigation,*
  No. 4:13-cv-01528 (S.D. Tex. May 16, 2014) (Order and Final Judgment) .............................13

*DeHoyos v. Allstate Corp.,*
  240 F.R.D. 269 (W.D. Tex. 2007) ......................................................................28

*GenCorp, Inc. v. AIU Ins. Co., Inc.,*
  297 F. Supp.2d 995  (N.D. Ohio 2003).................................................................13

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,*
  332 F.3d 976 (6th Cir. 2003) ............................................................................13

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  855 F. Supp. 825 (E.D.N.C. 1994).......................................................................14

*In re John Q. Hammons Hotels Inc. Stockholder Litigation,*
No. 758-CC, 2009 Del. Ch. LEXIS 174 (Del. Ch. Oct. 2, 2009) ................................................15

*Langbecker v. Elec. Data Sys. Corp.,*
476 F.3d 299 (5th Cir. 2007) ...........................................................................................27

*Lonardo v. Travelers Indem. Co.,*
706 F. Supp. 2d 766 (N.D. Ohio 2010)............................................................................13

*McCarthy v. Middle Tenn. Elec. Membership Corp.,*
466 F.3d 399 (6th Cir. 2006) ...........................................................................................15

*McAnaney v. Astoria Fin. Corp.,*
No. 04-CV-1101, 2006 WL 2689621 (E.D.N.Y. Sept. 19, 2006) ...............................................25

*McMullin v. Beran,*
765 A.2d 910 (Del. 2000) ................................................................................................19

*In re Netsmart Technologies, Inc. S'holders Litig.,*
924 A.2d 171 (Del. Ch. 2007)..................................................................................17, 19

*Nichting v. DPL, Inc.,*
Case No. 3:11-cv-141, 2011 U.S. Dist. 76739 (S.D. Ohio July 15, 2011) ................................17

*Nichting v. DPL, Inc.,*
Case No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) (Order and Final Judgment) ........................13

*In re OCA, Inc.,*
No. 05-2165, 2008 U.S. Dist. LEXIS 84869 (E.D. La. Oct. 17, 2008) ....................................28

*Ohio Pub. Interest Campaign v. Fisher Foods,*
546 F. Supp. 1 (N.D. Ohio 1982)....................................................................................21

*In re Picard Chem. Profit Sharing Plan v. Perrigo Co.,*
Nos. 95-CV_141, 95-CV-290,
1996 U.S. Dist. LEXIS 16330 (W.D. Mich. Sept. 27, 1996).....................................................24

*In re Prudential Sec. Inc. Ltd. P'ships Litigation,*
163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................................20, 23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
237 F.R.D. 26 (E.D.N.Y. 2006) .......................................................................................21

*In re Regado Biosciences, Inc. S'holders Litigation,*
C.A. No. 10606-CB (Del. Ch. July 27, 2016) (Order).............................................................20

*Robinson v. Ford Motor Co.,*
  Nos. 1:04cv00844, 1:04cv00845 (SAS), 2005 WL 5253339 (S.D. Ohio June 15, 2005) ..........13

*Senter v. General Motors Corp.,*
  532 F.2d 511 (6th Cir. 1976) ....................................................................................................23, 25

*Skeen v. Jo-Ann Stores, Inc.,*
  750 A.2d 1170 (Del. 2000) ....................................................................................................19

*Smith v. Robbins & Myers, Inc.,*
  969 F. Supp. 2d 850 (S.D. Ohio 2013) ....................................................................................18

*In re Talley Indus., Inc. S'holders Litig.,*
  No. Civ. A. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998) .................................................15

*In re Trulia, Inc. Stockholder Litigation,*
  129 A.3d 884 (Del. Ch. 2016)....................................................................................................19

*Williams v. Vukovich,*
  720 F.2d 909 (6th Cir. 1983) ....................................................................................................14

*Zwerin v. 533 Short North LLC,*
  568 F. App'x 374 (6th Cir. 2014) ............................................................................................13

## STATUTES & RULES

Federal Rules of Civil Procedure
    23.................................................................................................................. *passim*
    23(a) ......................................................................................................3, 23, 24
    23(a)(2) ..............................................................................................................25
    23(a)(3) ..............................................................................................................25
    23(b)...........................................................................................................23, 26
    23(b)(1) .........................................................................................3, 23, 26-27
    23(b)(2) ..............................................................................................................27
    23(e) ..................................................................................................................21
    23(e)(1) ..............................................................................................................27

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 *et seq.*....................................22

Securities Exchange Act of 1934 ("Exchange Act")
    Section 14(a) ................................................................................................... *passim*
    Section 20(a) ................................................................................................... 5-8

## OTHER AUTHORITIES

6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure:*
    Civil 2d § 1522.......................................................................................................14

5 James Wm. Moore, *Moore's Federal Practice* § 23.85[3] (3d ed. 1999) ..................................21

*Manual for Complex Litigation* § 30.41 (3d ed. 1995)......................................................14

## I.     **INTRODUCTION**

Plaintiffs John Jennings, Barry Schneider, and Jeffrey Fitzgibbon ("Plaintiffs"), by their counsel, Karon LLC ("Liaison Counsel"), Monteverde & Associates PC and Levi & Korsinsky, LLP, (collectively, "Class Counsel") in this class action, on behalf of themselves and the other members of the proposed Class (as hereinafter defined) and defendants Jenniffer D. Deckard, Matthew F. LeBaron, William E. Conway, Michael G. Fisch, Charles D. Fowler, Stephen J. Hadden, Michael C. Kearney, William P. Kelly, Michael E. Sand, Lawrence N. Schultz, and Fairmount Santrol Holdings, Inc. ("Fairmount" or the "Company") have reached an agreement to settle the Action (the "Settlement") based on terms memorialized on May 14, 2018 in a Memorandum of Understanding ("MOU") and later confirmed in a Stipulation of Settlement (the "Stipulation") dated November 9 2018,[1] subject to Court approval, requiring Defendants to make certain material supplemental disclosures prior to the stockholder vote scheduled on May 25, 2018 (the "Vote") in the Form 8-K, which was filed with the Securities and Exchange Commission ("SEC") on May 15, 2018 (the "Supplemental Disclosures"). *See* Declaration of Daniel Karon, Ex. 2.

