**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM PLAGENS, Individually and On Behalf of All Others Similarly Situated, | Case No: 1:20-cv-2744-JPC |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **STIPULATED ORDER REGARDING ESI PROTOCOL AND FORMAT OF PRODUCTION** |
| JENNIFER D. DECKARD, MARK E. BARRUS, MICHAEL F. BIEHL, ANDREW D. EICH, RICHARD D. NAVARRE, | JUDGE:    Hon. J. Philip Calabrese |
| Defendants. | |

**STIPULATED ORDER AND PROTOCOL RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION ("E-DISCOVERY")**

1.    **<u>Discovery Conference</u>**. Parties shall be prepared to discuss the parameters of their anticipated e-discovery at the Fed. R. Civ. P. 26(f) conference, as well as at the Fed. R. Civ. P. 16 scheduling conference with the court, consistent with the requirements outlined below and shall provide notice of any problems reasonably anticipated to arise in connection with e-discovery. Such discussions should continue to occur, as needed, as the case and issues evolve.

2.    **<u>E-Discovery Parameters</u>**

(a)    Cooperation - The parties will cooperate on issues relating to discovery of ESI and other documents. The parties recognize that collaborative conduct in the course of discovery reduces litigation costs and delay. The parties will engage in informal discussions about the discovery of ESI throughout the litigation as necessary. Counsel will be knowledgeable about their respective clients' information technology infrastructure, including the manner in which potentially relevant data

is stored and retrieved. The parties are encouraged to bring technically- adept personnel together to resolve e-discovery issues.

(b)     Identification - By the time of the Rule 26(f) conference report, or within a reasonable time thereafter (as may be agreed between the parties), the parties shall (as relevant for individual parties) discuss the following information:

    (i)     Custodians - Each party shall draft a list of the most likely custodians of relevant ESI, including a brief description of each person's title and responsibilities.

    (ii)     Data Sources - Each party shall identify all known custodial sources believed to contain potentially relevant ESI. The parties should include whether any of the identified ESI is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). ESI that is not reasonably accessible may include, but is not limited to, anything stored on legacy systems or electronic media of a format no longer in use, maintained in redundant electronic storage, or for which retrieval involves substantial cost. Additionally, the parties shall mutually agree whether any specified data types will be excluded from the discovery process.

    (iii)     Date Restriction - The parties shall work together to identify the overall relevant time frame at issue in the case that is to be used throughout the e-discovery process.

(c)     Preservation - The parties represent that they have issued [or will issue] litigation hold notices to those custodians who they  reasonably believe possess discoverable information, and have established reasonable and proportionate procedures to ensure that those notices have been received, understood, and appropriately acted

2

upon. Each party acknowledges that it has an obligation to take reasonable and proportional steps to preserve potentially relevant ESI in the party's possession, custody, or control, including the original forensic integrity of the ESI, unless otherwise agreed upon by the parties. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back up and archive ESI; provided, however, the parties shall preserve non-duplicative potentially relevant ESI currently in their possession, custody, or control.

(i)     Deleted, Lost, or Destroyed ESI - The parties shall not be obligated under this Order to produce or preserve ESI that was deleted, lost, or destroyed before the date upon which the duty to preserve ESI arose, as a result of the routine, good-faith operation of an ESI system. Nothing in this provision limits or expands a party's obligation to seek or search for ESI known to be "deleted" by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a party's possession, custody, or control provided such search is otherwise consistent with and does not exceed or limit the party's obligations under the Federal Rules of Civil Procedure. If a producing party learns that ESI that would reasonably have been searched for responsive information has been lost or destroyed after the date upon which the duty to preserve that ESI arose, the parties shall promptly meet and confer regarding such ESI.

