**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM PLAGENS, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>JENNIFFER D. DECKARD,<br><br>      Defendant. | Case No. 1:20-cv-02744-JPC<br><br>CLASS ACTION<br><br>Judge J. Philip Calabrese |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................. 1

II. SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

    A. Plaintiffs' Allegations .................................................................................. 3

    B. Procedural History and Settlement ............................................................... 4

    C. Terms of the Settlement ................................................................................ 5

        1. Cash Consideration and Release ................................................... 5

        2. Notice to the Settlement Class ...................................................... 6

        3. Exclusions and Objections ............................................................. 6

        4. The Plan of Allocation .................................................................. 7

III. ARGUMENT ....................................................................................................... 7

    A. The Court Should Certify the Settlement Class ............................................. 7

    B. The Court Should Grant Final Approval of the Settlement .................................. 8

        1. Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class ......................................................................................... 9

        2. The Settlement is Presumptively Fair Because it Resulted From Arms' Length Negotiations Between Informed Counsel .................................... 11

        3. The Relief Provided to the Settlement Class is Adequate ........................ 13

            a. Plaintiffs Faced Significant Risks, Expense, and Delay if They Continued Litigating ....................................................... 15

            b. The Methods of Distributing Relief and Processing Claims ........ 17

        4. The Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiffs ................................................................ 13

        5. The Remaining Sixth Circuit Factors Favor Final Approval .................... 19

            a. The Reaction of the Settlement Class Supports Final Approval... 19

            b. Plaintiffs and Lead Counsel Were Sufficiently Informed at This Stage of the Proceedings ............................................................ 20

    c.  The Public Interest Supports Final Approval................................ 21

  C.  The Court Should Approve the Plan of Allocation................................................ 22

  D.  The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process.................................... 24

IV.  CONCLUSION............................................................................................................ 26

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bert v. AK Steel Corp.*,
2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)................................................................... 11, 12

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................... 10, 18

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................................. 23

*Evans v. Jeff D.*,
475 U.S. 717 (1986)................................................................................................................... 8

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) .................................................................................................... 25

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) .................................................................................................. 13

*Griffin v. Flagstar Bancorp, Inc.*,
2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .................................................................. 21, 22

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................................... 18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................................................... 15

*In re "Agent Orange" Prod. L*iab. Litig.,
597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................................... 13

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................................... 22

*In re Art Materials Antitrust Litig.*,
100 F.R.D. 367 (N.D. Ohio 1983) ............................................................................................ 19

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)......................................................................... 23

*In re China Sunenergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................................... 14

*In re Datatec Sys., Inc. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................................. 23

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ..................................................................... 11

*In re Flint Water Cases*,
   571 F. Supp. 3d 746 (E.D. Mich. 2021) .................................................................. 12

*In re Indep. Energy Holdings PLC*,
   2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...................................................... 16

*In re Nationwide Fin. Servs. Litig.*,
   2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ..................................................... 8, 20

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .......................................................... 14

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................................................... 15

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ......................................................... 9, 11, 22

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015) ........................................................ 23

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................ 15

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .......................................................... 20

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ............................................................................... 9, 21

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) ........................................................................... 9

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................... 10

*Levell v. Monsanto Rsch. Corp.*,
   191 F.R.D. 543 (S.D. Ohio 2000) ........................................................................... 20

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................................................... 22

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................................. 9

*Momenta Pharm., Inc.*,
2020 WL 3053467 (M.D. Tenn. May 29, 2020) ........................................................... 18

*Motter v. O'Brien*,
2014 WL 12892732 (S.D. Ohio June 12, 2014) .......................................................... 22

*NYS Tchrs' Ret. Sys. v. GMC*,
315 F.R.D. 226 (E.D. Mich. 2016) .............................................................................. 17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ............................................................................... 13, 16

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ................................................................................. 19

*Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit
Acceptance Corp.*,
2022 WL 17582004 (E.D. Mich. Dec. 12, 2022) ................................................... 12, 19

*Pelzer v. Vassalle*,
655 F. App'x 352 (6th Cir. 2016) ................................................................................. 25

*Robinson v. Ford Motor Co.*,
2005 WL 5253339 (S.D. Ohio June 15, 2005) ............................................................ 20

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) .......................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...................................................................................................... 22

*Thacker v. Chesapeake Appalachia, L.L.C.*,
695 F. Supp. 2d 521 (E.D. Ky. 2010) .......................................................................... 22

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) .......................................................................................... 9

*Wess v. Storey*,
2011 WL 1463609 (S.D. Ohio Apr. 14, 2011) ............................................................ 13

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ........................................................................................ 24

**Statutes**

15 U.S.C. §78u-4(a)(7) ............................................................................................... 24, 26

15 U.S.C. § 77z-1(a)(4)......................................................................................................... 19

