## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| WILLIAM PLAGENS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFFER D. DECKARD,<br><br>Defendant. | Case No. 1:20-cv-02744-JPC<br><br><u>CLASS ACTION</u><br><br>Judge J. Philip Calabrese |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARDS TO PLAINTIFFS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................................... 1

II.  CASE BACKGROUND ............................................................................................ 3

III.  ARGUMENT ............................................................................................................. 3

        A.  The Common Fund Doctrine Entitles Lead Counsel to Attorneys' Fees and Reimbursement of Expenses from the Settlement Fund ........................................ 3

        B.  The Court Should Award Lead Counsel a Reasonable Percentage of the Settlement Fund ........................................................................................................................ 3

        C.  The Requested Attorneys' Fees Are Reasonable Under the Percentage of the Fund Method ........................................................................................................................ 5

        D.  The *Ramey* Factors Confirm the Requested Fee is Fair and Reasonable ............... 7

                1.  The Value of the Benefit Obtained for the Settlement Class, in Light of the Risks Avoided, Supports the Requested Fee ............................................. 7

                2.  A Lodestar Cross-Check Supports the Reasonableness of the Requested Attorneys' Fees ...................................................................................... 11

                3.  The Contingent Nature of the Representation Supports the Requested Fee Award ....................................................................................................... 15

                4.  Society's Stake in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee ..................................................................... 17

                5.  The Complexity of the Litigation Supports the Requested Fee ................. 18

                6.  The Professional Skill and Standing of Counsel Supports the Requested Fee Award ............................................................................................... 20

        E.  The Reaction of the Settlement Class Confirms the Requested Fee is Reasonable ........................................................................................................................ 21

        F.  This Court Should Approve Reimbursement of Lead Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained ........................................... 22

        G.  The Court Should Grant Compensatory Awards to Plaintiffs .............................. 23

IV.  CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........................................................................................ 9

*Andrews v. State Auto Mut. Ins. Co.*,
2023 WL 7018839 (S.D. Ohio Oct. 25, 2023)....................................................... 6, 13

*Bailey v. AK Steel Corp.*,
2008 WL 553764 (S.D. Ohio Feb. 28, 2008)............................................................ 14

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005) ...................................................................................... 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................................... 17

*Bessey v. Packerland Plainwell, Inc.*,
2007 WL 3173972 (W.D. Mich. Oct. 26, 2007)......................................................... 6

*Blum v. Stenson*,
465 U.S. 886 (1984)................................................................................................... 3, 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................................................................................................... 3

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996) ........................................................................ 14

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016)......................................................... 24

*Buccellato v. AT & T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011) .......................................................... 15

*Burns v. FalconStor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ......................................................... 14

*Chamberlain v. Reddy Ice Holdings, Inc.*,
757 F. Supp. 2d 683 (E.D. Mich. 2010)..................................................................... 10

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ............................................................................ 10

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................. 20, 25

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..................................................................................................... 16

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................................. 16, 17, 19

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................. 10

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991)............................................................................................ 22

*Fogarazzo v. Lehman Bros., Inc.*,
2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)............................................................................ 19

*Fox v. Vice*,
563 U.S. 826 (2011)................................................................................................................. 11

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .................................................................................................. 10

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)..................................................................... 9, 13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................................................................... 8

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................................................... 17

*Hogan v. Cleveland Ave Rests. Inc.*,
2019 WL 6715976 (S.D. Ohio Dec. 10, 2019) ....................................................................... 24

*Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*,
2022 WL 826903 (C.D. Cal. Mar. 14, 2022)........................................................................... 12

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006).......................................................................... 21

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................................. 18

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................................................... 11

*In re Automotive Parts Antitrust Litig.*,
2019 WL 13090127 (E.D. Mich. Dec. 29, 2019) .................................................................. 12

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014)......................................................................................... 24

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................................... 11

*In re Cardinal Health Inc. Sec. Litigations*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ............................................................. passim

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................... 3, 5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................ 10

*In re China Sunenergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................ 8

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...................................................... 14

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ........................................................ 18, 21, 22

*In re DPL Inc., Sec. Litig.*,
307 F. Supp. 2d 947 (S.D. Ohio 2004) ................................................................. 7

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................ 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................... 16, 18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................... 15

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 10

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................................... 14

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................... 19

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................................ 10, 25

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................ 8

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005).................................................................................... 4

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013)........................................... 4, 6, 22, 23

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................ 24

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014)..................................................... 4, 7

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 1029 (S.D. Ohio 2001) ............................................................... 18

*In re Tupperware Brands Corp. Sec. Litig.*,
   2020 WL 3259749 (M.D. Fla. May 27, 2020)........................................................ 20

