## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| WILLIAM PLAGENS, Individually and on behalf of all others similarly situated, | Case No. 1:20-cv-02744-JPC |
| Plaintiff, | CLASS ACTION |
| v. | Judge J. Philip Calabrese |
| JENNIFFER D. DECKARD, |  |
| Defendant. |  |

## DECLARATION OF JOSHUA BAKER IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS

I, Joshua Baker, declare the following, to the best of my knowledge, pursuant to 28 U.S.C. §1746.[1]

1.      I am an attorney duly licensed to practice law in the State of New York and admitted *pro hac vice* in this Action. I am an attorney with The Rosen Law Firm, P.A. ("Rosen Law"), Lead Counsel for Lead Plaintiff Thomas Phelps and named Plaintiffs Sergio Baron and Neville Arjani (collectively, "Plaintiffs") in the above-captioned Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto. I intend nothing in this Declaration to constitute a specific or general waiver of attorney-client privilege or any other applicable privilege or doctrine.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings set forth in the Stipulation of Settlement dated October 25, 2023 (Dkt. No. 71-2) ("Stipulation").

1

2.      I submit this Declaration in support of Plaintiffs' and Lead Counsel's motions, filed concurrently herewith, for: (1) final approval of the proposed class action Settlement; and (2) an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. I set forth herein relevant facts concerning the Action against Defendant Jenniffer D. Deckard. I also set forth herein relevant facts showing that (1) the Settlement is fair, reasonable, and adequate; (2) the notice program satisfied Fed. R. Civ. P. 23(c)(2) and 23(e)(1), the Private Securities Reform Act of 1995, 15 U.S.C. §78u-4(a)(7) ("PSLRA"), and due process; (3) the Plan of Allocation is fair and reasonable; and (4) and that Plaintiffs' and Lead Counsel's requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable.

3.      The Settlement completely resolves the Action as to all claims against all remaining defendants, providing for a cash payment by and on behalf of Defendant in the amount of $6,000,000, in exchange for full mutual releases.

4.      On November 20, 2023, the Court entered an Order preliminarily approving the Settlement and approving the form and manner of providing notice to potential Class Members (Dkt. No. 73) ("Preliminary Approval Order").

5.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Rosen Law of one-third of the Settlement Fund ($2,000,000), reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $82,181.60, and awards to Plaintiffs totaling $25,000.

6.      Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.").

2

7. Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.").

8. Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Ex Kano S. Sams II Concerning Attorneys' Fees and Expenses ("GPM Fee Decl.").

9. Attached hereto as **Exhibit 4** is a true and correct copy of the Declaration of Daniel Karon Concerning Attorneys' Fees and Expenses ("Karon Fee Decl.").

10. Attached hereto as **Exhibit 5** is a true and correct copy of the Declaration of Thomas Phelps ("Phelps Decl.").

11. Attached hereto as **Exhibit 6** is a true and correct copy of the Declaration of Sergio Baron ("Baron Decl.").

12. Attached hereto as **Exhibit 7** is a true and correct copy of the Declaration of Neville Arjani ("Arjani Decl.").

13. Attached hereto as **Exhibit 8** is a true and correct copy of Rosen Law's firm resume.

14. Attached hereto as **Exhibit 9** is a true and correct copy of the firm resume of Glancy Prongay & Murray LLP, additional counsel for Plaintiffs.

15. Attached hereto as **Exhibit 10** is a true and correct copy of the firm resume of Karon LLC, liaison counsel for Plaintiffs.

16. Attached hereto as **Exhibit 11** is a true and correct copy of the Declaration of Robert A. Meyer ("Meyer Decl.").

17. Attached hereto as **Exhibit 12** is a true and correct copy of excerpts from a filing made by Kirkland & Ellis LLP in *In re Covia Holdings Corp.*, No. 20-33295 (S.D. Tex. Bankr.), ECF No. 1152.

3

**Procedural History**

18.     This Action commenced on December 10, 2020, with the filing of a putative class action complaint alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendant Deckard and other current and former officers and directors of Covia Holdings Corporation, f/k/a Fairmount Santrol Holdings Inc. ("Covia" or the "Company"), in a case captioned *Plagens v. Deckard, et. al.,* 20-cv-2744. Dkt. No. 1.