It was critical for Plaintiffs to take decisive action to ensure an informed Vote. Plaintiffs challenged the Vote and through Plaintiffs' diligent effort they secured an informed Vote by obtaining the Supplemental Disclosures well before the Vote. If the Vote on the proposed acquisition of Fairmount proceeded absent the material Supplemental Disclosures, it would have threatened "the free and intelligent voting rights of [Fairmount] stockholders," which would have been forever "forfeited if such votes [were] exercised based upon false or misleading information." *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001).

---

[1] The Stipulation is attached as Exhibit 1 to the Declaration of Daniel Karon. The Declaration of Daniel Karon is referenced herein as "Karon Decl., Ex. _".

1

"Monetary damages [could not] restore the right of stockholders to effectively exercise their corporate suffrage rights." *Id*. After reviewing the Supplemental Disclosures, a majority of the fully informed Fairmount stockholders decided to vote in favor of the acquisition of Fairmount by Unimin Corporation, which was completed on June 1, 2018.

Plaintiffs obtained key discovery before the Vote and additional discovery, including depositions of key witnesses shortly after the Vote to confirm the fairness of the Settlement. As set forth below, the Settlement was reached only after Plaintiffs spent significant time analyzing of the strengths and weaknesses of the claims asserted in the actions though comprehensive legal research and analysis of information about the Fairmount, both public and non-public documents. and recognized the value of the undisclosed information to Fairmount stockholders demanded action and pressed on with a motion for preliminary injunction and discovery. The Settlement was achieved only after extended significant amount of work in a truncated period of time and extensive arm's length negotiations. Plaintiffs' and Class Counsel have determined that the proposed Settlement is in the best interests of the Class and the Company. Accordingly, this Motion follows as the first step to seek preliminary approval of the Settlement, in order to approve notice to be sent to the Class[2] to comport with due process and schedule a Settlement hearing to consider approval of the Settlement (the "Final Settlement Hearing").

The second step will be the "Final Settlement Hearing when the Court will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate. This Memorandum describes the basis for the Motion, and sets forth a proposed schedule for the process going forward.

---

[2] Capitalized terms not defined herein have the same meaning as is the Stipulation.

Plaintiffs respectfully request that this Court enter the proposed scheduling order preliminarily approving the Settlement and setting a settlement hearing ("Scheduling Order"), attached as <u>Exhibit B</u> to the Stipulation, which, among other things, will:

i. preliminarily approve the Settlement with the Defendants on the terms set forth in the Stipulation;

ii. certify Plaintiffs John Jennings, Barry Schneider, and Jeffrey Fitzgibbon as Class Representatives;

iii. conditionally appoint Karon LLC as Liaison Counsel, and Monteverde & Associates P.C. and Levi & Korsinsky, LLP as Class Counsel;

iv. approve the form, substance and requirements of the Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing (the "Notice");

v. find that the procedures established for mailing and distribution of the Notice, substantially in the manner and form set forth in the Scheduling Order, constitute the best notice practicable under the circumstances, and are in full compliance with the notice requirements of due process, Fed. R. Civ. P. 23 and The Class Action Fairness Act of 2005 ("CAFA");

vi. set a schedule and procedures for dissemination of the Notice to the Class, for requesting exclusion from the Class, for objecting to the Settlement, for submitting papers in support of final approval of the Settlement and proposed Lead Counsel's request for an award of attorney's fees and expenses, and for the Settlement Hearing; and

vii. stay the Action pending final approval of the Settlement.

Plaintiffs also request preliminary certification of the proposed Class for Settlement purposes only.[3] Such certification complies with Rule 23(a), 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure. The Scheduling Order also provides for such certification.

---

[3] The parties have stipulated to the certification of the following Class for Settlement purposes only: any and all record and beneficial holders of Fairmount common shares, their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held Fairmount common shares at any time between and including December 11, 2017 and June 1, 2018, the date on which the Merger was

## II.     DESCRIPTION OF THE LITIGATION

On December 11, 2017, Fairmount entered into an Agreement and Plan of Merger, by and among Fairmount, Unimin Corporation ("Unimin"), and the other parties thereto (the "Merger Agreement"), providing for, among other things, the merger (the "Merger") of a merger sub into Fairmount with Fairmount continuing as the surviving corporation and a direct wholly owned subsidiary of Unimin (the "Transaction").

Under the terms announced, upon the closing of the Merger, Unimin would become the parent holding company for the combined group (the "Combined Company") and each Fairmount stockholder would be entitled to receive (i) the number of shares of Combined Company common stock that will result in Fairmount stockholders owning approximately 35% of the Combined Company common stock, (ii) $170,000,000 in cash (which was estimated to result in cash consideration of approximately $0.74 per fully diluted share of Fairmount common stock), and (iii) cash paid in lieu of fractional shares, if any, without interest.

On April 11, 2018, Unimin filed with the United States Securities and Exchange Commission (the "SEC") a proxy statement/prospectus on Form S-4, and filed amendments to that registration statement on April 18, 2018 and April 23, 2018.

On April 24, 2018, plaintiff Jennings filed a lawsuit in the United States District Court for the Northern District of Ohio (the "Court") on behalf of himself and a putative class of Fairmount stockholders, captioned *Jennings v. Fairmount Santrol Holdings Inc.*, No. 1:18-cv-00931-CAB, alleging, among other things, that Defendants committed disclosure violations under Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated

consummated, but excluding Defendants, their subsidiary companies, affiliates, assigns, and members of their immediate families, as the case may be (the "Class").

4

thereunder and that the Individual Defendants committed disclosure violations under Section 20(a) of the Exchange Act in connection with the Proxy Statement (the "*Jennings* action").

On April 26, 2018, Fairmount filed with the SEC the definitive proxy statement on Form DEF14A (containing the proxy portion of the Form S-4 filed by Unimin), which contained no changes to that portion of the April 23, 2018 filing and which, among other things, (i) summarized the Merger Agreement (which is annexed to the definitive proxy statement), (ii) provided an account of the events leading up to the execution of the Merger Agreement, (iii) stated that the Fairmount board of directors determined that the Merger was in the best interests of Fairmount's stockholders and recommended the Merger, and (iv) summarized the valuation analyses and fairness opinion by Wells Fargo Securities, LLC ("Wells Fargo"), Fairmount's financial advisor (the "Proxy Statement"). A special meeting of Fairmount stockholders was scheduled to be held on May 25, 2018 (the "May 25 Meeting") at which Fairmount stockholders would vote on, among other items, a proposal to adopt the Merger Agreement.