(d)     Processing - The parties shall use reasonable best efforts to produce only a single copy of a document and disclose the manner of de-duplication employed, if any. The custodian identification for any de-duplicated ESI shall be tracked in a

production custodian field. OCR software shall be set to the highest quality setting during processing. Additionally, the data shall be processed in UTC (Coordinated Universal Time) unless otherwise mutually agreed upon by the parties. The parties shall also discuss the handling and processing of any non- standard ESI (e.g. - structured data) or non-searchable ESI identified by the parties as well as the appropriateness and application of other initial data processing steps and the handling of related issues (e.g. – de-NIST, embedded objects, hidden content, multimedia files).

(e) Search Terms - In addition to the application of the agreed-upon date restriction identified above, the parties shall reach agreement on search terms to be applied to each party's universe of potentially relevant data, if any, prior to substantive review. The producing party shall provide hit reports for proposed search terms prior to utilizing the search terms to narrow the universe of documents to be reviewed or produced. The parties shall also reach agreement as to the timing and conditions of any supplemental searches which may become necessary in the normal course of discovery.

(i) Index Fields - If either party applies search terms to identify or cull documents, the following specific metadata fields shall be included in the search index used, unless otherwise agreed between the parties:

a. FROM
b. TO
c. CC
d. BCC
e. SUBJECT
f. TITLE
g. FILENAME
h. FILEEXTEN

(f)     Review - The use of Technology Assisted Review (TAR) and other analytics technology (e.g. - email threading) shall be permitted, including to make final production decisions, provided the parties disclose its use prior to starting the process in earnest. If needed, the parties shall meet and confer to resolve any disagreements regarding the use of these analytics technology tools.

    (i)     E-Mail Thread Suppression - Email threads are email communications that contain prior or lesser-included email communications. A producing party may not use e-mail thread suppression to exclude email from production without first meeting and conferring with the requesting party regarding the methodology used for suppression and means of preserving and producing metadata of any suppressed email. The producing party is not required to obtain the agreement of the Requesting Party to its threading methodology. However, the requesting party reserves the right to raise issues with the Court in the event that it believes the threading methodology is improper after meeting and conferring.

(g)     Production - The parties shall produce documents in tagged image file format ("TIFF"), unless otherwise specified. File types not easily converted into image format shall be produced in native format unless redactions are needed (e.g. - Microsoft Excel or other spreadsheet formats, , structured data exports or reports, non- image multi-media files, source code). For each document produced in native format, a responding party shall also produce a corresponding cover page in TIFF image format (Bates numbered in the same way as any other TIFF, which shall be used as the BEGBATES and ENDBATES of the associated document) specifying that the document has been "produced in native format" and endorsed with the

5

Bates Number, which will be inserted into the image population in place of the native file. For all other file types, a party must demonstrate a particularized need for production of any such files in native format. No party has an obligation to create or manually code information or fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain. On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

(h)     Text Files - For all documents containing extracted full text or OCR text, the producing party shall provide searchable document level .txt files (named using the Bates start/"BEGBATES"), which shall reside in the same file directory as the images for such documents. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is a native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, and in the case of imaged hard-copy documents, a text file shall be created using OCR and shall be produced in lieu of extracted text.

(i)     Redactions - A party may use redactions to protect attorney-client or work product privileges consistent with the Protective Order agreed and/or entered in this litigation. Any redactions shall be clearly indicated on the face of the document, which each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for redaction (i.e., "Redacted – Privileged").

6

Where a responsive document contains both redacted and non-redacted content, the producing party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions, as well as the metadata required under this Protocol. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the producing party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The foregoing does not apply to documents previously produced in connection with subpoenas or civil investigation demands previously issued and, the parties agree those documents do not need to be reprocessed and may be reproduced in the same format as previously produced.

(i)      Intelligibility and Usability - The parties agree that they shall use their good-faith best efforts to minimize redaction in order to preserve the intelligibility and usability of the unredacted portions of affected documents. Where the requesting party in good faith believes that redaction renders any unredacted portion of the document unclear or susceptible to misinterpretation, or deprives the reader of context necessary to a full and fair interpretation of the text, the parties shall meet and confer in good faith in an attempt to resolve the issue

(ii)      Relevancy Redaction - The Parties agree that they shall not make any redactions based upon the purported relevancy of a document.