28 U.S.C. §1715 .................................................................................................................... 25

**Rules**

Fed. R. Civ. P. 23................................................................................................... 2, 17, 26

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 24

Fed. R. Civ. P. (D) ...................................................................................................... 8

Fed. R. Civ. P. 23(e) ............................................................................................. 2, 9

Fed. R. Civ. P. 23(e)(1).............................................................................................. 24

Fed. R. Civ. P. 23(e)(2)...................................................................................... 8, 9, 19

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................ 13

Fed. R. Civ. P. 23(e)(2)(C)(i)...................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(C)(ii)................................................................................ 17, 24

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 18

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................ 11

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................... 17

Fed. R. Civ. P. 23(e)(2)(C)(iv).................................................................................... 18

Fed. R. Civ. P. 23(e)(3); and (D) ................................................................................. 8

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................................... 10

Lead Plaintiff Thomas Phelps and named Plaintiffs Sergio Baron and Neville Arjani (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for final approval of the proposed class action Settlement.[1]

## I.  PRELIMINARY STATEMENT

On November 20, 2023, the Court preliminarily approved the Settlement of this Action as fair, reasonable, and adequate. Dkt. No. 73 ("Preliminary Approval Order"). Through the Court-approved Claims Administrator, Plaintiffs timely executed the notice program as the Court ordered. To date, no Settlement Class Members have filed an objection to any aspect of the Settlement, and no Settlement Class Members have requested exclusion from the Settlement Class. Plaintiffs now move for final approval of the Settlement, releasing claims against all Released Parties in exchange for a cash payment of $6,000,000.

The Settlement resolves this litigation, between Plaintiffs and Defendant Jenniffer D. Deckard, that has continued for more than three years. The Settlement is the product of arms-length negotiations after mediation with neutral Robert A. Meyer of JAMS, including the exchange of detailed mediation statements and the parties' participation in a full-day mediation session, finally resulting in the parties accepting a mediator's proposal after additional weeks of negotiations. These arms' length negotiations among experienced counsel with a neutral mediator, along with the positive reaction of the Settlement Class render the Settlement presumptively fair.

In advance of the Settlement, Lead Counsel thoroughly investigated Plaintiffs' claims and zealously represented the Settlement Class by filing a thorough amended complaint, opposing and defeating in part Defendants' motion to dismiss, reviewing tens of thousands of documents, and

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated October 25, 2023 (Dkt. No. 71-2) ("Stipulation").

attending the deposition of four witnesses named in the complaint. While Plaintiffs believe that they would be able to prove their claims at trial, the sole remaining Defendant has continued to deny liability and damages. Plaintiffs faced significant obstacles in obtaining a full recovery on their claims through litigation, such as prevailing on a motion for class certification, defeating anticipated motions for summary judgment, and prevailing at trial. Plaintiffs also faced notable challenges in establishing loss causation and damages. Absent the Settlement, there is no guarantee the Settlement Class would have recovered as much, or anything at all.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Plaintiffs believe their case is strong, but they determined that executing the Settlement was in the best interest of the Settlement Class in light of the risks inherent in this complex litigation. Rather than engaging in expensive, protracted litigation with no assurance of success, Plaintiffs determined that the Settlement was in the best interest of the Settlement Class. The Settlement eliminates the risks of continued litigation and locks in a substantial recovery for the Settlement Class. The Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation (the "Plan") is fair, reasonable, and adequate. Here, Lead Counsel developed the Plan in consultation with Plaintiffs' damages expert and the Claims Administrator. The proposed Plan comports with applicable legal principles and Plaintiffs' theory of damages, and in no way favors Plaintiffs over other members of the Settlement Class. The Court should approve the Plan.

Finally, the Court should determine that the notice program preliminarily approved by the Court and executed by Lead Counsel and the Claims Administrator satisfied the requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Plaintiffs' Allegations

Fairmount Santrol Holdings Inc. ("Fairmount"), and its successor by merger, Covia Holdings Corporation ("Covia" or the "Company"), sold sand-based proppants to oil and gas companies for use in fracking operations. The proppant market is highly competitive, and the Company attempted to differentiate itself with its "value-added proppants," which it tried to sell at a premium based on its claims that these products would improve conductivity, a measure of well output. Two of these "value-added" proppants were PowerProp and Propel SSP.

PowerProp was touted as the Company's premium resin-coated sand proppant. Plaintiffs allege that Defendant and the Company misrepresented that PowerProp's performance was comparable to lightweight ceramics (higher-performing, more expensive proppants). Plaintiffs allege that Defendant knew that the conductivity of PowerProp was, in fact, substantially lower than that of lightweight ceramics.