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)....................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)....................................................... 13

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................ 3

*In re: UnumProvident Corp. Derivative Litig.*,
   2010 WL 289179 (E.D. Tenn. Jan. 20, 2010)....................................................... 12

*Jenson v. First Tr. Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008) ....................................................... 23

*Katz v. China Century Dragon Media, Inc.*,
   2013 WL 11237202 (C.D. Cal. Oct. 10, 2013)....................................................... 7

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998)................................................................................... 14

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ................................................................................ 19

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................... 15

*McHugh v. Olympia Entm't, Inc.*,
   37 Fed. App'x 730 (6th Cir. 2002) ...................................................................... 12

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ............................................................................................. 14

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) .................................................................... 19, 22

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ...................................................... 12

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ......................................................................... 7, 18

*Rawlings v. Prudential-Bache Properties, Inc.*,
   9 F.3d 513 (6th Cir. 1993) ............................................................................. 3, 4, 5

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12303367 (C.D. Cal. July 9, 2013) ........................................................ 9

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................... 16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................... 23

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
   2010 WL 2490989 (N.D. Ohio June 15, 2010) ...................................................... 6

*Sawant v. Ramsey*,
   2012 WL 3265020 (D. Conn. Aug. 9, 2012) ........................................................ 16

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
   2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ..................................................... 4

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ............................................................... 15

*Stanley v. U.S. Steel Co.*,
   2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ..................................................... 17

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ........................................................................ 15

vi

*Swigart v. Fifth Third Bank,*
  2014 WL 3447947 (S.D. Ohio July 11, 2014) .............................................................. 4, 6, 7, 24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007) ................................................................................................... 17, 18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,*
  669 F.3d 632 (5th Cir. 2012) ............................................................................................ 4

*Vinh Nguyen v. Radient Pharms. Corp.,*
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................... 21

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ........................................................................................ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005)................................................................................... 4, 5, 15

*Woburn Ret. Sys. v. Salix Pharms., Ltd.,*
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)................................................................ 20

*Yedlowski v. Roka Bioscience, Inc.,*
  2016 WL 6661336 (D.N.J. Nov. 10, 2016) ..................................................................... 16, 20

## Statutes

15 U.S.C. §78u-4(a)(4) ............................................................................................. 2, 23

15 U.S.C. §78u-4(a)(6) .................................................................................................. 4

## Other Authorities

H.R. Conf. Rep. No. 369.............................................................................................. 23

Lead Plaintiff Thomas Phelps and named Plaintiffs Sergio Baron and Neville Arjani (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for (i) an award of attorneys' fees in the amount of $2,000,000; (ii) reimbursement of litigation expenses in the amount of $82,181.60; and (iii) compensatory awards to Plaintiffs totaling $25,000.[1]

## I.    INTRODUCTION

The proposed Settlement, providing for a cash payment of $6,000,000 in exchange for resolution of Plaintiffs' claims, represents a substantial benefit for the Settlement Class given the risks and expenses of continued litigation. Upon final approval of the Settlement and administration of the claims procedures, Settlement Class members will promptly receive a substantial cash payment, avoiding further delay, uncertainty, and risk.

Since the inception of the Action in 2020, Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), has not received any compensation or reimbursement of out-of-pocket expenses, litigating this case on a contingency basis as it zealously represented Plaintiffs and the putative class. Having secured a $6,000,000 recovery for the Settlement Class, Lead Counsel request that the Court award attorneys' fees from the common Settlement Fund, in an amount equal to one third of the Settlement Amount, or $2,000,000, for Lead Counsel's efforts in obtaining this favorable result. In zealously representing Plaintiffs and the Settlement Class through over three years of litigation, Lead Counsel faced the material risk of non-payment of attorneys' fees and

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated October 25, 2023 (Dkt. No. 71-2) ("Stipulation"). Citations to "Baker Decl." are to the Declaration of Joshua Baker, filed herewith. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata, attached as Exhibit 1 to the Baker Decl. Citations to "Rosen Fee Decl." are to the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses, attached as Exhibit 2 to the Baker Decl. Citations to "GPM Fee Decl." are to the Declaration of Ex Kano S. Sams II Concerning Attorneys' Fees and Expenses, attached as Exhibit 3 to the Baker Decl. Citations to "Karon Fee Decl." are to the Declaration of Daniel Karon Concerning Attorneys' Fees and Expenses, attached as Exhibit 4 to the Baker Decl.