19.     After substantial briefing on competing motions for appointment of Lead Plaintiff, including by Dr. Phelps and Mr. Baron, the Court held in-person interviews, a remote interview, and an in-person hearing on the motions on July 23, 2021. *See* Order (non-document) dated June 8, 2021. Dr. Phelps and Mr. Baron attended the interviews and hearing in person.

20.     Following the lead plaintiff interviews and hearing, the Court consolidated the related actions and appointed Dr. Phelps as Lead Plaintiff on August 2, 2021. Dkt. No. 42. The Court approved Dr. Phelps' choice of The Rosen Law Firm, P.A. as Lead Counsel on August 16, 2021. Dkt. Nos. 42-43.

21.     Upon his appointment Dr. Phelps, through Lead Counsel, further investigated the claims in this action by, among other things, reviewing public information about Covia such as U.S. Securities and Exchange Commission ("SEC") filings, press releases, news articles, transcripts, other public statements issued by or concerning Defendants, and notes and research reports of financial analysts concerning Covia's business and financial performance. With the help of expert consultants, Lead Counsel performed economic, pricing, and damages analyses. Lead Counsel also retained an investigator to locate and to interview witnesses, both former employees of Covia and others with knowledge of the events surrounding the allegations of the complaint.

22.     Lead Plaintiff, along with the other named Plaintiffs, filed their amended complaint on October 20, 2021. Dkt. No. 46. Plaintiffs filed a corrected amended complaint on November 8, 2021. Dkt. No. 50.

23.     Defendants filed their motion to dismiss the amended complaint on December 15, 2021. Dkt. No. 51. Plaintiffs opposed the motion to dismiss on January 31, 2022, Dkt. No. 52, and Defendants filed their Reply on March 2, 2022. Dkt. No. 53.

24.     On March 30, 2023, the Court granted in part and denied in part Defendants' motion to dismiss, allowing Plaintiffs' Section 10(b) claims to proceed against Deckard with respect to some of the statements alleged in the complaint. Dkt. No. 54.

25.     After the Court's decision on the motion to dismiss, the parties exchanged initial disclosures, conducted a Rule 26(f) conference, and submitted to the Court—which then entered— a protective order, ESI protocol, and discovery schedule. Dkt. Nos. 59-62, 65. Defendant filed an answer to the complaint on June 15, 2023. Dkt. No. 66.

26.     In discovery, the parties exchanged interrogatories, requests for documents, and a subpoena for documents to non-party Covia, as well as responses and objections thereto. Plaintiffs requested, and Defendant and Covia produced, an initial production of key identifiable documents including the transcripts of the SEC's depositions of Deckard and several other Covia employees and executives. Including and beyond this initial production, Defendant and Covia produced over 22,000 pages of documents, which Lead Counsel reviewed. Defendant deposed four of the five confidential witnesses cited in the complaint. Lead Counsel attended those depositions and cross-examined each witness.

27.     As the parties were navigating discovery, they engaged Robert A. Meyer of JAMS to mediate settlement negotiations. Mr. Meyer is a well-respected mediator with substantial

experience mediating securities class actions. Prior to the mediation, the Parties exchanged detailed mediation statements. The Parties attended an all-day mediation with Mr. Meyer on August 29, 2023. The mediation was not successful, but the parties continued productive settlement negotiations over the following weeks with Mr. Meyer's assistance.

28.     On September 11, 2023, the parties accepted a proposal by Mr. Meyer to settle the Action for $6,000,000, subject to the negotiation and formal documentation of the full terms of the Settlement. On October 25, 2023, the parties finalized and executed the Stipulation, memorializing the Settlement.

29.     On November 8, 2023, Plaintiffs filed their motion for preliminary approval of the Settlement, which included the Stipulation and proposed forms and methods of notice to Settlement Class Members. Dkt. No. 71. On November 20, 2023, the Court entered the Preliminary Approval Order, and set a Settlement Hearing for April 11, 2024, at 10:00 a.m. Dkt. No. 73.

**Settlement Terms**

30.     The Settlement provides for a cash payment of $6,000,000 to settle the Settlement Class's claims. Under Plaintiffs' best-case scenario – assuming Plaintiffs overcome all of the litigation obstacles detailed below and Defendants do not prevail on any of their arguments – Plaintiffs' expert estimated that Plaintiffs' maximum potentially recoverable class wide damages are approximately $75 million.