On April 27, 2018, Melvyn Klein ("Klein") filed a lawsuit in the United States District Court for the District of Delaware on behalf of himself and a putative class of Fairmount stockholders, captioned *Klein v. Fairmount Santrol Holdings Inc.*, No. 1:18-cv-00646, alleging, among other things, that Defendants committed disclosure violations under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that the Individual Defendants committed disclosure violations under Section 20(a) of the Exchange Act in connection with the Proxy Statement (the "*Klein* action").

On April 30, 2018, Jennings' counsel sent a letter to counsel for Fairmount demanding the disclosure of additional information regarding the Merger.

5

On May 1, 2018, plaintiff Rosello filed a lawsuit in the Court, captioned *Chabrier Rosello v. Fairmount Santrol Holdings Inc.*, No. 1:18-cv-01002, alleging, among other things, that Defendants committed disclosure violations under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that the Individual Defendants committed disclosure violations under Section 20(a) of the Exchange Act in connection with the Proxy Statement (the "*Rosello* action").

On May 2, 2018, Jennings filed a motion for a preliminary injunction, seeking to enjoin the May 25 Meeting. The same day, Jennings' counsel published a notice, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), announcing that a putative class action had been filed against Defendants.

On May 4, 2018, Jennings filed a motion in the Court seeking an order, among other things, (i) consolidating the *Jennings* and *Rosello* actions and any later-filed actions that assert similar claims against Defendants in connection with the Merger, (ii) appointing Jennings as interim lead plaintiff pursuant to PSLRA, including on the basis that Jennings has the largest financial interest in the relief sought by the putative class, and (iii) approving Jennings' counsel, Monteverde & Associates PC ("Monteverde & Associates"), as interim class counsel and Karon LLC as interim liaison counsel.

Also on May 4, 2018, plaintiff Richard Scarantino ("Scarantino"), an asserted owner of 100 shares of Fairmount stock, filed a lawsuit in the Court on behalf of himself and a putative class of Fairmount stockholders, captioned *Scarantino v. Fairmount Santrol Holdings Inc.*, No. 1:18-cv-01002, alleging, among other things, that Defendants committed disclosure violations under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that the Individual

Defendants committed disclosure violations under Section 20(a) of the Exchange Act in connection with the Proxy Statement (the "*Scarantino* action").

On May 10, 2018, Defendants filed their opposition to the motion for a preliminary injunction in the *Jennings* action.  Defendants and counsel for plaintiff in the *Jennings* action (and the later-filed *Fitzgibbon* action) discussed potential disclosure of non-public documents to permit evaluation of the claims asserted in the *Jennings* action, and agreed in principle to the exchange of such documents.

On the same day, plaintiff Schneider filed a lawsuit in the Court on behalf of himself and a putative class of Fairmount stockholders, captioned *Schneider v. Fairmount Santrol Holdings Inc.*, No. 1:18-cv-01002 alleging, among other things, that Defendants committed disclosure violations under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that the Individual Defendants committed disclosure violations under Section 20(a) of the Exchange Act in connection with the Proxy Statement (the "*Schneider* action").

On May 11, 2018, Schneider filed a motion for a preliminary injunction, seeking to enjoin the May 25 Meeting.  Schneider also filed a motion in the Court seeking an order, among other things, (i) consolidating the *Jennings*, *Rosello*, *Scarantino*, and *Schneider* actions, (ii) appointing Schneider as interim lead plaintiff pursuant to the PSLRA, including on the basis that Schneider has the largest financial interest in the relief sought by the putative class, and (iii) approving Schneider's counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), as interim class counsel and Cummins Law LLC as interim liaison counsel.

Late that day, plaintiff Fitzgibbon filed a lawsuit in the Court on behalf of himself and a putative class of Fairmount stockholders, captioned *Fitzgibbon v. Fairmount Santrol Holdings Inc.*, No. 1:18-cv-01095-PAG, alleging, among other things, that Defendants committed disclosure

7

violations under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that the Individual Defendants committed disclosure violations under Section 20(a) of the Exchange Act in connection with the Proxy Statement (the "*Fitzgibbon* action").

On May 12, 2018, Defendants and counsel for the plaintiffs in the *Jennings*, *Rosello*, *Schneider*, and *Fitzgibbon* actions further discussed potential disclosure of non-public documents to permit evaluation of the claims asserted in those actions, and agreed to the exchange of such documents, subject to a confidentiality agreement executed on May 12, 2018. Later that day, pursuant to the terms of the confidentiality agreement, Defendants produced to counsel for plaintiffs Jennings, Rosello, Schneider, and Fitzgibbon certain non-public documents to permit evaluation of the claims asserted in the *Jennings*, *Rosello*, *Schneider*, and *Fitzgibbon* actions.

On May 14, 2018, Jennings filed a reply brief in support of his motion for a preliminary injunction in the *Jennings* action. The Court scheduled oral argument on Jennings' motion for a preliminary injunction for May 18, 2018 (the "May 18 Motion Hearing"). That same day, Defendants filed in the District of Delaware a motion to transfer venue, seeking an order transferring the *Klein* action to the Court.

On May 14, 2018, after arm's-length discussions and negotiations concerning a possible resolution of the actions based on demands by Jennings, Rosello, Schneider, and Fitzgibbon for disclosure of additional information to Fairmount stockholders in connection with the Merger, after plaintiffs' counsel's review and consideration of certain non-public documents and materials relating to the Merger, including minutes from board meetings and materials from Fairmount's financial advisor, which were provided to Jennings, Rosello, Schneider, and Fitzgibbon on a confidential basis, and after plaintiffs' counsel's review of certain additional information provided by Defendants that could be disclosed to Fairmount stockholders in connection with the Merger,

8

counsel for Jennings, Rosello, Schneider, and Fitzgibbon entered into the MOU with counsel for Defendants, in which counsel set forth their agreement-in-principle for the dissemination of additional information to Fairmount stockholders, the Supplemental Disclosures, that Jennings, Rosello, Schneider, and Fitzgibbon and their counsel believed would address the disclosure claims asserted in the *Jennings*, *Rosello*, *Schneider*, and *Fitzgibbon* actions.