(iii)      Redaction of Native Format Excel and Spreadsheet Files - Native format Excel or other spreadsheet files which are redacted may be redacted by overwriting the data contained in a particular cell, row, column, or tab with the word

7

"Redacted"and shall make clear the reason for the redaction (i.e., "Redacted – Privileged"). The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced subject to Paragraph 3 of this Order will be the metadata extracted from the original native file, other than metadata containing redacted information. Native format Excels or other files that ordinarily are to be produced natively and are redacted, may be produced as TIFF images, with text and related path provided in document level text files, which can be created through OCR, with load, which shall include all information contained in the original file, including but not limited to speaker notes and "hidden" slides, withany redaction clearly delineated.  If the file contains external video or audio components, the video or audio will be produced as native files.

    (iv)    Redaction of Audio/Video Files **-** If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.

(j)    Family Relationships - Parent-child relationships between ESI (e.g., the association between an attachment and its parent e-mail, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all files within a parent-child group, and by providing accurate attachment ranges for those files in the metadata fields required. If a Party withholds as privileged a member of a parent-child group that has other non-privileged or privilege redacted members, any parent-child relationship must be

similarly maintained by indicating the absence of that document using a Bates-numbered slip sheet and the grounds for withholding. In the event a document or portion of a document that is part of a family is initially withheld as privileged, but later produced, the entire family must be reproduced with it if requested by the requesting party, along with all required metadata.

(i)     Non-Responsive Attachments **-** The parties agree that "non-responsive" shall generally not be a cognizable basis for withholding documents from production, if a document is associated, through familial relationships, with a responsive document. An otherwise non- responsive attachment to a responsive parent document — or an otherwise non-responsive parent document that has responsive attachments — may not be withheld simply because the document, if it were not in the same family as responsive material, would not be responsive. The parties agree, however, that the general provisions of this paragraph shall not prejudice any party's right to seek exceptions if it identifies particular non-responsive documents, or categories of documents, that it believes are appropriate to withhold or redact on the basis of non-responsiveness notwithstanding their association with a responsive document. In such case, the parties shall meet and confer regarding the exception sought and may submit any such issue to the Court if agreement cannot be reached. For the avoidance of doubt, an otherwise responsive document may not be partially redacted solely on the basis that the redacted information is not responsive or relevant.

(ii)     Embedded and Linked Documents - Where reasonably feasible, non-image embedded ESI documents (e.g., a spreadsheet embedded within a word

9

processing document or an audio file in a PowerPoint presentation), or a document referenced or shared via hyperlink to a fileshare or other shared repository (e.g. Google Drive/Docs/Sheets, OneDrive, DropBox, Slack) will be extracted, produced as independent document records, and related back to the respective top level parent document (e.g., standalone file, email message, etc.) via the BEGBATES field. An embedded document will be marked with a "YES" in the load file under the ISEMBEDDED field. Related embedded and linked documents will be produced within a continuous Bates range. The producing party shall inform the requesting party of the methodology it intends to use for production and association of embedded and linked documents prior to any production, and shall use reasonable efforts to to ensure that the same methodology is utilized throughout its production(s).

3. **Metadata Fields.** The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PAGECOUNT | Number of pages |
| TEXTLINK | Link to text file for the document |
| CUSTODIAN | Name of custodian or custodial file contained in the collected file |

10

The following metadata fields shall be included in Load files accompanying ESI, to the extent they exist and are reasonably accessible:

| Field | Field Description for Electronic Documents | Field Description for Emails or Calendar Entries |
|---|---|---|
| ATTACHCOUNT | Number of files attached to parent | Number of files attached to parent |
| FROM | n/a | Sender of message or calendar invite |
| TO | n/a | Recipient of message orcalendar invite |
| CC | n/a | Copied recipients of message or calendar invite |
| BCC | n/a | Blind copied recipients of message or calendar invite |
| SUBJECT | n/a | Subject of message or calendar invite |
| TITLE | Title from a document's properties | n/a |
| DATECREATED | Date file was created | n/a |