Propel SSP coats sand with a polymer gel to increase oil and gas recovery in fracking wells. Plaintiffs allege that Defendant and the Company misrepresented Propel SSP's ability to increase well production in statements made during earnings calls. Plaintiffs allege that the Company's own data did not support the claims Defendant and the Company were making about Propel SSP. Plaintiffs also allege that Defendant made misrepresentations about the Company's commercialization of Propel SSP, overstating its ability to secure repeat customers for the product.

In March 2019, Covia revealed that it had received a subpoena from the SEC, investigating "certain value-added proppants" sold by the Company, causing Covia's stock price to drop by $0.45, or roughly 7%. A few weeks later, Covia abruptly announced the resignation of Deckard as the Company's CEO, causing Covia's stock price to fall by $0.23, or roughly 6%. In June 2020,

3

Covia filed for bankruptcy under Chapter 11 and the NYSE delisted Covia, causing Covia's share price to fall from \$0.48 to \$0.04, or about 92%.

In December 2020, the SEC issued an Order detailing the factual findings from its investigation. The SEC findings included that the Company made materially false and misleading statements about PowerProp and Propel SSP. The SEC imposed a \$17 million civil penalty.

### B.     Procedural History and Settlement

The first complaint in this action was filed on December 10, 2020. Dkt. No. 1. On July 23, 2021, the Court heard several competing motions to appoint lead plaintiff. Dkt. No. 41. On August 2, 2021, the Court appointed Dr. Phelps as Lead Plaintiff. Dkt. No. 42. On August 16, 2021, the Court approved Dr. Phelps' choice of The Rosen Firm as Lead Counsel. Dkt. No. 43.

On October 20, 2021, Plaintiffs filed an amended complaint. Dkt. No. 46. They filed a corrected amended complaint on November 8, 2021. Dkt. No. 50. On December 15, 2021, Defendants filed their motion to dismiss, which the parties fully briefed by March 2, 2022. Dkt. Nos. 51-53. On March 30, 2023, the Court issued its order granting in part and denying in part Defendants' motion to dismiss, allowing Plaintiffs' Section 10(b) claims to proceed against Deckard with respect to some of the statements alleged in the complaint. Dkt. No. 54.

After the Court's decision on the motion to dismiss, the parties exchanged initial disclosures, conducted a Rule 26(f) conference, and submitted to the Court—which then entered— a protective order, ESI protocol, and discovery schedule. Dkt. Nos. 59-62, 65. Defendant filed an answer to the complaint on June 15, 2023. Dkt. No. 66.

In discovery, the parties exchanged interrogatories, requests for documents, and a subpoena for documents to non-party Covia, as well as responses and objections thereto. Plaintiffs requested, and Defendant and Covia produced, an initial production of key identifiable documents including the transcripts of the SEC's depositions of Deckard and several other Covia employees and

4

executives. Including and beyond this initial production, Defendant and Covia produced over 22,000 pages of documents, which Plaintiffs reviewed. Defendant deposed four of the five confidential witnesses cited in the complaint. Lead Counsel attended those depositions and cross-examined each witness. Declaration of Joshua Baker ("Baker Decl.") ¶26.

As the parties were navigating discovery, they engaged Robert A. Meyer of JAMS to mediate settlement negotiations. Mr. Meyer is a well-respected mediator with substantial experience mediating securities class actions. Prior to the mediation, the Parties exchanged detailed mediation statements. The Parties attended an all-day mediation with Mr. Meyer on August 29, 2023. The mediation was not successful, but the parties continued productive settlement negotiations over the following weeks with Mr. Meyer's assistance. *Id.* ¶27. On September 11, 2023, the parties accepted a proposal by Mr. Meyer to settle the Action for $6,000,000, subject to the negotiation and formal documentation of the full terms of the Settlement. On October 25, 2023, the parties finalized and executed the Stipulation, memorializing the Settlement. *Id.* ¶28.

On November 8, 2023, Plaintiffs filed their motion for preliminary approval of the Settlement, which included the Stipulation and proposed forms and methods of notice to Settlement Class Members. Dkt. No. 71. On November 20, 2023, the Court entered the Preliminary Approval Order, and set a Settlement Hearing for April 11, 2024, at 10:00 a.m. Dkt. No. 73.

### C. Terms of the Settlement

#### 1. Cash Consideration and Release

The Settlement provides for a payment of $6,000,000 in cash to the Settlement Class. If the Court grants final approval of the Settlement, Plaintiffs and the Settlement Class Members will forever release their claims against the Released Parties that were alleged or could have been

alleged in this Action. Defendant will release any claims that could have been brought against the Releasing Parties related to the prosecution of this Action.