1

litigation expenses that they advanced. In securing this Settlement for Plaintiffs and the Settlement Class, Lead Counsel investigated claims against Defendants, drafted an initial complaint, successfully moved for the appointment of Dr. Phelps as Lead Plaintiff after a comprehensive vetting by the Court, drafted an amended complaint, opposed and defeated in part Defendants' motion to dismiss, reviewed tens of thousands of pages of documents in discovery, cross-examined four witnesses during depositions, and participated in a full-day mediation and continued negotiations thereafter, before finalizing the Settlement, obtaining preliminary approval, and overseeing the Court-approved notice program.

An award of one third of the Settlement Amount in attorneys' fees properly reflects the risks Lead Counsel assumed and the significant recovery they achieved on behalf of Plaintiffs and the Settlement Class. To date, not one Settlement Class Member has objected to the attorneys' fee request or the request for reimbursement of expenses, which were detailed in the notice issued to potential Settlement Class Members. The requested fee is reasonable and within the range of attorneys' fees awarded in similar cases.

Lead Counsel also seek reimbursement of $82,181.60 in out-of-pocket litigation expenses they incurred in prosecuting this Action. These expenses were reasonable and necessary to prosecute and resolve Plaintiffs' claims successfully and are the type of litigation expenses that courts regularly reimburse in similar cases.

Finally, during the course of the Action, Plaintiffs have expended many hours of effort leading the Action on behalf of the Settlement Class. Plaintiffs request awards totaling $25,000: $10,000 each for Dr. Phelps and Mr. Baron and $5,000 for Mr. Arjani, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4), to compensate them for their time. This request is reasonable and in line with awards granted in similar cases.

## II.     CASE BACKGROUND

A detailed summary of the procedural history of this Action and the Settlement is set forth in the memorandum of law in support of Plaintiffs' motion for final approval of the Settlement, filed concurrently herewith.

## III.    ARGUMENT

### A.      The Common Fund Doctrine Entitles Lead Counsel to Attorneys' Fees and Reimbursement of Expenses from the Settlement Fund

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531–32 (E.D. Mich. 2003).[2] This achieves equity, as "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

Here, Lead Counsel's efforts have conferred a substantial benefit – $6,000,000 in cash – on the Settlement Class, warranting payment of attorneys' fees from the common fund.

### B.      The Court Should Award Lead Counsel a Reasonable Percentage of the Settlement Fund

The method preferred by most courts for awarding fees from a common fund is the "percentage of the fund" method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class"). Although courts have discretion to utilize either the lodestar or the percentage of the

---

[2] Citations and quotations are omitted and emphasis is added, unless otherwise noted.

3

fund method when awarding attorney fees, *Rawlings*, 9 F.3d at 516, courts within the Sixth Circuit have recognized the clear trend "toward adoption of a percentage of the fund method in common fund cases." *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013).

This Court should apply the percentage of the fund method. It is appropriate in this case and the preference of most courts because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *See, e.g., Rawlings*, 9 F.3d at 515-17 ("the percentage of the fund method more accurately reflects the results achieved."); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014); *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007). It also "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014). The percentage method "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).

The percentage of the fund method also comports with the PSLRA. 15 U.S.C. §78u-4(a)(6) ("[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). As courts have recognized, "[p]art of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

4

Conversely, the lodestar method "has been criticized for being too time-consuming of scarce judicial resources," as it requires that courts "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Rawlings*, 9 F.3d at 516–17. Moreover, "[w]ith the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.* at 517; *see also Wal-Mart*, 396 F.3d at 121 (the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.").

**C.      The Requested Attorneys' Fees Are Reasonable Under the Percentage of the Fund Method**

The standard for a requested award of attorneys' fee in common fund cases in the Sixth Circuit is that they be "reasonable under the circumstances." *Rawlings*, 9 F.3d at 516; *Cardizem*, 218 F.R.D. at 531. Here, Lead Counsel's zealous prosecution led to achieving this Settlement for Settlement Class Members. Their efforts support the reasonableness of the requested fee award.

Through more than three years of litigating this case, Lead Counsel successfully moved for appointment of the Lead Plaintiff after a contested hearing; conducted extensive legal research and investigation of the factual allegations and claims of Plaintiffs and the putative class, including identifying, locating, and interviewing witnesses and consulting with experts; prepared and filed an initial complaint and an amended complaint; conducted legal and factual research in opposing Defendants' motion to dismiss the amended complaint; negotiated a discovery schedule and document production protocols; reviewed tens of thousands of documents produced by Defendant, Covia, and counsel for the key whistleblowers in discovery; responded to document requests and interrogatories from Defendant; cross-examined four witnesses cited in the complaint; participated in a full-day mediation session and extended negotiations after the mediation; negotiated and

finalized the Settlement; successfully moved for preliminary approval of the Settlement; and oversaw the Court-approved notice program. Baker Decl. ¶¶18-29, 34.