31.     The $6,000,000 Settlement therefore represents approximately 8% of the Settlement Class's best-case, maximum recoverable damages estimate. If the Court grants final approval of the Settlement, Plaintiffs and all Settlement Class Members who remain in the Settlement Class will forever release their claims that were alleged or could have been alleged against Defendant in this Action.

32.    Requests for exclusion and objections to the Settlement must be received by March 20, 2024. To date, not one member of the Settlement Class has objected to any aspect of the Settlement. Bravata Decl. ¶16. Not one member of the Class has submitted a valid request for exclusion. Bravata Decl. ¶15.

33.    The Long Notice, which the Court approved in the Preliminary Approval Order, describes the Plan of Allocation in full detail. Bravata Decl., Ex. D at 5-9. In collaboration with SCS and Plaintiffs' damages expert, and consistent with the federal securities laws, Rosen Law formulated the Plan of Allocation for distributing the Settlement Fund fairly and reasonably to Settlement Class Members. The Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged partial or final revelation of the truth. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and awards to Plaintiffs).

**<u>Complexity, Expense and Likely Duration of the Litigation</u>**

34.    Over the course of this litigation, on behalf of Plaintiffs and the Settlement Class, Rosen Law devoted significant time and effort prosecuting this action, including:

    a.    investigating and analyzing the allegations in preparing multiple complaints in the Action, including, among other means:

        i.    reviewing press releases, news articles, earnings call transcripts, and other public statements issued by or concerning Defendants;

        ii.    researching financial analyst reports concerning Covia;

        iii.    reviewing and analyzing Defendants' SEC filings;

        iv.    engaging a damages consulting expert to analyze damages;

        v.        retaining a private investigator to locate and to interview potential witnesses; and

        vi.        reviewing the SEC's regulatory settlement with Covia.

b.        filing amended complaint;

c.        conducting legal research in opposing Defendants' motion to dismiss the amended complaint;

d.        reviewing the Court's decision granting in part and denying in part the motion to dismiss;

e.        drafting initial disclosures and reviewing Defendant's initial disclosures;

f.        conducting a Rule 26(f) conference;

g.        drafting, negotiating, and submitting to the Court a protective order, ESI protocol, and discovery schedule

h.        drafting interrogatories and requests for production to Defendant and to Covia, negotiating Defendant's and Covia's responses thereto;

i.        responding to Defendant's interrogatories and requests for documents;

j.        reviewing an initial production from Defendant and Covia of key identifiable documents including the transcripts of the SEC's depositions of Deckard and several other Covia employees and executives

k.        reviewing over 22,000 pages of documents produced by Defendant and Covia

l.        cross-examining four of  the confidential witnesses cited in the complaint during depositions noticed by Defendant

m.        drafting a mediation statement and reviewing Defendant's mediation

8

statement;

n.      attending a full-day mediation session with Robert A. Meyer of JAMS;

o.      conducting weeks of continued negotiations through Mr. Meyer, ultimately resulting in the Settlement;

p.      finalizing the Settlement and moving for preliminary approval; and

q.      overseeing the notice program and claims administration process.

35.      Before entering into the Settlement, therefore, Lead Counsel and Plaintiffs had a thorough understanding of the strengths and weaknesses of Plaintiffs' case.

**Risks of Continued Litigation**

36.      Without a Settlement, Plaintiffs face protracted and expensive litigation that could last for years more, with no guarantee of matching or exceeding the recovery the Settlement provides now.

37.      While Plaintiffs and Lead Counsel believe that Plaintiffs' claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving and collecting a greater recovery. The Settlement provides for a cash payment of $6,000,000, while avoiding material risks that Plaintiffs and the Settlement Class might recover substantially less than the Settlement Amount or nothing at all by continuing to litigate the Action.

38.      The Parties were still in the middle of discovery, and Defendant consistently maintained that she was not liable for securities fraud. In fact, the SEC settlement that largely formed the basis for Plaintiffs' claims did not include any findings as to Defendant or as to the scienter of any specific Covia employee.