On May 15, 2018, Fairmount disseminated the Supplemental Disclosures to Fairmount stockholders through a current report on Form 8-K filed with the SEC, a copy of which is attached to the Stipulation as Exhibit A. Following the filing of the Supplemental Disclosures, Jennings and Schneider each filed notices of withdrawal of their respective motions for preliminary injunction and informed the Court of the MOU, and Jennings requested that the Court vacate the May 18 Motion Hearing.

That same day, Jennings, Schneider, and Fitzgibbon filed a motion in the Court seeking an order, among other things, (i) consolidating the *Jennings*, *Rosello*, *Scarantino*, *Schneider*, and *Fitzgibbon* actions and the *Klein* action, if transferred to the Court (ii) appointing Jennings, Schneider, and Fitzgibbon as interim lead plaintiffs pursuant to the PSLRA, including on the basis that Jennings, Schneider, and Fitzgibbon individually and collectively have the largest financial interest in the relief sought by the putative class, and (iii) approving Jennings, Schneider, and Fitzgibbon's counsel, Monteverde & Associates and Levi & Korsinsky, as interim class counsel and Karon LLC as interim liaison counsel.

On May 16, 2018, the Court vacated the May 18 Motion Hearing.

On May 22, 2018, the District of Delaware granted Defendants' motion to transfer venue and entered an order transferring the *Klein* action to the Court.

On May 25, 2018, at a special meeting of the stockholders of Fairmount, the holders of the majority of the outstanding shares of Fairmount voted to approve the Merger, among other things. On June 1, 2018, the Merger was effected pursuant to the Merger Agreement.

On June 4, 2018, Scarantino filed a notice of voluntary dismissal of the *Scarantino* action, which the Court granted on June 5, 2018.

On June 7, 2018, the Court entered an order consolidating the *Jennings*, *Rosello*, *Schneider*, *Fitzgibbon*, and *Klein* actions (together, the "Action") for all purposes under Lead Case Number 1:18-cv-00931-CAB.

On July 2, 2018, Jennings, Schneider, and Fitzgibbon filed a motion in the Court seeking an order, among other things, (i) appointing Jennings, Schneider, and Fitzgibbon as lead plaintiffs pursuant to the PSLRA, and (ii) approving Jennings and Fitzgibbon's counsel, Monteverde & Associates, and Schneider's counsel, Levi & Korsinsky, as class counsel and Karon LLC as liaison counsel.

On July 9, 2018, the Court entered an order that, among other things, (i) appointed Jennings, Schneider, and Fitzgibbon as lead plaintiffs pursuant to the PSLRA ("Lead Plaintiffs"), and (ii) approved Jennings and Fitzgibbon's counsel, Monteverde & Associates, and Schneider's counsel, Levi & Korsinsky, as class counsel (and Karon LLC as liaison counsel.

Lead Plaintiffs, through Class Counsel, have conducted a thorough investigation of the claims and allegations asserted in the actions, as well as the underlying events and transactions relevant to those claims and allegations and, in connection with that investigation, Class Counsel has reviewed publicly available documents related to the Merger as well as non-public documents produced by Defendants and Wells Fargo. Class Counsel took the depositions on June 27, 2018 of Mr. LeBaron, the former chairman of the Fairmount board and member of the working group

referred to in the Proxy Statement as the Business Combination Group, and on June 28, 2018 of

Mr. Babowal, a representative of Wells Fargo, which served as Fairmount's financial advisor, and

reviewed additional non-public documents produced by Defendants. On November 9 2018, the

parties entered into the Stipulation.

Class Counsel believes that Lead Plaintiffs' claims have merit based on proceedings to

date, but Class Counsel acknowledges that Defendants would continue to assert legal and factual

defenses to the claims made in the Action. Based upon the discovery conducted and an analysis

of potential claims involving the Merger, Counsel has determined, based on their extensive

experience litigating stockholder class actions,[4] that the Settlement is fair, adequate and reasonable

to Fairmount stockholders.

Throughout the Action, Class Counsel conducted a thorough investigation into the facts

and law relating to the Merger. For instance, Plaintiffs analyzed the merits of all parties'

contentions, including the impact of the proposed Settlement on Plaintiffs and absent Settlement

Class members. Thereafter, Plaintiffs and Class Counsel entered into the Stipulation with

Defendants providing for the Settlement described below. Importantly, during the negotiations,

all parties had a clear view of the strengths and weaknesses of their respective claims and

defenses, and the Settlement is the product of arm's-length negotiations between the parties, who

were all represented by counsel with extensive experience and expertise in stockholder litigation.

## III.   THE SETTLEMENT

After vigorous negotiations, on May 14, 2018, counsel to the parties in the Action reached

an agreement memorialized in the MOU that Fairmount would disseminate the Supplemental

---

[4] The resumes of Karon LLC, Monteverde & Associates PC, and Levi & Korsinsky, LLP, attached
as Exhibits 2, 3 and 4 to the Karon Declaration.

11

Disclosures to Fairmount stockholders on May 15, 2018 through the filing of a Form 8-K with the SEC.

On May 25, 2018, at a special meeting of the stockholders of Fairmount, the holders of the majority of the outstanding shares of Fairmount voted in favor of the Transaction. On June 1, 2018, Fairmount became a wholly owned subsidiary of Unimin.

On the basis of information available to them, including publicly-available information, and the additional confirmatory discovery described herein, Class Counsel has determined that the Settlement described herein is fair, reasonable, adequate, and in the best interests of Plaintiff and the Class because it empowered the stockholders of Fairmount to make a fully informed decision on whether to approve the Merger. Thus, Plaintiffs entered into the Stipulation.

Plaintiffs have agreed to settle the claims raised in the actions against the Defendants pursuant to the terms and provisions of the Stipulation, after considering (i) the benefits the Class received from the Settlement with the Defendants, which empowered the stockholders of Fairmount to make a fully informed decision on whether to vote in favor or against the Merger; (ii) the attendant risks of litigation, including in particular the risks of establishing liability and damages, and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.