11

| TIMECREATED | Time file was created | |
|---|---|---|
| DATEMODIFIED | Date file was last modified | |
| TIMEMODIFIED | Time file was last modified | |
| SENTDATE | n/a | The sent date of the message in the format MM/DD/YYYY |
| SENTTIME | n/a | The sent time of the message in the format HH:mm:ss |
| RECEIVEDDATE | n/a | The received date of the message in the format MM/DD/YYYY |
| RECEIVEDTIME | n/a | The received time of the message in the format HH:mm:ss |
| Status as READ or UNREAD | Whether or not a message was READ or UNREAD. | Whether or not a message was READ or UNREAD. |

12

| ID of Original Message REPLIED to or FORWARDED | The unique Email message identifier of the previous message in the thread (the message that was replied to or forwarded). | The unique Email message identifier of the previous message in the thread (the message that was replied to or forwarded). |
|---|---|---|
| TIMEZONE | Metadata field indicating the time zone in which an email was sent. For instance, unique local timestamp populated by MS Outlook on all outgoing messages is "PR_CLIENT_SUBMIT_ TIME". | Metadata field indicating the time zone in which an email was sent. For instance, unique local timestamp populated by MS Outlook on all outgoing messages is "PR_CLIENT_SUBMIT_TIM E". |
| FILENAME | Contents of this Metadata field, or an equivalent | Contents of this Metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes |
| LOGICALPATH | The directory structure of the original file(s). Any container name is included in the path. | The directory structure of the original file(s). Any container name is included in the path. |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email |

13

| THREADID | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software. | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that permits email threading in review software. |
|---|---|---|
| THREADINDEX | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| ISEMBEDDED | Identifies if a document is embedded in another document. | Identifies if a document is embedded in another document. |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email |
| REDACTION | Identifies if a document has been redacted | Identifies if a document has been redacted |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality |

| | | designation[1] |
|---|---|---|
| | | |

Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the metadata is protected by law or court order. This list of fields does not create any obligation to create or manually code fields that do not exist as part ofthe original metadata of the document.

4. **Timing and Phasing of E-Discovery**. Discovery of relevant ESI shall proceed in a sequenced fashion as described in Section 3 above. The parties shall endeavor to finalize the agreement regarding e-discovery as soon after the conclusion of the Fed. R. Civ. P 26(f) conference as is practicable, but in any event before the Fed. R. Civ. P. 16 scheduling conference, unless otherwise agreed upon by the parties. The parties should consider if it is appropriate and beneficial to divide the handling of ESI into phases, whether prioritizing by custodian, ESI type, date range, or otherwise

5. **Non-Party Subpoenas and Productions.** Any party that issues a non-party subpoena shall timely notify other parties when it receives non-party productions of documents, ESI, or other responses from the non-party, and shall provide copies of all such productions in the format in which they were received from the non- party to the other parties. If the non-party produces documents or ESI that are not Bates labeled, the requesting party will Bates-label the

---

[1] If the confidentiality metadata field conflicts with the designation on the face of the document, the higher designation controls.

documents or ESI before producing a copy to the other parties if the produced documents or ESI are of the type so requiring consistent with other provisions of this Order.

    (a)    Confidentiality/Privilege Designation of Non-Party Productions - Nothing in this Protocol precludes a requesting party from reviewing a non-party production of documents or ESI and applying (if the non-party produced documents without a confidentiality designation) a confidentiality designation if the production contains highly sensitive information as set forth in the Stipulated Protective Order

    **6.**    **Privilege**. The parties shall agree on an appropriate non-waiver order under Fed. R. Evid. 502(d). Unless and until a non-waiver order is entered, whether as part of a protective order or otherwise, should any produced ESI that appears on its face to contain privileged information or attorney-work product be detected by either the producing or receiving party, proper notification shall be given in writing that identifies the specific materials and the receiving party shall immediately sequester or destroy the privileged materials. Due to the nature of ESI, unless otherwise agreed upon by the parties, the producing party shall produce, in accordance with the agreed-upon production specifications, both a supplemental production volume overlay that contains only the replacement redacted documents or slip-sheets, as appropriate, as well as a full replacement production volume that contains the updated materials for each affected production. In all other circumstances, Fed. R. Civ. P. 26(b)(5)(B) shall apply. All responsive documents that are withheld from production in full or in part under a claim of privilege or work product shall be entered onto a privilege log in compliance with Fed. R. Civ. P 26(b)(5)(A). However, absent a showing of good cause or as otherwise agreed upon by the parties, the privilege log may be fully populated using available non-privileged metadata plus the identification of the privilege asserted.