### 2. Notice to the Settlement Class

In the Preliminary Approval Order, the Court appointed Strategic Claims Services ("SCS") as Claims Administrator. SCS provided potential Settlement Class Members, brokers, and nominee holders with notice of the Settlement. *See* Baker Decl., Ex. 1 (Declaration of Josephine Bravata ("Bravata Decl.")) ¶¶2-14. The notice advised potential Settlement Class Members as to: (1) the terms of the Settlement and Plan of Allocation; (2) that Plaintiffs and Lead Counsel would seek a fee award not to exceed one-third of the Settlement Amount, or $2,000,000, recovery of actual litigation expenses, not to exceed $95,000, and awards to Plaintiffs not to exceed $25,000 in total; and (3) how to exclude themselves from the Settlement Class or object to the Settlement or to the fee and expense requests, including that any such requests or objections must be filed with the Court and transmitted to counsel no later than March 20, 2024. Bravata Decl., Exs. A-D.

To date, SCS has notified 56,169 potential Settlement Class Members either by mailed Postcard Notice or emailed direct link to the Long Notice and Proof of Claim. Bravata Decl. ¶9. The Claims Administrator also established and continues to maintain a toll-free helpline and a website dedicated to the Settlement: https://www.strategicclaims.net/CVIA. *Id*. ¶¶13-14. The website provides a link for online claim filing and lists important deadlines. *Id*. The Claims Administrator also disseminated the Summary Notice over *GlobeNewswire* and *Investor's Business Daily*. *Id*. ¶12.

### 3. Exclusions and Objections

The Preliminary Approval Order mandates that members of the Settlement Class must request exclusion from the Settlement Class no later than March 20, 2024, and notifies Settlement Class Members how to request exclusion or object to the Settlement or the requests for fees and

expenses. Dkt. No. 73 ¶¶29-32. To date, not one Settlement Class Member has objected to any aspect of the Settlement, the Plan of Allocation, or the requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. Bravata Decl. ¶16. Not one Settlement Class member has requested exclusion from the Settlement. *Id*. ¶15.[2]

### 4.      The Plan of Allocation

The Long Notice describes the Plan of Allocation in full detail. *See* Bravata Decl., Ex. D (Long Notice) at 5-9. The Plan fairly and reasonably distributes the Net Settlement Fund to Settlement Class Members consistent with the federal securities laws and principles of loss causation. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiffs). *See id*.

## III.    ARGUMENT

### A.      The Court Should Certify the Settlement Class

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 73 ¶10. As detailed in Plaintiffs' brief in support of preliminary approval of the Settlement, Dkt. No. 71-1 at 17-22, certification of the Settlement Class for settlement purposes under Rule 23 is merited here. No changes have transpired since the Court issued the Preliminary Approval Order that would upset or alter the Court's findings. Thus, the Court should grant final certification of the Settlement Class for settlement purposes.

---

[2] Plaintiffs will update the Court about requests for exclusion and respond to objections, if any are filed after this motion, in Plaintiffs' reply in further support of their motion for final approval.

7

**B.      The Court Should Grant Final Approval of the Settlement**

Rule 23(e) requires judicial approval of any class action settlement, which must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).[3] Rule 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at \*2 (S.D. Ohio Aug. 19, 2009).

To determine whether a proposed settlement meets the standard for final approval, courts in the Sixth Circuit look to the following factors: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations and the risk of collusion; (6) the objections raised by the class members; and (7)

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

the public interest. See *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001). These factors are largely coextensive with the factors listed under Rule 23(e)(2), as amended in 2018.

The Court has "wide discretion in assessing the weight and applicability of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). The Court "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594–95 (E.D. Mich. 2006). Here, the proposed Settlement merits approval under each of the factors under Rule 23(e) and Sixth Circuit precedent.

### 1. Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout this Action. *See* Fed. R. Civ. P. 23(e)(2)(A). Plaintiffs have no antagonistic interests to other class members, their claims are typical of Settlement Class Members' claims, and Plaintiffs share an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at \*3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Plaintiffs each submitted declarations at the beginning stages of the case, indicating that they were willing to represent the class. Dkt. Nos. 8-4, 5-4, 50-2. Plaintiffs have worked closely with Lead Counsel throughout the pendency of this Action to achieve a beneficial result for the Settlement Class. *See* Baker Decl., Exs. 5-7 (Plaintiffs' declarations).

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel have been involved in this action from the beginning, conducting a pre-filing investigation, filing an initial complaint, retaining an investigator to interview former Covia employees, filing an amended complaint, successfully opposing the motion to dismiss, negotiating discovery protocols and discovery requests and responses, reviewing tens of thousands of pages of documents produced by Defendant and Covia, retaining a damages expert to evaluate the case, preparing a mediation statement, participating in a mediation, formalizing the Settlement, moving for and securing preliminary approval of the Settlement, overseeing the dissemination of notice to Settlement Class Members, and filing the instant motion for final approval of the Settlement.

Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating complex securities cases such as this one. Courts around the country have consistently found Rosen Law to be well-suited as class counsel in securities class actions. *E.g., Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions");

10

see also Baker Decl., Ex. 8 (Rosen Law firm resume). Lead Counsel has vigorously prosecuted the Action and will continue to do so through the final settlement approval and distribution process.

### 2. The Settlement is Presumptively Fair Because it Resulted From Arms' Length Negotiations Between Informed Counsel

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *See Telectronics*, 137 F. Supp. 2d at 1016. Here, all evidence indicates that settlement negotiations were conducted in good faith and at arms' length, and thus the Settlement is presumptively fair.

Lead Counsel has extensive experience litigating these types of securities fraud claims and developed a thorough understanding of the strengths and weaknesses of Plaintiffs' claims. Defendant is also represented by experienced and skilled securities practitioners at Kirkland & Ellis LLP who were at least as well-informed regarding the case, and their representation of Defendant was equally vigorous. Under such circumstances, Lead Counsel's opinion that the proposed settlement is fair to the Settlement Class "is entitled to considerable weight." *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *Shane Grp., Inc. v. Blue Cross Blue Shield*, 2015 WL 1498888, at *12 (E.D. Mich. Mar. 31, 2015) ("Courts should defer to the judgment of experienced counsel who have evaluated the strength of the proofs."). Counsel are "most closely acquainted with the facts of the underlying litigation," and thus courts give "great weight" to counsel's settlement recommendations, especially when negotiations are facilitated by an experienced, third-party mediator. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020).

11

Moreover, "settlement negotiations that employ third-party mediators or a Special Master may be viewed as evidence of an arm's length negotiation." *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corp.*, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022); *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) ("[T]here appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a neutral third party mediator[.]"); *AK Steel*, 2008 WL 4693747, at *2 ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.").

The proposed Settlement followed hard-fought litigation and arm's-length negotiations. The Parties exchanged detailed mediation statements, presenting, among other things, their respective views on the merits of the Action, including Defendants' defenses and critical issues relating to loss causation and damages. The Parties participated in a mediation session with Robert A. Meyer of JAMS, who has substantial experience mediating securities class actions such as this one. *See* Baker Decl., Ex. 11 (Declaration of Robert A. Meyer) ¶¶4-6. With Mr. Meyer's guidance, the Parties were able to come to terms over the weeks following the mediation session, finally accepting a mediator's proposal after extensive negotiations. *Id*. ¶¶9-11. The negotiations were at all times adversarial and conducted at arm's length. *Id*. ¶12. In fact, these facts mirror the negotiations of the settlement approved in *Palm Tran*, where the parties conducted a full-day mediation with Mr. Meyer and continued negotiations for the next couple of weeks before reaching a settlement. 2022 WL 17582004, at *4.

In his declaration, Mr. Meyer attests to the integrity of the mediation process and recommends the Settlement as serving the best interests of the Settlement Class. Baker Decl., Ex.

11 ¶¶12-13. The Settlement was the result of arms' length negotiations between informed parties with experienced counsel, with the guidance of an experienced mediator, and thus merits approval.

### 3. The Relief Provided to the Settlement Class is Adequate

When evaluating the reasonableness and adequacy of a settlement the Court must consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The determination of an adequate settlement amount is "not susceptible of a mathematical equation yielding a particularized sum." *Wess v. Storey*, 2011 WL 1463609, at *3 (S.D. Ohio Apr. 14, 2011) (noting that the court "need not decide the amount of a potential recovery at trial" because settlement approval "should not involve a trial on the merits"). The adequacy of the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). In evaluating a settlement, courts recognize that parties must make compromises to reach an agreement. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). The possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).

The $6,000,000 Settlement Amount is reasonable and warrants final approval. The Settlement recovers approximately 8% of the maximum estimated damages of $75 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This best-case scenario assumes that: (i) Plaintiffs are able to succeed at summary judgment and at trial; (ii) the Court certifies the same class period as the Settlement Class Period, for each type of security; (iii) Plaintiffs are able to prove that the *entirety* of each of the stock declines alleged in the complaint—

13

including the stock decline arising from Covia's insolvency announcement—was caused by Defendant's misrepresentations; *and* (iv) the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages.

The percentage of maximum damages recovered here provides a reasonable and adequate result for the Settlement Class, well within the range of other securities class action settlements with similar total damages. *See, e.g., In re China Sunenergy Sec. Litig.*, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery). According to Cornerstone Research, between 2014-2023 the median recovery in cases such as this one alleging Rule 10b-5 claims with $75-149 million in maximum estimated damages was approximately 5.3% of maximum estimated damages. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research), at 6.[4] Between 2019-2023, securities class actions that settled after a ruling on a motion to dismiss but before the filing of a class certification motion recovered a median of 4.2% of estimated damages. *Id*. at 15. Approximately 23% of securities class actions settled for less than $5 million in 2023, and that figure was 31% for 2014-2022. *Id. at* 4. Accordingly, the relief provided to the Settlement Class is reasonable and adequate and merits final approval.