In fact, the legal work Lead Counsel performed for the Settlement Class's benefit will not end with the Court's approval of the proposed Settlement. Lead Counsel will devote additional hours and resources to respond to Settlement Class Members' inquiries, address any concerns the Court may have at the Settlement Hearing, and conclude the claims process by filing a motion to distribute the Net Settlement Fund to Settlement Class Members. Baker Decl. ¶46. Lead Counsel will not seek additional compensation for this work. *Id. See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% as attorneys' fees, considering time and effort expended already and remaining work to oversee claims process and distribution), *aff'd,* 674 F. App'x 37 (2d Cir. 2016).

A fee of one-third of the common fund for Lead Counsel's efforts is consistent with the awards district courts in the Sixth Circuit have granted in similar common fund cases. *See, e.g.*, *Se. Milk*, 2013 WL 2155387, at *3 (finding that 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Swigart*, 2014 WL 3447947, at *7 ("An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts"); *Andrews v. State Auto Mut. Ins. Co.*, 2023 WL 7018839, at *6 (S.D. Ohio Oct. 25, 2023) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement."); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (awarding attorneys' fees of one-third of the settlement fund); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding 33%, and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of

recovery"); *Skelaxin*, 2014 WL 2946459, at *1 (awarding one-third of a $73 million settlement fund, which the court found "fair and reasonable and fully justified" and "within the range of fees ordinarily awarded.").

The requested fee is also in line with contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("contingency fee arrangements generally range from 30% to 40% of final recovery.").

This Court should grant Lead Counsel's request for an award of attorneys' fees in the amount of one-third of the Settlement Amount because the request is reasonable and consistent with awards granted in similar cases in this Circuit.

### D.     The *Ramey* Factors Confirm the Requested Fee is Fair and Reasonable

The Sixth Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis [the lodestar cross-check]; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194–97 (6th Cir. 1974); *Swigart*, 2014 WL 3447947, at *6. These factors all support an award of the requested attorneys' fees.

####           1.     The Value of the Benefit Obtained for the Settlement Class, in Light of the Risks Avoided, Supports the Requested Fee

The result achieved for the Settlement Class is one of the primary factors courts consider in gauging the reasonableness of a requested fee award. *In re DPL Inc., Sec. Litig.*, 307 F. Supp.

7

2d 947, 951 (S.D. Ohio 2004); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (finding the "most critical factor is the degree of success obtained"). Here, the $6,000,000 Settlement Amount represents approximately 8% of the maximum estimated damages of $75 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert.

The Settlement recovery is well within the range of other securities class action settlements with similar total damages. *See, e.g., In re China Sunenergy Sec. Litig.*, 2011 WL 1899715, at \*15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at \*6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery). According to Cornerstone Research, between 2014-2023 the median recovery in cases such as this one alleging Rule 10b-5 claims with $75-149 million in maximum estimated damages was approximately 5.3% of estimated damages. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research), at 6.[3]  Between 2019-2023, securities class actions that settled after a ruling on a motion to dismiss but before the filing of a class certification motion, just like this Action, recovered a median of 4.2% of estimated damages. *Id.* at 15.

The Settlement Amount is even more favorable than those raw numbers indicate because the $75 million maximum damages theoretically available under Plaintiffs' best-case scenario assumes that: (i) Plaintiffs are able to succeed at summary judgment and at trial; (ii) the Court certifies the same class period as the Settlement Class Period, for each type of security; (iii) Plaintiffs are able to prove that the *entirety* of each of the stock declines alleged in the complaint—including the stock decline arising from Covia's insolvency announcement—was caused by

---

[3]  *Available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.

Defendant's misrepresentations; and (iv) the Court and jury accept Plaintiffs' damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages. Of particular note here, the final and largest stock price decline occurred in the wake of Covia's insolvency announcement. Plaintiffs allege that the insolvency was partly caused by the undisclosed failures of the specialty proppant products, but to the extent it was caused by other factors (such as the widely-known decline of the price of Covia's main product line, as opposed to the specialty products which never generated significant revenues) the amount of damages would be reduced proportionately. Most likely, Plaintiffs would not even have claimed at trial that the *entirety* of the stock price declines supporting the full $75 million in estimated damages was attributable to the alleged fraud. Thus, the Settlement represents a highly favorable result for the Settlement Class.