39.      Establishing damages in securities class actions is difficult. Disentangling the market's reaction to various pieces of news is complicated and requires expert analysis and

testimony, from both sides. Here, the final and largest stock price decline occurred in the wake of Covia's insolvency announcement. Plaintiffs allege that the insolvency was partly caused by the undisclosed failures of the specialty proppant products, but to the extent it was caused by other factors (such as the widely-known decline of the price of Covia's main product line, as opposed to these specialty products which never generated significant revenues) the amount of damages would be reduced proportionately. Plaintiffs would not even have claimed at trial that the entirety of the stock price declines supporting the maximum estimate of $75 million in damages were attributable to the alleged fraud.

40.     It is impossible to predict how a jury would react to this "battle of experts." A material risk exists that a jury might disagree with Plaintiffs' expert's testimony on per share damages, or the jury might find that Plaintiffs and the class suffered no damages at all. The Court might rule Plaintiffs' damages expert and/or his theory of damages is either legally or factually insufficient. In any of these circumstances, Plaintiffs could prevail on liability at trial and still the recovery could be materially less than the $6,000,000 Settlement Amount, or nothing at all.

41.     Even if Plaintiffs obtained a judgment materially in excess of the Settlement Amount after trial and recover from Defendants, the additional time that it would take to litigate this case through trial, post-trial motions, and the appellate process could deny the Settlement Class any recovery for years, further reducing the value of such a judgment.

42.     Further, Plaintiffs would have to engage in a claims process to cause as many Settlement Class members as possible to file claims. Given the passage of time, claims rates might fall materially if the Settlement Class waits much longer to receive payment.

43.     The Settlement eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive a lower or no recovery.

10

**The Settlement Resulted From Arms' Length Negotiations Between Experienced Counsel**

44.     Lead Counsel have successfully litigated securities class actions throughout the country. *See* Ex. 8 (Rosen Law firm resume); *see also* Exs. 9-10 (firm resume of additional and liaison counsel). With the assistance of Mr. Meyer as a neutral mediator, Lead Counsel negotiated with experienced, high caliber opposing counsel from Kirkland & Ellis LLP, a firm experienced in defending similar securities class actions. Given these factors, Lead Counsel believe that the Settlement is fair, adequate, and reasonable and urge this Court to approve it.

**Lead Counsel's Fee Request is Justified**

45.     Lead Counsel have worked diligently to achieve the Settlement, expending 1,190.46 hours (together with additional and liaison counsel) for a combined lodestar value of $1,006,244.50. Ex. 2 ¶5; Ex. 3 ¶5; Ex. 4 ¶5. The $2,000,000 in attorneys' fees that Lead Counsel requests represent a 1.99 multiplier of Lead Counsel's lodestar.

46.     Lead Counsel's work will not end with final approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing replies in support of its motions for final approval and for attorneys' fees, preparing for and appearing at the Settlement Hearing, overseeing the claims process, filing a motion for distribution of the Net Settlement Fund, and overseeing the distribution of the Net Settlement Fund to eligible Settlement Class Members.

47.     Lead Counsel and additional and liaison counsel spent a total of $82,181.60 in unreimbursed expenses in connection with the prosecution of this Action. Ex. 2 ¶6; Ex. 3 ¶6; Ex. 4 ¶6. Lead Counsel seeks reimbursement of those reasonable and necessary expenses incurred in prosecuting this Action. To date, Lead Counsel (together with additional and liaison counsel) have received neither compensation for their efforts nor reimbursement of necessary out-of-pocket expenses on behalf of Plaintiffs and the Settlement Class.

48.     From the outset, Lead Counsel embarked on a difficult, expensive, and likely lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiffs and the Settlement Class. In undertaking that responsibility, Lead Counsel dedicated sufficient resources to the Action, making funds available to compensate staff and to cover the expenses the Action required.

### The Requested Award to Plaintiffs is Justified

49.     For over three years, Plaintiffs have led this action on behalf of the Settlement Class, communicating with Lead Counsel regarding the litigation and the Settlement, attending an in-person hearing on lead plaintiff motions, reviewing pleadings filed in this Court, and participating in one mediation session. *See* Exs. 5-7. Plaintiffs request awards of $10,000 to Dr. Phelps, $10,000 to Mr. Baron, and $5,000 to Mr. Arjani, to compensate them for their time and service spent prosecuting this Action, supervising Lead Counsel, and securing the Settlement on behalf of the Settlement Class. These awards would represent approximately 0.4% of the Settlement Amount.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of March, 2024, in Jenkintown, Pennsylvania.

*/s/Joshua Baker*

12