At the time the agreement in principle to settle the actions was reached, Plaintiffs and Class Counsel had a thorough understanding of the case, which they have strengthened through confirmatory discovery. Plaintiffs and Class Counsel considered the uncertain outcome and trial risk in complex lawsuits like this one, and that, even if they were successful, after the resolution of appeals that were a near-certainty to be taken (which could take years to resolve), the Merger

12

would already be consummated and the Fairmount stockholders would have been deprived of their right to make a fully informed decision on whether to approve the Merger.

**IV.    THE PROPOSED SETTLEMENT IS WELL WITHIN THE RANGE FOR PRELIMINARY APPROVAL____**

    **A.    THE APPLICABLE LEGAL STANDARD**

The Sixth Circuit has repeatedly endorsed an overriding public interest in the settling of litigation. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979 (6th Cir.2003); *Zwerin v. 533 Short North LLC*, 568 F. App'x 374, 375 (6th Cir. 2014) (Acknowledging that "public policy" favors "settlement of disputes); *GenCorp, Inc. v. AIU Ins. Co.*, *Inc.,* 297 F. Supp. 2d 995, 1001 n.7 (N.D. Ohio 2003) ("Ohio public policy favors settlement ...."). This is especially true with respect to class actions. *See Robinson v. Ford Motor Co.*, Nos. 1:04cv00844, 1:04cv00845 (SAS), 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005) ("The law generally favors the settlement of complex class actions.") (internal citations omitted); *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (same).  When settlement is achieved, the parties are spared the expense and delay of litigation and the judicial system is relieved of the costs and burdens of trial.  *See Rice v. Genworth Financial Inc.*, No. 3:17-cv-00059-REP (EDVA July 3, 2018)(approving disclosure settlement with narrow release [as in proposed Settlement] and awarding $625,000 in fees); *Aron v. Philips* (Crestwood Midstream 2015 merger), No. 4:15-cv-01367 (S.D. Tex. Oct. 14, 2016) (approving disclosure settlement and awarding $575,000 attorneys' fee and expenses); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616, at *3 (S.D. Ind. Feb. 21, 2013) (approving settlement that "compel[led] Defendants to make certain disclosures to Defendants' shareholders." and awarding $600,000 in attorneys' fees to Class Counsel);  *Nichting v. DPL Inc.*, No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) (approving disclosures settlement of previously withheld projections and awarding

$700,000 in fees). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1522, at 225-26 (citing 1983 Advisory Committee Notes).

In evaluating whether a class action settlement warrants final approval, the district court must decide whether the proposed settlement is "fair, reasonable and adequate." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *see also Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). However, at the preliminary approval stage, the Court need only take a preliminary look at the terms of the settlement to make certain that it is "within the range of possible approval." *Id.* Thus, as explained in *Horton*, courts follow a two-step process in reviewing class action settlements for approval:

> First, the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval" or, in other words, whether there is "probable cause" to notify the class of the proposed settlement. Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a "fairness" hearing at which all interested parties are afforded an opportunity to be heard on the proposed settlement. The ultimate purpose of the fairness hearing is to determine if the proposed settlement is "fair, reasonable, and adequate."

*Id.* (citations omitted); *see also Manual for Complex Litigation* §30.41 at 237 (3d ed. 1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies … and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given").

**B.**      THE SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

The proposed Settlement satisfies the standard for preliminary approval. The proposed Settlement, which provided for dissemination of the Supplemental Disclosures, and the material information therein, is clearly beneficial to the Class. Through the Supplemental Disclosures,

14

Fairmount stockholders received further material information necessary to cast a fully informed vote regarding the Merger.

### 1.     The Supplemental Disclosures Were Material

It is well settled under Delaware law[5] that curative disclosures confer a substantial benefit on the class.  *See, e.g., In re Talley Indus., Inc. S'holders Litig.*, No. Civ. A. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998) ("[T]he timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.").

The Supplemental Disclosures provided additional material information as to the Board's knowledge of the potential conflicts of interest faced by Wells Fargo, the Company's financial advisor:

> During the two years preceding the date of Wells Fargo Securities' written opinion, affiliates of Wells Fargo Securities have provided commercial banking services to Unimin, for which affiliates of Wells Fargo Securities have received and would expect to receive customary fees, which fees are not material, and about which Fairmount Santrol, including members of the Fairmount Board, was aware when it engaged Wells Fargo Securities to provide investment banking services. During such period, Wells Fargo Securities received no fees from Unimin for provision of investment banking services.

Karon Decl. Ex. 2 at 4.  Whether the Board has considered the conflict of interest is of paramount importance to stockholders who must be assured that the Board acted in a fully-informed manner and therefore the weight to place on the conflict.  *See In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2009 Del. Ch. LEXIS 174, at *55-56 (Del. Ch. Oct. 2, 2009) ("This Court,

---

[5]  Delaware law is particularly instructive, since Delaware courts routinely handle class action litigation challenging corporate transactions and also review settlements involving Proxy claims such as this on a regular basis.  *See McCarthy v. Middle Tenn. Elec. Mbrshp. Corp.*, 466 F.3d 399, 409 (6th Cir. 2006).

however, has stressed the importance of disclosure of potential conflicts of interest of financial advisors. . . . It is imperative that stockholders be able to decide for themselves what weight to place on a conflict faced by the financial advisor.").

The Supplemental Disclosures also provided material information as to the terms of the non-disclosure agreements entered into by Company with Party A and Party B:

> The non-disclosure agreements contained customary mutual "standstill" provisions, which continue until November 6, 2018 and November 7, 2018, respectively. The terms of those non-disclosure agreements were not intended to prevent either Party A or Party B from communicating with the Fairmount Board after the signing of the merger agreement, and the non-disclosure agreements permit Party A and Party B to make proposals to the Fairmount Board that do not require public disclosures.