(a) Logging of Document Families - Where multiple members of a document "family" (e.g., an email attaching a memorandum or other document, etc.) are withheld on the grounds of privilege, immunity or any similar claim, these families may be jointly logged as a single entry on the privilege log with an indication in the description field that describes the family relationship. For document families in which fewer than all of the documents are withheld as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

(b) Exclusions to be Negotiated- In the interest of the parties' time, and to minimize litigation costs, the parties shall in good faith negotiate the exclusion of any categories of documents that while technically responsive and privileged are relatively irrelevant to the issues in the litigation. Should the creation of a privilege log become unreasonably burdensome, the parties shall in good faith negotiate an alternative approach.

(c) Challenges to Privilege Logs - Following the receipt of a privilege log, a requesting party may identify, in writing, the particular documents that it believes require further explanation. Within fourteen (14) days of such an identification, the producing party must respond to the request. If a party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

7. **Costs**. Generally, the costs of discovery shall be borne by each party. However, the amount and nature of the claims being made by either party, as well as the burdens associated with

17

the proposed ESI preservation and discovery shall be considered and the court will apportion the costs of electronic discovery upon a showing of good cause.

8. **Best Efforts Compliance And Disputes.**  The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision/s of this Order, with the understanding that both Parties are individuals and not corporations or other legal entities. If a producing party cannot comply in a particular circumstance with this Order, such Party shall promptly inform the receiving party in writing why compliance with the Order is not reasonable or feasible.  No party may seek relief from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

9. **Limitations and Non-Waiver.** Nothing in this Protocol shall waive any protection or privilege, including the attorney-client privilege and the work-product doctrine. All parties expressly reserve and do not waive their rights under attorney-client privilege, work product doctrine, and any other privileges or protections from disclosure. The parties expressly reserve and do not waive the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of any document. All objections to admissibility of any document are preserved and may be asserted at any time.

10. **Modification.**  This Order may be modified by a Stipulated Order of the parties or by the court for good cause shown.

**SO ORDERED.**

**J. PHILIP CALABRESE**
**UNITED STATES DISTRICT JUDGE**

18

Dated: June 9, 2023

**KARON LLC**
*/s/ Daniel Karon*
Daniel Karon
700 W. St. Clair Ave., Ste. 200,
Cleveland, Ohio 44113
Telephone: (216) 622-1851
Email: dkaron@karonllc.com

*Liaison Counsel for Plaintiffs and the Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
Joshua Baker
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com
jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**GLANCY PRONGAY & HURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-91 SO
Facsimile: (310) 201-9160
Email:  rprongay@glancylaw.com
clinehan@glancylaw.com
esams@glancylaw.com

*Additional Counsel for Plaintiffs*

Dated: June 9, 2023

**KIRKLAND & ELLIS LLP**
*/s/ Daniel T. Donovan*
Daniel T. Donovan, P.C.
Matthew S. Owen (*pro hac vice*)
Katharine C. Collins (*pro hac vice*)
1301 Pennsylvania Avenue, NW

Washington, DC 20004
(202) 389-5000
(202) 389-5200
daniel.donovan@kirkland.com
matt.owen@kirkland.com
katharine.collins@kirkland.com

**KIRKLAND & ELLIS LLP**
Gabor Balassa, P.C. (*pro hac vice*)
300 North Lasalle Street Chicago, IL
60654
(202) 862-2000
(202) 862-2200
gbalassa@kirkland.com

*Counsel for Defendants*