---

[4] *Available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf

**a.      Plaintiffs Faced Significant Risks, Expense, and Delay if They Continued Litigating**

The Court must weigh the adequacy of the Settlement in light of "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Here, the Settlement is reasonable and adequate when balanced against the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation.

The $6,000,000 cash Settlement provides a guaranteed, immediate recovery to investors. Conversely, the risks of continued litigation in this securities fraud class action are considerable. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that securities class actions are generally complex and expensive to prosecute."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain.").

Defendant denies any wrongdoing and would present a multi-pronged defense. Plaintiffs and Lead Counsel believe that their case has merit, but they recognize the significant risk and expense that would be necessary to prosecute Plaintiffs' claims successfully through class certification, extensive discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.

Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."). That was particularly true here where Defendant argued that her

resignation (one of the alleged loss causation events) had nothing to do with the allegedly misrepresented products. Moreover, the final and largest stock price decline occurred in the wake of Covia's insolvency announcement. Plaintiffs allege that the insolvency was partly caused by the failure of the specialty proppant products, but to the extent it was caused by other factors the amount of damages would be reduced proportionately. Even if Plaintiffs successfully proved Defendant's liability at trial, the jury might reduce damages significantly. *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in recovery of full amount of damages claimed).

Here, continued litigation was likely to be complex, uncertain, costly, and lengthy. Further litigation would likely require extensive document discovery, depositions of numerous witnesses, submitting expert reports and testimony, overcoming motions for summary judgment, and an expensive and risky trial. Any favorable judgment for the Settlement Class would be subject to post-trial motions and appeal, which could prolong the case for years without certainty of the outcome. By contrast, the Settlement provides a substantial, immediate recovery and eliminates the risk, delay, and expense of continued litigation.

While a greater recovery might be theoretically possible, evaluating the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of all parties. "The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. Considering the risks of continued litigation and the time and expense that would be required to prosecute the Action through trial, the Settlement provides a reasonable and adequate recovery for the Settlement Class.

**b.      The Methods of Distributing Relief and Processing Claims**

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court appointed SCS as Claims Administrator. Under Lead Counsel's guidance, SCS has begun to process claims, allowing claimants an opportunity to cure any deficiencies or request the Court to review a denial of their claim, and will distribute to Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation, as set forth in the Long Notice. This method of distributing relief – issuing notice and soliciting claims – is both effective and necessary, as neither Plaintiffs nor Defendant possess the individual investor trading data required to distribute the Net Settlement Fund. *See NYS Tchrs' Ret. Sys. v. GMC*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (finding similar notice program "satisfied Rule 23's notice requirement"), *aff'd sub nom. Marro v. NYS Tchrs' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

**c.      Proposed Attorneys' Fees**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in Plaintiffs' memorandum in support of the motion for an award of attorneys' fees, expenses, and awards to Plaintiffs, filed concurrently herewith, Lead Counsel seek an award of attorneys' fees of one-third of the Settlement and reimbursement for expenses incurred in litigating this Action. The notice program, which this Court approved and Lead Counsel and the Claims Administrator duly executed, fully disclosed the maximum amount of fees and costs that Lead Counsel and Plaintiffs would seek. *See, e.g.,* Bravata Decl., Exs. B (Postcard Notice) and D (Long Notice). Not one Settlement Class Member has objected. As such, the Settlement satisfies Rule 23(e)(2)(C)(iii).

17

### d. Other Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those persons opting out reaches a certain threshold, Defendant may terminate the Settlement. Stipulation ¶10.3. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement. *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Momenta Pharm., Inc.*, 2020 WL 3053467, at \*2 (M.D. Tenn. May 29, 2020) (granting final approval after noting that "supplemental agreements that set forth confidential terms of termination in the event exclusions reached a certain threshold … may appropriately be kept confidential and not filed on the public docket"). This does not detract from the fairness of the Settlement. *Christine Asia Co.*, 2019 WL 5257534, at \*15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### 4. The Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiffs

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member, including Plaintiffs. The Plan of Allocation ensures that the Settlement treats all Settlement Class Members equitably relative to one another. The Plan provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses

on their transactions in Fairmount or Covia securities during the Settlement Class Period, based on when each investor purchased, acquired, and/or sold Fairmount or Covia securities. The Plan of Allocation was developed by Lead Counsel in consultation with the Claims Administrator and Plaintiffs' damages expert. All Settlement Class Members' recoveries will be based upon the relative losses they sustained. Plaintiffs will receive a *pro rata* distribution from the Net Settlement Fund per the Plan of Allocation, just like all other Settlement Class Members.