The value of the amount recovered for the Settlement Class must also be weighed against the risks avoided by the Settlement. While Lead Counsel believe that Plaintiffs' claims that survived Defendants' motion to dismiss are meritorious and remain confident in their ability to prevail at class certification, summary judgment, and trial, there remain substantial risks in the litigation. Without the Settlement, Plaintiffs' ability to obtain and collect a substantial judgment, much less a larger one than the Settlement Amount, is far from certain. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("to be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013)

("Courts experienced with securities fraud litigation, routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.").

Even if Plaintiffs overcome each of the impending procedural obstacles and successfully established liability, they would still face considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 714 (E.D. Mich. 2010) ("a plaintiff must show that an economic loss occurred after the truth behind the misrepresentation or omission became known to the market."). Proving damages presents a significant risk in securities class actions. "Calculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion ....'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the "complexities of calculating damages increase geometrically"). "There is the undeniable risk that a 'jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses.'" *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). As explained above, proving damages in this case presented a particularly large risk.

Even if Plaintiffs overcame these risks and a jury awarded the full measure of damages, they would still face the risk of an adverse decision on post-trial motions, or reversal on appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury

10

verdict of $2.46 billion on loss causation and damages grounds, remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Accordingly, the value of the benefit of the Settlement, weighed against the risks Lead Counsel overcame in litigating the case and the risks Plaintiffs still face, supports awarding the requested amount of attorneys' fees.

### 2. A Lodestar Cross-Check Supports the Reasonableness of the Requested Attorneys' Fees

When applying the percentage of the fund method, courts sometimes look at the hours expended by counsel, either as a factor in the fee analysis, or as an independent cross-check to prevent counsel from receiving a windfall. *See Cardinal Health*, 528 F. Supp. 2d at 764. Counsel's lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005).

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012). Here, an informal lodestar cross-check on the requested fee award further supports the reasonableness of the requested fee.

11

In complex litigation, reasonable hourly rates may be determined with reference "to national markets, an area of specialization, or any other market [the court believes] is appropriate to fully compensate attorneys in individual cases." *McHugh v. Olympia Entm't, Inc.*, 37 Fed. App'x 730, 740 (6th Cir. 2002) ("A court's choice not to apply local market rates for attorney fees is not an abuse of discretion."); *see also In re: UnumProvident Corp. Derivative Litig.*, 2010 WL 289179, at *6 (E.D. Tenn. Jan. 20, 2010) (in complex case, approving rates charged by plaintiff's out-of-town counsel where defendants were also represented by large out-of-town firms).

Rosen Law's hourly rates for attorneys who worked on this case range from $950-$1,150 for partners, $850 for counsel, and $500-$650 for associates. Rosen Fee Decl. ¶5. Additional counsel, GPM, used hourly rates for attorneys who worked on this case ranging from $895-$1,125 for partners, $625 for senior counsel, and between $325-$400 for paralegals and research analysts. GPM Fee Decl. ¶5. Liaison counsel used hourly rates of $895 for partners and $680 for associates. Karon Fee Decl. ¶5. These rates are consistent with those of other attorneys engaged in similar class action litigation. *See, e.g., Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (finding hourly rates which "ranged from $500 (associates) to $1,200 (senior partners)… are comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and complexity"); *In re Automotive Parts Antitrust Litig.*, 2019 WL 13090127, at *3 (E.D. Mich. Dec. 29, 2019) ("In national markets, 'partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400.' In specialties such as 'antitrust and high-stakes litigation and appeals ... [f]or lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950.'") (quoting Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, The Wall Street Journal (Feb. 16, 2016), https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708); *Hope*

12

*Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding "rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates" to be reasonable); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check with "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Hefler*, 2018 WL 6619983, at *14 (finding reasonable counsel's rates that ranged from $650 to $1,250 for partners or senior counsel and from $400 to $650 for associates).

The rates of Plaintiffs' counsel are also reasonable when viewed in light of the rates—not charged on a contingency basis—by out-of-town counsel representing Defendant. In addition to representing Defendants and Covia in this Action, Kirkland & Ellis LLP also represented Covia and related debtor entities in its Chapter 11 reorganization proceedings. *In re Covia Holdings Corp.*, No. 20-33295 (S.D. Tex. Bankr.). In those proceedings, Kirkland & Ellis requested attorneys' fees for their work in the bankruptcy, *including* in connection with the settlement of the SEC's investigation into Covia's proppant products and alleged securities law violations which are integrally related to this Action. Baker Decl., Ex. 12. In support of their fee request, Kirkland & Ellis disclosed that their hourly rates for litigation partners (including those engaged in this Action) ranged from $1,095 to $1,575, plus $925 for litigation "of counsel," and between $725 and $925 for litigation associates. *Id.*