Karon Decl. Ex. 2 at 5. Whether or not the nondisclosure agreements entered into by Fairmount and the various counterparties contained such standstill provisions and, if so, the terms of any such provision(s), were material pieces of information that would drastically alter Fairmount stockholders perception of the process. *See In re Ancestry.com, Inc. S'holder Litig.*, Consol. C.A. No. 7988-CS (Del. Ch. Dec. 17, 2012) (granting injunction pending disclosure of DADW standstills even after they had been waived and noting that stockholders were operating under a "false impression that any of the folks who signed the standstill could have made a superior proposal. That's not true. They could only make it by breaching the standstill.") (Karon Decl. Ex. 3). Any reasonable stockholder would regard the fact that likely potential topping bidders in the marketplace have been contractually precluded from submitting a competing proposal as "'significantly alter[ing] the "total mix" of information'" available to it in deciding whether to vote in favor of the Proposed Transaction. *See TSC Industries*, 426 U.S. at 449; *Ancestry*, Consol. C.A. No. 7988-CS at 230 ("the electorate should know that with respect to the comfort they should take in the ability [of another bidder] to make a superior proposal").

16

Furthermore, the Supplemental Disclosures provided the line items necessary to reconcile Unlevered Free Cash Flow to Adjusted EBITDA, as well as additional items including Total Volumes Sold and Gross Profit Margin:

| ($ in millions) | 2017P | 2018P | 2019P | 2020P |
|---|---|---|---|---|
| Total Volumes Sold (million tons) | 12.7 | 15.5 | 16.3 | 16.4 |
| Gross Profit Margin | $ 303 | $ 427 | $ 395 | $ 396 |
| Adjusted EBITDA* | $ 190 | $ 321 | $ 294 | $ 292 |
| CapEx (incl. Capital & Mineral Lease, Earnout Payments) | ($ 97) | ($ 136) | ($ 54) | ($ 58) |
| Capitalized Stripping Costs | ($ 2) | ($ 2) | ($ 3) | ($ 3) |
| Unlevered Free Cash Flow | $ 72 | $ 76 | $ 172 | $ 157 |

\* 2017 Adjusted EBITDA reflects non-cash adjustments of $9. All Adjusted EBITDA figures reflect stripping cost adjustments of ($11). All Adjusted EBITDA figures are net of stock-based compensation of ($8) for 2017 and ($11) for 2018 – 2020.

*Id*. The additional financial information and projected financial data is strongly favored and preferred under SEC regulations and allowed stockholders accurately and completely to weigh and understand the rationale for the Board's recommendation. Furthermore, management's financial projections are material to stockholders because they are "the best estimate of the company's future returns." *See In re Netsmart Technologies, Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007). When the Company disclosed only a portion of its forecast, Fairmount made only a partial disclosure that was materially misleading to stockholders by omission. *See In re Bioclinica, Inc. S'holder Litig.*, No. 8272-VCG, 2013 Del. Ch. LEXIS, at \*18 (Del. Ch. Feb. 25, 2013) (finding the omission of financial projections a material omission sustaining injunctive relief). Plaintiff submits that the Supplemental Disclosures provided a substantial benefit by correcting this material omission and providing stockholders with the complete and material information necessary to make a fully informed vote.

Additionally, courts throughout the country have placed a similar premium on the disclosure of projections. *See, e.g.*, *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, at \*17 n.16 (S.D. Ohio July 15, 2011) ("it smacks of materiality that a voter be made aware

17

of the Company's cash flow projections in order to make an informed decision."); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) (finding omitted line items from financial projections were material because the projections were used by financial advisor in its fairness analyses); *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued.").

Finally, the Supplemental Disclosures also provided the individual multiples calculated by Wells Fargo in conducting its *Selected Companies Analysis*:

| Company | TEV/2018P Adjusted EBITDA | TEV/2019P Adjusted EBITDA |
|---|---|---|
| Emerge Energy Services LP | 4.0x | 4.3x |
| Hi-Crush Partners LP | 4.5x | 4.8x |
| Smart Sand, Inc. | 4.2x | 3.5x |
| U.S. Silica Holdings, Inc. | 5.5x | 5.4x |

*Id.* at 4.

| Company | TEV/2018P Adjusted EBITDA | TEV/2019P Adjusted EBITDA |
|---|---|---|
| *Pure Play Proppant Peers* | | |
| Emerge Energy Services LP | 4.0x | 4.3x |
| Hi-Crush Partners LP | 4.5x | 4.8x |
| Smart Sand, Inc. | 4.2x | 3.5x |
| *Proppant/I&R Sand Peers* | | |
| Fairmount Santrol Holdings, Inc. | 5.4x | 5.4x |
| U.S. Silica Holdings, Inc. | 5.5x | 5.4x |
| *Industrial Peers* | | |
| Eagle Materials, Inc. | 10.6x | 9.7x |
| Minerals Technologies, Inc. | 9.1x | 8.8x |

*Id* at 5.

18

Among other disclosures, Wells Fargo's observed multiples and implied per share values for 2018 and 2019 TEV/Adjusted EBITDA P/E for Unimin and Fairmount in the *Selected Companies Analysis* were disclosed to Fairmount stockholders. This disclosure was beneficial to Fairmount stockholders because the analyses implied contribution percentage ranges from 19% to 38%, implying that the Transaction's ratio of 35% was at the upper end of the range. Thus the individual multiples allowed Fairmount stockholders to understand whether Wells Fargo had manipulated the analysis by selecting companies that would encourage stockholders to support the Transaction. Without the benefit of this additional disclosure, the Proxy materially misled Fairmount stockholders through partial and incomplete disclosure of each analysis, omitting a key attribute of each. *See Netsmart*, 924 A.2d at 203-04 (requiring disclosure of the key attributes of financial analyses underlying a banker's fairness opinion).