Plaintiffs also seek individual awards totaling $25,000 as reimbursement for time and costs spent representing the Settlement Class, as authorized by the PSLRA. 15 U.S.C. § 77z-1(a)(4). The grounds for these awards are set forth in the accompanying brief in support of Plaintiffs' and Lead Counsel's application for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. The notice disseminated by the Claims Administrator described the awards and amounts that Plaintiffs seek. No member of the Settlement Class has objected to the awards to Plaintiffs.

### 5. The Remaining Sixth Circuit Factors Favor Final Approval

Most of the factors typically considered by courts in the Sixth Circuit are coextensive with the factors courts must consider under Rule 23(e)(2). To the extent some of the Sixth Circuit factors go beyond the requirements of the Federal Rules of Civil Procedure, those factors each weigh in favor of granting final approval of the Settlement.

### a. The Reaction of the Settlement Class Supports Final Approval

In considering a class action settlement, the Court should look to the reaction of the class members. *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008). "The lack of objections to the Settlement or Plan of Allocation provides convincing evidence that the settlement is fair, reasonable and adequate." *Palm Tran*, 2022 WL 17582004, at *4. *See also In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 382 (N.D. Ohio 1983) (the overwhelming approval of a proposed settlement by class members "is entitled to nearly dispositive weight in this court's evaluation of

the proposed settlement"); *Robinson v. Ford Motor Co.,* 2005 WL 5253339, at \*5 (S.D. Ohio June 15, 2005) ("a relatively small number of class members who object is an indication of a settlement's fairness").

Settlement Class Members who wish to be excluded from, or object to, the Settlement must do so by March 20, 2024, pursuant to the Court's detailed instructions in the Preliminary Approval Order. To date, no Settlement Class Members have requested exclusion or objected to any aspect of the Settlement. Bravata Decl. ¶15-16. The absence of any objections or requests for exclusion strongly supports final approval of the Settlement. In their reply, Plaintiffs will address any exclusion requests or objections that postdate this motion.

**b.      Plaintiffs and Lead Counsel Were Sufficiently Informed at This Stage of the Proceedings**

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. The relevant inquiry is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See Nationwide*, 2009 WL 8747486, at \*5-6. The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable an intelligent appraisal of the settlement. *See id*. at \*5 ("[A]lthough the parties were able to negotiate the Settlement at a relatively early stage of the proceedings, all of the parties had a 'clear view of the strengths and weaknesses of their cases.'"); *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543, 556–57 (S.D. Ohio 2000) (approving settlement after minimal discovery, where counsel had "retained experts and engaged in substantial informal discovery prior to the negotiation of the proposed Settlement Agreement."); *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at \*13-\*14 (N.D.

20

Cal. Oct. 25, 2016) (discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing Fairmount and Covia's SEC filings, press releases, conference calls, and other public statements during the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning Fairmount and Covia including research reports by securities and financial analysts; and (iii) retaining an investigator to independently interview former Covia employees and other knowledgeable third parties. In discovery, Lead Counsel reviewed over 22,000 pages of documents produced by Defendant and Covia, including transcripts and exhibits from depositions taken by the SEC during its investigation. Lead Counsel reviewed hundreds of pages produced by counsel for the whistleblowers, whose allegations were central to Plaintiffs' complaint and to the SEC investigation. Lead Counsel also cross-examined four witnesses at depositions noticed by Defendant's counsel. *See* Baker Decl. ¶¶18-29, 34.

Reviewing Defendant's mediation statement and negotiating the Settlement during and after the mediation further informed Lead Counsel about the strengths and weaknesses of the case. Prior to entering into the Settlement, therefore, Lead Counsel and Plaintiffs had a thorough understanding of the strengths and weaknesses of the case, further supporting final approval of the Settlement as reasonable and adequate.

### c. The Public Interest Supports Final Approval

The public interest also supports final approval of the Settlement of this complex class action. *UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions"); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) (similar). The Supreme Court has recognized that private securities actions such as this one are "an essential

21

supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

This Settlement furthers that public policy by providing a substantial recovery to a large Settlement Class of shareholders. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010) (the public interest is served by a class-wide recovery for a class that otherwise "would almost certainly have gone uncompensated"). The settlement of complex cases conserves scarce judicial resources. It resolves the claims of the entire Settlement Class of aggrieved shareholders and ends this protracted and contentious Action, avoiding further years of litigation. *See Motter v. O'Brien*, 2014 WL 12892732, at *1 (S.D. Ohio June 12, 2014) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *Telectronics*, 137 F. Supp. 2d at 1025. Thus, public policy favors final approval of this Settlement.

### C. The Court Should Approve the Plan of Allocation

The Court preliminarily approved the Plan of Allocation in its Preliminary Approval Order. Dkt. No. 73. The Plan was detailed in the Long Notice disseminated to Settlement Class Members. Bravata Decl., Ex. D at 5-9. Plaintiffs now seek final approval of the Plan for the purposes of administering the Settlement.