In awarding a fee under the lodestar method or conducting a cross-check in complex class actions, Courts have found it appropriate to apply a multiplier to counsel's lodestar to reflect factors such as the contingency risks of the litigation and the quality of the work performed. *See, e.g., Andrews*, 2023 WL 7018839, at *6 ("a contingent fee risk is considered by many courts to be

13

the most significant factor in awarding a multiplier"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1278 (S.D. Ohio 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–52 (9th Cir. 2002) (approving a 3.65 lodestar multiplier and noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Lead Counsel calculated its lodestar by multiplying the number of hours each attorney expended on the litigation by their current reasonable and customary hourly rate, totaling the amounts for all timekeepers.[4] Lead Counsel devoted a total of 1,190.46 hours to the prosecution of this Action, resulting in a lodestar of $1,006,244.50. Baker Decl. ¶45. The $2,000,000 fee request represents a multiplier on Lead Counsel's lodestar of approximately 1.99. *Id.*

Courts within the Sixth Circuit have awarded fees with much higher multipliers than Lead Counsel seek here. *See Cardinal Health*, 528 F. Supp. 2d at 768 (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically … increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"). So too have other courts. *E.g., Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 11, 2014) (finding fee award of 33.3% "reasonable" based on cross-check

---

[4] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

multiplier of 4.75); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by … courts throughout the country"); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers"); *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fees resulting in a lodestar multiplier of 4.3, and collecting cases with multipliers ranging from 4.3 to 9.3).

The fee award Lead Counsel request is well within the range of what courts in this Circuit regularly award counsel for helping to secure settlements of complex class actions such as this one, under a percentage of the fund or lodestar multiplier method. The lodestar cross-check supports awarding Lead Counsel attorneys' fees of one-third of the common fund.

### 3. The Contingent Nature of the Representation Supports the Requested Fee Award

Lead Counsel have prosecuted this action entirely on a contingent basis, understanding from the outset of the Action that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever receiving compensation for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case…." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Lead Counsel] have not been

15

compensated for any time or expenses since this case began…." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*27 (S.D.N.Y. Nov. 8, 2010); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis"). Lead Counsel's commitments of time and expenses were significant and would have gone unrewarded and unreimbursed had Lead Counsel failed to obtain a recovery.

Contingency fee risk is not illusory. "The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain." *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at \*21 (D.N.J. Nov. 10, 2016). There are numerous class actions in which plaintiffs' counsel expend thousands of hours, and yet receive no remuneration whatsoever despite their diligence and expertise. In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal and judgment entered for defendant). In *Sawant v. Ramsey*, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

Lead Counsel have incurred over $85,000 in out-of-pocket expenses litigating for the benefit of the Settlement Class, received no compensation during the more-than-three years this action has been pending, and were never guaranteed reimbursement of these costs or the payment

16

of any fee. Lead Counsel's efforts led to a $6,000,000 recovery for the Settlement Class. This supports a finding that the fee request is reasonable. *See Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at \*3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

### 4. Society's Stake in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee

"[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988); *see also Cardinal Health*, 528 F. Supp. 2d at 766.

Adequate compensation is a necessary component of encouraging attorneys to assume the risk of litigation in the public interest. Indeed, without adequate compensation it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute, to a favorable conclusion, such complex, risky, and expensive securities class actions such as this one. As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *Aeropostale*, 2014 WL 1883494, at \*18; *see also Hicks v. Stanley*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005) (private securities actions promote securities laws' objectives, but "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."). Thus, "[i]n evaluating the reasonableness of a fee request, the court also must consider society's

17

stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *Ramey*, 508 F.2d at 1196. If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

Society also benefits from fair and efficient capital markets, and private enforcement of the securities laws is necessary to maintain those markets. *See Tellabs*, 551 U.S. at 313. Moreover, class actions are often the only way economically feasible way for investors – both large and small – to obtain compensation when they are victims of securities fraud. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources" to achieve a result "they could not obtain alone"); *Cardinal Health*, 528 F. Supp. 2d at 765 ("absent class actions, most individual claimants would lack the resources to litigate a case of this magnitude, and individual recoveries are often too small to justify the burden and expense of litigation."). Here, the able prosecution and favorable resolution of a class action involving private enforcement of the securities laws weighs in favor of the requested award.

The integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here.

### 5. The Complexity of the Litigation Supports the Requested Fee

Courts recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006), a factor that further supports

18

an award of attorneys' fees. *See also New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011). In these cases the legal and factual issues are extremely complicated and highly uncertain in outcome. "[I]n evaluating the settlement of a securities class action, federal courts, including this court, have long noted that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (securities litigation is 'notoriously difficult and unpredictable").