In fact, the Supplemental Disclosures were essential for Fairmount stockholders to evaluate the fairness of the Merger, the accuracy of the disclosures and/or reliability of the financial advisor's valuation analyses and opinion contained in the Registration Statement, and to ultimately determine whether or not to exercise their appraisal rights. Indeed, the disclosure of all material information is of particular importance to stockholders, who must determine whether or not to seek appraisal. *See McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000); *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. 2000).[6]

---

[6] Plaintiff believes that the instant matter is readily distinguishable from the Delaware Court of Chancery's recent opinion in *In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 902 (Del. Ch. 2016). *Trulia* is distinguishable from this Action because it involved a stock-for-stock merger of widely held, publically traded companies, whereas this Action concerns an all-cash take-private acquisition of the outstanding shares held by a stockholder minority spearheaded by a majority stockholder. *See Trulia*, 129 A.3d at 847, n. 41. Here, the Supplemental Disclosures are particularly valuable to non-affiliated stockholders – the Class – because a majority stockholder is buying the Company and insiders were on both sides of the Transaction. *See In re. John Q. Hammons Hotels Inc., S'holder Litig.*, 2009 Del. Ch. LEXIS 174, at *55-56 (Del. Ch. Oct. 2, 2009)

## 2. The Release Is Narrow And Appropriate

The release in the Settlement is appropriate to the case at issue and in fact substantially narrower than historical releases in securities cases. The release at issue is limited to the disclosure claims and fiduciary duty claims relating to the decision to enter into the Merger. This release was explicitly modelled after the release approved by the Delaware Court of Chancery Court in *In re BTU Int'l, Inc. S'holders Litig.*, C.A. No. 10310-CB, Order at 40 (Del. Ch. Feb. 18, 2016) (Karon Decl. Ex. 4). This appropriate and narrow release will strongly support the approval of the Settlement. This conclusion is buttressed further by the Delaware Chancery Court's recent approval of a settlement in *Regado*, in which the Court approved a settlement crediting a single "plainly material" disclosure and the waiver of certain "don't ask, don't waive" standstill provisions as sufficient consideration for a release of claims nearly identical to that proposed here. *In re Regado Biosciences, Inc. S'holder Litig.*, C.A. No. 10606-CB, Order at 29-33 (Del. Ch. July 27, 2016) (Karon Decl. Ex. 5).

Given the complexities of the actions, and the continued risks if the parties were to proceed to trial, the Settlement represents an excellent result. *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class.").

## 3. Experienced Class Counsel Support the Settlement

Class Counsel have significant experience in securities and other complex class action litigation, and have negotiated hundreds of other substantial class action settlements throughout

---

(Process and conflicts disclosures are "particularly important where there was no public auction of the Company.").

the country. Class Counsel are "well informed as to the operative facts" and "considerable risks" of the Action. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Courts recognize that the opinion of experienced and informed counsel supporting a proposed settlement is entitled to considerable weight. *Ohio Pub. Interest Campaign v. Fisher Foods*, 546 F. Supp. 1, 11 (N.D. Ohio 1982). It is Plaintiffs' and Class Counsel's informed opinion that, given the uncertainty and further substantial expense of pursuing the Action against Defendants through trial and possible appeals, the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class and warrants preliminary approval.

The proposed Settlement before the Court was achieved after serious, informed, arms-length negotiations between the parties, and falls squarely within the range of reasonableness, meriting notice of the settlement to Settlement Class Members. At this point, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable and adequate. The Court is only being asked to permit notice of the terms of the Settlement to be sent to the Class, and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members as to the fairness of the Settlement. 5 James Wm. Moore, *Moore's Federal Practice* §23.85[3], at 23-353 to 23-354 (3d ed. 1999).

As outlined in the proposed Scheduling Order, Defendants will notify the Class of the Settlement by mailing the Notice to all stockholders of record that are members of the Class at their last known address appearing in the stock transfer records maintained by or on behalf of Fairmount, within twenty (20) business days after entry of the Scheduling Order. The Notice will advise Class Members of the essential terms of the Settlement, set forth in the procedure for objecting to the Settlement, and will provide specifics on the date, time and place of the Settlement Hearing. Class Counsel believes that the proposed Notice represents the best notice practicable

under the circumstances because it fairly apprises the Class of their rights with respect to the Settlement and thus, it should be approved by the Court.

## V. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice, and deadlines for objecting to the Settlement. Plaintiffs propose the following schedule:

i.  No later than ten (10) calendar days following the filing of the Stipulation with the Court, serve upon the appropriate State official of each State in which a Member of the Settlement Class resides and the Attorney General of the United States a notice of the proposed settlement (the "CAFA Notice") in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA").

ii.  Notice mailed to Class within sixty (60) calendar days before the Final Settlement Hearing;

iii.  Plaintiffs shall file their papers in support of final approval of the Settlement and Fee Application within thirty-five (35) days of the Final Settlement Hearing.

iv.  Objections to the Settlement shall be filed and served within fourteen (21) days of the Settlement Hearing; and

v.  Plaintiffs shall file their reply papers in support of final approval of the Settlement within seven (7) days of the Final Settlement Hearing.

vi.  Settlement Hearing at least 100 calendar days from the entry of the Preliminary Approval Order;

22

## VI. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a), 23(b)(1) AND (b)(2) AND PROPOSED NOTICE IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Class for Settlement purposes under Rules 23(a), 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential*, 163 F.R.D. at 205. The proposed Scheduling Order provides for certification of the Class as a non-opt out class, and also provides for the conditional appointment of Co-Lead Counsel.

Pursuant to Federal Rule 23, an action may be maintained as a class action if each of Rule 23(a) four requirements is met:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*See also Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976); *Corum v. Fifth Third Bancorp*, No. 99 CV-268-H, 2004 U.S. Dist. LEXIS 4651, at *4 (W.D. Ky. Mar. 3, 2004).

Additionally, in order to be maintained as a class action, the action must qualify under one of the subdivisions of Rule 23(b):

> (1) prosecuting separate actions by or against individual members would create a risk of:

>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members

23

not parties to the individual adjudications or would substantially impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

As set forth below, all of the requirements of Rule 23 are met in this case, justifying preliminary certification of the proposed Class for settlement purposes.

## A.     THE CLASS IS SUFFICIENTLY NUMEROUS

The proposed Class is sufficiently numerous to satisfy the requirement of Rule 23(a). The Sixth Circuit has recognized that although "[t]here is no strict numerical test for determining impracticability of joinder . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by numbers alone." *In re American Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (holding that joinder of 1100 class members is impracticable). As such, numerosity "is generally assumed to have been met in class action suits involving nationally traded securities." *In Picard Chem. Profit Sharing Plan v. Perrigo Co.*, Nos. 95-CV-141, 95-CV-290, 1996 U.S. Dist. LEXIS 16330, at *16 (W.D. Mich. Sept. 27, 1996).