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *Griffin*, 2013 WL 6511860, at *7. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001). "[A] court must ensure that the distribution of the settlement proceeds is equitable." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010),

22

*aff'd sub nom. Popular Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). The Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017).

Lead Counsel developed the Plan after consulting with the Claims Administrator and Plaintiffs' damages expert. Baker Decl. ¶33. The Plan of Allocation distributes the Net Settlement Fund equitably among Settlement Class Members who were injured by Defendant's alleged misconduct and who submit valid Claim Forms. *Id*. Each eligible Settlement Class Member who submits a valid Proof of Claim form will receive a *pro rata* distribution pursuant to the Plan. The Plan calculates a claimant's relative loss proximately caused by Defendant's alleged misrepresentations and omissions, based on when and at what prices the claimant purchased and sold Fairmount or Covia securities. The Plan of Allocation does not compensate losses from "in and out" transactions, *i.e.* when shares are sold prior to revelation of the truth, comporting with binding legal precedent governing securities fraud actions. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").

The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common" because they tend to mirror the complaint's allegations. *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318,

23

at \*5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at least $10.00 from such a re-distribution as long as the second distribution is cost effective. *See* Bravata Decl., Ex. D (Long Notice) at 5-9. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s), if any. Any residual funds will be distributed to a non-profit charitable organization selected by Lead Counsel. *Id.*

To date, no Settlement Class Member has objected to the Plan of Allocation. Bravata Decl. ¶16. The Court should approve the proposed Plan of Allocation.

## D. The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process

The notice program, alerting the Settlement Class to their rights to file a claim, request exclusion, or object to any aspect of the Settlement or application for attorneys' fees, including detailed instructions of how to take action and the consequences of any particular choice, complies with this Court's Preliminary Approval Order and satisfies the requirements of Rules 23(c)(2) and (e)(1), the PSLRA (15 U.S.C. §78u-4(a)(7)), and due process.

Courts evaluate a notice program's compliance with Rule 23 and due process in terms of its reasonableness. Fed. R. Civ. P. 23(e)(1). Notice is reasonable where it comprises "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(2)(C)(ii); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). "Due process … means that the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves

24

their interests." *Pelzer v. Vassalle*, 655 F. App'x 352, 368 (6th Cir. 2016). In its Preliminary Approval Order, the Court approved the procedures and substance of the notice program, Dkt. No. 73 ¶¶14-22, and appointed SCS as Claims Administrator. *Id.* ¶13.

Under Lead Counsel's direction, SCS executed the notice program exactly as the Court directed in the Preliminary Approval Order. SCS mailed more than 37,000 copies of the Court-approved Postcard Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Bravata Decl. ¶7. In addition, one nominee sent over 19,000 email notifications to their customers, including direct links to the Notice and Claims form on the Settlement website. *Id.* ¶8. SCS also published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business Daily*. *Id.* ¶12. SCS also published all information regarding the Settlement online on the Settlement website. *Id.* ¶14. Defendant also provided notice – independently, but also through SCS – pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715 *et seq*. Bravata Decl. ¶2; Dkt. No. 75 (notice of CAFA compliance). The proposed notice program satisfies due process because it included both individual notice and general publication. *See Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008).

The Notice disseminated to the Settlement Class also provided all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the

consequences thereof; and (7) the dates and deadlines for important Settlement-related events. *See* PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan of Allocation as described in the Notice. The Notice closely tracked a model notice published by the Federal Judicial Center. *Compare* Bravata Decl., Ex. D (Long Notice), *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*, *available at* https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

## IV.     CONCLUSION

For the forgoing reasons, the Court should grant final approval of the proposed Settlement, Plan of Allocation, and notice program. The Court should enter the proposed Final Judgment substantially in the form previously filed as Exhibit B to the Stipulation (Dkt. No. 71-8). When filing their reply brief Plaintiffs will provide the Court with a conformed version of the proposed Final Judgment with the hearing date and list of valid exclusions (if any) filled in.

Dated: March 14, 2024                                      Respectfully submitted,

                                                          **KARON LLC**

                                                          */s/Daniel Karon*
                                                          Daniel Karon
                                                          700 W. St. Clair Ave., Ste. 200,
                                                          Cleveland, Ohio 44113
                                                          Telephone: (216) 622-1851
                                                          Email: dkaron@karonllc.com

*Liaison Counsel for Plaintiffs*

**THE ROSEN LAW FIRM P.A.**
Phillip Kim
Laurence M. Rosen
Joshua Baker
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fascimile:  (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com
        jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-91 SO
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
        clinehan@glancylaw.com
        esams@glancylaw.com

*Additional Counsel for Plaintiffs*

27