This case was no exception. This case raised difficult questions concerning liability and damages. By the time the Settlement was reached Plaintiffs had already investigated and filed an initial complaint, moved for Lead Plaintiff appointment, further investigated and filed an amended complaint, researched and briefed a motion to dismiss, engaged in extensive discovery including the review of an *initial* production of tens of thousands of pages of documents, and cross-examined four witnesses during depositions. Baker Decl. ¶¶18-29, 34. After over three years of litigation, Plaintiffs would still have to prevail at class certification, defeat a likely motion for summary judgment, and prevail at trial and then through post-verdict motions and appeals on Defendant's arguments concerning falsity, scienter, and loss causation, and the proper measure of damages. The litigation also raised complex factual questions related to loss causation and damages and trends in the sand and fracking industries, all of which would require development of a substantial factual record and extensive consultation with experts.

Similarly, the magnitude of the Action is unquestionable. Tens of millions of dollars in damages are at stake, and the case required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See Aeropostale*, 2014

WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 6. The Professional Skill and Standing of Counsel Supports the Requested Fee Award

"The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the Securities Class...." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019). Here, the Settlement provides the Settlement Class with a guaranteed cash payment of $6,000,000. The result achieved here is even more impressive when juxtaposed against the significant hurdles that, on behalf of Plaintiffs and the Settlement Class, Lead Counsel has already overcome in this Action. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *4 (S.D.N.Y. Aug. 18, 2017) (requested fee award warranted where counsel prevailed against motion to dismiss, and prosecuted through highly contested discovery process, against well-represented opponent).

The quality of Lead Counsel's efforts and commitment to providing Plaintiffs and the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* Baker Decl. Ex. 8 (Rosen Law's firm resume).[5] Courts around the country have recognized the quality of Rosen Law's work. *See, e.g., Roka Bioscience*, 2016 WL 6661336, at *21 ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, 2020 WL 3259749, at *2–3 (M.D. Fla. May 27, 2020), *report and recommendation adopted sub nom. In Re Tupperware Brands Corp. Sec. Litig.*, 2020 WL 3259086

---

[5] The firm resumes of Glancy Prongay & Murray LLP ("GPM"), additional counsel for Plaintiffs, and Karon LLC, liaison counsel for Plaintiffs, are also attached as Exhibits 9 and 10, respectively, to the Baker Decl. The time and expenses contributed by additional and liaison counsel are detailed in the GPM Fee Decl. and Karon Fee Decl.

(M.D. Fla. June 16, 2020) (recognizing that Rosen Law is "well-credentialed" with "significant securities litigation experience"); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation").

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. "The ability of [Plaintiffs'] Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee requested." *Delphi*, 248 F.R.D. at 504; *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendant and Covia were represented by accomplished attorneys from Kirkland & Ellis LLP, skilled securities practitioners who vigorously represented the interests of their clients. Baker Decl. ¶44.

Notwithstanding formidable opposition, Lead Counsel skillfully prosecuted the Action, enabling them to achieve the favorable Settlement for the benefit of the Settlement Class and supporting the attorneys' fees they have requested.

### E. The Reaction of the Settlement Class Confirms the Requested Fee is Reasonable

The notice that was mailed or emailed to over 56,000 potential Settlement Class Members advised them that Lead Counsel would apply for a fee and expense award of one third of the Settlement Amount, or $2,000,000, and provided detailed instructions as to how and when Settlement Class Members could object to the fee and expense application, per the Court's Preliminary Approval Order. Bravata Decl., Exs. B (Postcard Notice) and D (Long Notice). After

21

an extensive notice program, to date there have been no objections to the fee request. Bravata Decl. ¶16. "The Class's reaction to the requested fee award is . . . important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *Fruit of the Loom*, 234 F.R.D. at 634; *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (no objections to the fee request taken into account in finding fee request reasonable).

**F. This Court Should Approve Reimbursement of Lead Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained**

Lead Counsel also requests reimbursement of $82,181.60 in expenses incurred while prosecuting the Action. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *Fruit of the Loom*, 234 F.R.D. at 634-35; *see Se. Milk*, 2013 WL 2155387, at *7 ("Expense awards are customary" in common fund cases).

Lead Counsel incurred total litigation expenses of $82,181.60 in this Action, Rosen Fee Decl. ¶6; GPM Fee Decl. ¶6; Karon Fee Decl. ¶6. This amount is well-within the $95,000 maximum amount disclosed in the Notice. Bravata Decl., Exs. B (Postcard Notice) and D (Long Notice). No Settlement Class Member has objected to the reimbursement. Bravata Decl. ¶16.