The Class consists of all record and beneficial holders of common stock of the Company (excluding Defendants in the Action, their immediate families and related entities) for the period between and including December 11, 2017 and June 1, 2018. While the exact number of Class members is unknown, the Class surely consists of thousands given the number of outstanding

24

shares of Fairmount (224,954,671 shares outstanding on April 2, 2018 according to the Registration Statement) during the Settlement Class Period.

### B. COMMON QUESTIONS OF LAW AND FACT EXIST

To certify the Class there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Sixth Circuit has held that "commonality" may be satisfied by a single common issue. *See American Med. Sys.*, 75 F.3d at 1080. In this case, questions of law and fact common to the Settlement Class include, among others, the following: (1) the materiality and adequacy of the Supplemental Disclosures, and (2) whether the settlement is reasonable, fair, and adequate.

### C. PLAINTIFF'S CLAIMS ARE TYPICAL OF THOSE OF THE CLASS

According to Rule 23(a)(3) of the Fed. R. of Civ. P., "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' interests are aligned with those of the Class members and in pursuing their claims in this litigation, they advanced the interests of the Class members. *See In re American Med. Sys.*, 75 F.3d at 1082. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *McAnaney v. Astoria Financial Corp.,* No. 04-CV-1101, 2006 U.S. Dist. LEXIS 66941, at *14 (E.D.N.Y. Sept. 19, 2006) (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)); *Senter*, 532 F.2d at 524 (holding that "[f]actual identity between the plaintiff's claims and those of the class he seeks to represent is not necessary.").

Plaintiffs' claims are essentially identical to those of the Class, as they are all equally affected as Fairmount's stockholders by the Transaction, Fairmount's and the Individual Defendants' disclosure regarding the Transaction, and the Settlement relating to these matters.

### D. PLAINTIFFS WILL ADEQUATELY PROTECT THE INTERESTS OF THE CLASS

The Sixth Circuit has outlined two criteria for determining whether the proposed class representatives will be adequate: "(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel." *Coleman v. GM Acceptance Corp.,* 220 F.R.D. 64, 79 (M.D. Tenn. 2004) (*quoting Senter,* 532 F.2d 511).

Here, Plaintiffs' interests are completely aligned with those of the Class, because they stand in a position identical to all other Company stockholders in the Class, and would benefit from the same relief regarding the Transaction. Plaintiffs, through Class Counsel, has vigorously prosecuted this case for the benefit of all members of the Class and negotiated the Settlement, including the Supplemental Disclosures, which confers a substantial benefit on all of Fairmount's stockholders.

### E. THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED

Class certification is warranted if one of the three provisions of Rule 23(b) is met. Here, preliminary certification of the Class is warranted under Rule 23(b)(1), (b)(2), and (b)(3).

#### 1. Rule 23(b)(1)

Rule 23(b)(1) authorizes a mandatory class action

> if the prosecution of separate actions by or against individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (ii) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

*Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 431 (N.D. Ohio 2008) (quoting Fed. R. Civ. P. 23(b)(1)). In this case, without class certification, the various stockholder actions filed against the Defendants could result in inconsistent judgments.

### 2. Rule 23(b)(2)

Rule 23(b)(2) also authorizes a class action "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here, Defendants' alleged misconduct affected the proposed Class in a way that is generally applicable to the entire Class, and injunctive relief with respect to the Transaction was sought. Moreover, the Supplemental Disclosures obtained in the Settlement conferred a substantial benefit on the entire Class.

### F. THE PROPOSED PLAN OF CLASS NOTICE IS APPROPRIATE

In general, "[n]either a Rule 23(b)(1) or (2) class action requires notice to class members or the option to opt-out." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007). Rule 23(c)(2)(A) provides, however, that the Court "may direct the appropriate notice" to a Rule 23(b)(1) or (b)(2) class.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the [Settlement] proposal." Fed. R. Civ. P. 23(e)(1). Here, Plaintiffs and Defendants propose mailing Class members a Notice discussing the background and procedural history of this litigation, including the claims asserted against Defendants; a summary of the Settlement terms; an explanation of the persons and claims being released under the Settlement; a detailed explanation of reasons for the Settlement; a description of the Class; the date, time and place of the hearing for final approval; a statement of the Class members' right to

appear and object with or without counsel and the procedures which must be followed to be heard; a statement that Class Counsel intend to petition for an award of attorneys' fees and expenses, and whom to contact if more information about the Settlement is desired. *See* Stipulation and Ex. C thereto. Accordingly, the proposed method and content of Notice comports with the requirements of due process and Rule 23 and should be approved by the Court. *See, e.g., DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 298 (W.D. Tex. 2007) (notice sufficient where it "properly identif[ies] the plaintiff class and generally describe the terms of the settlement so as to alert members with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation omitted); *In re OCA, Inc.*, No. 05-2165, 2008 U.S. Dist. LEXIS 84869, at *46-52 (E.D. La. Oct. 17, 2008) (mailing of the notice to brokerage houses and/or stockholders constituted best notice practicable under the circumstances.).

## VII. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and direct that notice of the proposed Settlement be provided to the Class; preliminarily certify the proposed Class for Settlement purposes; conditionally appoint Karon LLC as Liaison Counsel, and Monteverde & Associates PC and Levi & Korsinsky, LLP as Class Counsel for the Class; enter the accompanying proposed Scheduling Order; and stay the Action pending final approval of the Settlement.

Dated: November 9, 2018

Respectfully submitted,

**KARON LLC**

*s/Daniel R. Karon*
Daniel R. Karon (#0069394)
Beau D. Hollowell (#0080704)
The Hoyt Block Building, Ste. 200
700 West St. Clair Avenue

28

Cleveland, Ohio 44113
Phone: 216.622.1851
Fax: 216.241.8175
dkaron@karonllc.com
bhollowell@karonllc.com

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Phone: 212.971.1341
jmonteverde@monteverdelaw.com

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street NW, Suite 115
Washington, DC 20007
Phone: 202.524.4290
denright@zlk.com
etripodi@zlk.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that, on November 9, 2018, the foregoing Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, Preliminary Certification of the Settlement Class and Approval of Notice to the Settlement Class was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*s/Daniel R. Karon*
Daniel R. Karon