In determining which expenses are reasonable and compensable the question is whether such costs are of the variety typically billed by attorneys to paying clients in similar litigation. *See Fruit of the Loom*, 234 F.R.D. at 634-35. Most of the expenses Lead Counsel advanced were for professional services rendered by Plaintiffs' experts and investigators, mediation fees, and travel expenses for the various hearings and depositions over three years of litigation. The remaining expenses are attributable to document hosting fees, deposition and transcript fees, legal and factual

22

research, service of process, issuing notice to class members, and other expenses incurred during the litigation. Rosen Fee Decl. ¶6; GPM Fee Decl. ¶6; Karon Fee Decl. ¶6. These expenses were essential to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, the Court should approve their reimbursement. *See Se. Milk*, 2013 WL 2155387, at *8 ("Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred, but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case," approving reimbursement of nearly $800,000 in litigation expenses).

Accordingly, the Court should award Lead Counsel $82,181.60 from the common fund for unreimbursed litigation expenses.

### G. The Court Should Grant Compensatory Awards to Plaintiffs

Plaintiffs also request awards of $10,000 to Dr. Phelps, $10,000 to Mr. Baron, and $5,000 to Mr. Arjani as compensation for their time and efforts spent prosecuting the Action and securing the Settlement for the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also* H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). These awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–9 (9th Cir. 2009); *Jenson v. First Tr.*

23

*Corp.*, 2008 WL 11338161, at \*16 (C.D. Cal. June 9, 2008) (awarding \$20,000 to lead plaintiff, noting that "Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives.").

Courts routinely grant similar compensatory awards to representative plaintiffs in class actions for their service in litigating a class action and securing a benefit for class members. *See, e.g., Swigart*, 2014 WL 3447947, at \*7 (granting "class representative award requests of \$10,000 to each of the two Class Representatives … to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this action.") (collecting cases); *Hogan v. Cleveland Ave Rests. Inc.*, 2019 WL 6715976, at \*6 (S.D. Ohio Dec. 10, 2019) ("Courts recognize and grant 'incentive awards as efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class," awarding incentive awards of \$15,000 and \$10,000 to named plaintiffs); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expenses and costs to lead plaintiffs totaling \$453,000); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding \$25,410 to lead plaintiff); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at \*14 (C.D. Cal. July 22, 2016) (awarding \$10,000 each to lead plaintiffs).

As detailed in their respective declarations (Baker Decl., Exs. 5-7), Plaintiffs devoted over 100 combined hours to the Action. Each of the Plaintiffs took active roles in the litigation by, among other things, communicating with counsel regarding the progress of the case; completing PSLRA certifications in connection with their motions to be appointed Lead Plaintiff; attending an in-person hearing before the Court in connection with the competitive and comprehensive Lead Plaintiff appointment process (for Dr. Phelps and Mr. Baron); reviewing Defendant's discovery

24

requests and providing responsive information; reviewing and discussing with counsel all of the significant pleadings filed in the Action; and consulting with counsel in approving the Settlement. *Id.* (Plaintiffs' declarations) at ¶3. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21; *Christine Asia*, 2019 WL 5257534, at *20 (approving award to lead plaintiffs who reviewed pleadings and briefs, assisted with discovery responses, and evaluated and approved settlement).

The efforts Plaintiffs made on behalf of the Settlement Class support their requests for compensatory awards. The total requested awards of $25,000 amount to approximately 0.4% of the Settlement Fund. The Court should grant the requested awards to Plaintiffs because they are reasonable to compensate Plaintiffs for their significant efforts over three years of litigation representing the Settlement Class.

## IV. CONCLUSION

For the foregoing reasons, the Court should enter an Order: (a) awarding Lead Counsel attorneys' fees in the amount of $2,000,000; (b) awarding reimbursement to Lead Counsel for expenses and costs in the amount of $82,181.60; and (c) awarding reimbursement to Plaintiffs for their time spent on the Action in the amounts of $10,000 to Dr. Phelps, $10,000 to Mr. Baron, and $5,000 to Mr. Arjani.

Dated: March 14, 2024                          Respectfully submitted,

                                               **KARON LLC**

                                               */s/Daniel Karon*
                                               Daniel Karon
                                               700 W. St. Clair Ave., Ste. 200,
                                               Cleveland, Ohio 44113
                                               Telephone: (216) 622-1851
                                               Email: dkaron@karonllc.com

25

*Liaison Counsel for Plaintiffs and the Class*

**THE ROSEN LAW FIRM P.A.**
Phillip Kim
Laurence M. Rosen
Joshua Baker
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fascimile:  (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com
         jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-91 SO
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
         clinehan@glancylaw.com
         esams@glancylaw.com

*Additional Counsel for Plaintiffs*

26