# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM PLAGENS, *et al.*, | ) | Case No. 1:20-cv-2744 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| JENNIFER D. DECKARD, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT AND ASSOCIATED RELIEF

Plaintiffs are former shareholders of Covia Holdings Corporation and/or its predecessor, Fairmount Santrol Holdings Inc. On December 10, 2020, Plaintiffs filed a class action complaint alleging that violations of federal securities law caused a significant drop in the share price of Covia stock and substantial losses to Plaintiffs. Following private mediation and negotiations, the parties reached a settlement, which the Court previously approved preliminarily.

Plaintiffs move for final approval of the settlement and other associated relief. Following notice, no person filed any objection. On April 11, 2024, the Court held a hearing to determine the fairness, reasonableness, and adequacy of the settlement and took the motion under advisement. For the reasons that follow, the Court **GRANTS** Plaintiffs' motion for final approval of the class action settlement, **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorney's fees,

reimbursement of litigation expenses, and awards to Plaintiffs, and **DISMISSES** this case **WITH PREJUDICE**.

## FACTUAL AND PROCEDURAL BACKGROUND

Covia and its predecessor, Fairmont Santrol, sold sand-based proppants for use in fracking operations.  (ECF No. 50, PageID #1066.)  The market for proppants is exceedingly competitive, and the company marketed its products as premium products that would improve performance.  (*Id.*, PageID #1066–67.)  Plaintiffs allege that company officers made false and misleading statements concerning the company's products, and that the company's own data contradicted the statements.  (*Id.*, PageID #1067–68.)  In March 2019, Covia received a subpoena from the SEC investigating Covia's value-added proppants.  (*Id.*, PageID #1068.)  Jenniffer Deckard resigned as the company's chief executive officer soon after (*id.*, PageID #1071), and on June 29, 2020, Covia declared bankruptcy (*id.*, PageID #1070).  After these events, the share price declined substantially, to $0.04 per share.  (*Id.*, PageID #1105.)

In December 2020, Plaintiff William Plagens filed a complaint against Jenniffer D. Deckard, Mark E. Barrus, Michael F. Biehl, Andrew D. Eich, and Richard A. Navarre, former officers of Covia and/or Fairmont Santrol.  The complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b), and of Rule 10b-5.  On January 29, 2021, Plaintiff Sergio Baron filed a nearly identical complaint against the same Defendants.  (*Baron*, No. 1:21-cv-238, ECF No. 1, ¶¶ 17–21, PageID #4–5.)  In an Order dated August 2, 2021, and pursuant to Rule 42(a), the Court consolidated *Baron v. Deckard,* No. 1:21-cv-238, into *Plagens v.*

2

*Deckard,* No. 1:20-cv-2744.  (ECF No. 42, PageID #879.)  The settlement and this Order apply to both cases.

Following a hearing, the Court appointed Dr. Thomas Phelps as lead Plaintiff (*Id.*, PageID #898.)  Mr. Sergio Baron and Mr. Neville Arjani are also named Plaintiffs.  (ECF No. 46, PageID #913.)  In their corrected consolidated amended complaint, Plaintiffs allege that Defendants are liable for false or misleading statements that artificially inflated the value of their securities, in violation of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  (ECF No. 50, ¶¶ 204–19, Page ID #1119–1122.)

Defendants moved to dismiss the complaint for failure to state a claim.  (ECF No. 51.)  On March 30, 2023, the Court issued an order granting in part and denying in part Defendants' motion.  (ECF No. 54.)  The Court denied the motion to dismiss the claims for violations of Section 10(b) and Rule 10b-5, allowing them to proceed to discovery.  (*Id.*, PageID #2118.)  Also, the Court dismissed Mr. Barrus, Mr. Biehl, Mr. Navarre, and Mr. Eich, leaving Ms. Deckard as the sole remaining Defendant. (*Id.*)

## A.   Discovery and Mediation

The parties exchanged initial disclosures and engaged in extensive discovery, including responding to written discovery requests, review of the more than 22,000 pages of documents that Covia produced in response to a subpoena, depositions of confidential witnesses, and review of key documents from the SEC's investigation

such as its depositions of Ms. Deckard and other Covia employees and executives. (ECF No. 73, PageID #2396.)

The parties undertook extensive settlement negotiations. They engaged Robert A. Meyer of JAMS as a mediator. (*Id.*) A full-day mediation before Mr. Meyer did not result in a resolution, but the mediator continued to facilitate negotiations between the parties, culminating in the acceptance of a mediator's proposal on September 11, 2023. (*Id.*) The settlement was memorialized by the execution of the Stipulation of Settlement, finalized on October 25, 2023. (*Id.*)

### B.    Settlement

On October 27, 2023, without opposition, Plaintiffs moved for preliminary approval of the settlement. (ECF No. 71.) Under the settlement, Defendant agreed to pay a total sum of $6 million (ECF No. 71-2, ¶ 1.35, PageID #2306), consisting of several separate payments, in exchange for a release (*Id.*, ¶ 2.1, PageID #2308).

First, each Covia shareholder who is a member of the class and submits the proper forms to substantiate his or her claim will receive a *pro rata* share of the net settlement funds—the balance of the consideration for the settlement less the fees and expenses discussed below. (*Id.*, ¶ 8.2, PageID #2317.) Up to 10,195 class members will receive from the settlement fund (ECF No. 80-1, PageID #2715). That number reflects the total number of settlement class members who submitted claims. (*Id.*) Each authorized claimant will receive an amount based on a formula that determines the claimant's recognized losses and calculates his or her *pro rata* share of the net settlement funds. (*See* ECF No. 79-1, PageID #2526–29.) In exchange for these payments, Plaintiffs release Defendant from all claims that were alleged or

4

could have been alleged in this action.  (ECF No. 71-2, ¶¶ 1.31 & 1.32, PageID #2305–06; *id.*, ¶ 2.1, PageID #2308.)

Second, Strategic Claims Services will receive compensation up to $500,000 for its services in administering the settlement.  (ECF No. 71-2, PageID #2309.)  As the settlement administrator, SCS processed, printed, and mailed more than 37,000 copies of the notice of the settlement to potential class members and other relevant parties.  (ECF No. 80-1, PageID #2713; ECF No. 79-1, PageID #2510–11.)  SCS also notified more than 2,000 nominees, one of which advised that it emailed links to the notice and proof of claim to more than 19,000 of its clients.  (ECF No. 80-1, PageID #2713.)  SCS published an electronic summary notice in an online newspaper and in print.  (ECF No. 79-1, PageID #2514.)  SCS continues to process claims, allowing claimants to cure any deficiencies in their claims, and will pay authorized claimants their *pro rata* share of the net settlement.  (ECF No. 80-1, PageID #2715.)

Third, the settlement seeks to reimburse Plaintiffs for their time and any expenses incurred in the representation of the class.  (ECF No. 71-2, ¶ 8.2(c), PageID #2317.)  Pursuant to the settlement, Lead Plaintiff Dr. Thomas Phelps seeks an award of $10,000 (ECF No. 79-5, PageID #2562), as does Sergio Baron (ECF No. 79-6, PageID #2567), and Neville Arjani seeks a $5,000 award (ECF No. 79-7, PageID #2571), as compensation for their time and efforts in prosecuting this action.  Counsel represents that over the three years of litigation, Plaintiffs dedicated more than 100 combined hours to the action, communicated with counsel about its progress, attended the hearing at which the Court selected the lead plaintiff, completed

5

necessary certifications, and reviewed and discussed discovery requests and pleadings.  (ECF No. 78-1, PageID #2494–95; *see also* ECF No. 79-5, PageID #2562 (Dr. Phelps reporting 15 hours); ECF No. 79-6, PageID #2567 (Mr. Baron reporting between 50 and 70 hours); ECF No. 79-7, PageID #2570 (Mr. Arjani reporting between 50 and 70 hours).)

Finally, the settlement provides for attorneys' fees, litigation costs, taxes, and other miscellaneous administration expenses.  (ECF No. 71-2, PageID #2317.)  Class counsel, which includes lead counsel, co-counsel, and liaison counsel, seek a total award of $2 million, one-third of the total settlement amount.  (ECF No. 78-1, PageID #2471.)   They also request reimbursement for litigation expenses, totaling $82,181.60.  (*Id.*, PageID #2493; ECF No. 79, ¶ 47, PageID #2507.)  These expenses predominantly consist of professional services rendered by Plaintiffs' experts and investigators, mediation fees, and travel expenses.  (ECF No. 79-2, PageID #2548; ECF No. 79-3, PageID #2553; ECF No. 79-4, PageID #2557.)  They also cover document and deposition fees, legal research, and service of process.  (*Id.*)

### C. Preliminary Approval

On November 1, 2023, the Court granted preliminary approval of the settlement, appointed The Rosen Law Firm as interim class counsel, appointed Strategic Claims Services as the settlement administrator, and scheduled a hearing for final approval of the settlement.  (ECF No. 73, PageID #2398 & #2409.) Additionally, the Court approved the notice form and ordered the process for notice in advance of the fairness hearing.  (*Id.*, PageID #2398–2402.)

Upon preliminary approval, Plaintiffs commenced notice through the administrator, as the Court ordered. (ECF No. 79-1, ¶¶ 2–6, PageID #2510–12.) As of the settlement hearing, the administrator had caused notice to 56,169 potential Settlement Class Members, either by mail or by email of the direct link. (ECF No. 80-1, ¶ 9, PageID #2713.) The time to object or request exclusion from the class closed on March 20, 2024. (ECF No. 74.) SCS received 10,195 claims in total. (ECF No. 80-1, ¶ 8, PageID #2715.) No member of the class objected or requested exclusion. (*Id.*, ¶¶ 6 & 7, PageID #2714.)

## ANALYSIS

Under Rule 23(e), "a class proposed to be certified for purposes of settlement" requires court approval. A court may approve the settlement only after a hearing and only on a finding that the settlement "is fair, reasonable, and adequate" after considering certain factors listed in the Rule. Fed. R. Civ. P. 23(e)(2). The Rule directs the Court to consider (1) the representation class counsel provided, (2) whether the parties negotiated the settlement at arm's length, (3) the adequacy of the relief provided to the class, and (4) the treatment of class members relative to one another. *Id.* Under a prior version of the Rule, the Sixth Circuit identified additional considerations that guide the inquiry into whether a class settlement is fair, reasonable, and adequate. *See, e.g.*, *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016). These additional considerations include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of

class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.* (quoting *International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In 2018, an amendment to the Rule emphasized that the central inquiry remains whether the settlement is fair, reasonable, and adequate.

In addition, the requirements of Rule 23(e) for approval of a class settlement sit on top of the other safeguards in Rule 23 for class certification.  To obtain class certification, Plaintiffs must satisfy the four procedural requirements in Rule 23(a) and at least one requirement in Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  The Court proceeds to analyze each of these requirements under Rule 23(a), Rule 23(b), and Rule 23(e).

## I.   Certification of the Settlement Class

The settlement class consists of all persons and entities who purchased Covia and/or Fairmount Santrol common stock or purchased call options or sold put options on Covia and/or Fairmount Santrol common stock, beginning on March 10, 2016 through and including June 29, 2020.  (ECF No. 71-2, ¶ 1.36, PageID #2306.)  The settlement class excludes (a) persons who suffered no compensable losses; (b) Defendant, current and former officers and directors of the company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant or any person excluded from the class has or had a majority ownership interest at any time; and (c) persons or entities who file valid and timely requests for exclusion from the Settlement Class.

8

(*Id.*, PageID #2306–07.)  In its preliminary approval order, the Court conditionally certified this class.  (ECF No. 73, PageID #2397.)

### I.A.  Rule 23(a)

The class satisfies Rule 23(a)'s procedural requirements.  Rule 23(a) requires numerosity, commonality, typicality, and adequacy.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  The Sixth Circuit has also adopted an implicit ascertainability requirement.  *See Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (citing, among other authorities, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)).

Numerosity requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The settlement class contains more than 56,000 potential class members who purchased Covia or Fairmont Santrol securities during the class period, and more than 10,000 potential class members have submitted proof of claim forms.  (ECF No. 80-1, ¶ 8, PageID #2715.)  These numbers easily satisfy the numerosity requirement.  *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-cv-00983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (noting that a class of 40 or more is generally sufficiently numerous).

Commonality requires the class to share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  To assess commonality, courts consider whether there is a common contention that, if resolved, would address all claims "in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, the class's claims turn primarily on four issues:  (1) whether Defendant made false or misleading public statements

9

during the Class Period; (2) whether Defendant acted with scienter; (3) whether Defendant's misrepresentations artificially inflated the market price of the company's securities during the class period; and (4) whether Defendant's statements and omissions caused damages to class members. Because the answer to these questions will likely drive resolution of all claims, the class satisfies Rule 23's commonality requirement.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Where plaintiffs allegedly purchased securities and suffered damages due to defendant's misstatements or omissions, their claims are generally typical of the class. *Wilkof v. Caraco Pharm. Labs., Ltd.,* 280 F.R.D. 332, 339 (E.D. Mich. 2012). Such is the case here. The named Plaintiffs base their claims on the same conduct and present the same legal theory as those of the class members. Accordingly, the Court finds that their claims are typical of the class.

Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit articulates two criteria for determining adequacy: "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear

that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976) (citations omitted). The class satisfies both criteria. First, the named Plaintiffs have common financial interests with the unnamed class members in obtaining the largest possible recovery for their alleged losses. Second, plaintiffs submitted declarations attesting to their willingness to represent the class and do the work necessary to fulfill that responsibility. (ECF No. 8-4, PageID #306; ECF No. 36-1, PageID #722; ECF No. 50-2, PageID #1138.) Their conduct in this case supports their declarations.

Finally, ascertainability requires that a class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537–38 (citation omitted). Covia's transfer agent maintains, and shared with Defendant and the administrator, a list of all certificate or record holders who may have purchased relevant shares or options during the class period. (*See* ECF No. 71-2, PageID #2313.) Further, class members submitted proof of claim forms to allow the administrator to determine whether a claimant is a valid class member. In this case, it is administrative feasible for the administrator objectively to determine whether claimants suffered a loss during the relevant time. Accordingly, the class definition sufficiently meets the implicit ascertainability requirement of Rule 23.

### I.B.   Rule 23(b)(3)

The class also satisfies Rule 23(b)(3). To certify a class, Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

11

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In making these findings, courts consider (1) the interests of class members in individually controlling the litigation; (2) the extent and nature of any litigation concerning the dispute class members have already initiated; (3) the desirability of concentrating litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class action.  *Id.*

### I.B.1. Predominance

Predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  In securities class actions, the predominance inquiry is "readily met." *Id.*, at 625.  "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quotation omitted).  Where predominance is satisfied, if a plaintiff cannot prove at trial a common question that predominates over individual issues, the claim will fail on the merits for the entire class. *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 858 (6th Cir. 2013) (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)).

Here, the class is sufficiently cohesive.  As detailed above, each member's claim depends on Defendant's allegedly false and misleading statements and acts and whether that conduct caused the damages alleged.  Despite differences in the amount of damages for each class member, certification remains appropriate. *See Hicks v.*

12

*State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (citation omitted).  The common questions predominate.

### I.B.2. Superiority

Superiority requires courts to consider whether a class action presents "a better way than individual litigation to adjudicate a claim."  *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin*, 458 F.3d at 554).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Young*, 693 F.3d at 545 (quoting *Amchem*, 521 U.S. at 617 (citation omitted)).  Without a class action, then, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress."  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

More than 10,000 class members have submitted proof of claim forms.  Because of the varying individual recoveries, few if any class members have an incentive to bring an individual action.  Accordingly, the Court finds that a class action is a superior method of adjudicating this dispute.  *See Amchem*, 521 U.S. at 617.

\*   \*   \*

The Court finds that the class meets the requirements of Rule 23(a) and Rule 23(b)(3); therefore, the Court **CERTIFIES** the following class for purposes of settlement:

> All persons and entities who purchased Covia and/or Fairmount Santrol common stock, or purchased call options or sold put options on Covia and/or Fairmount Santrol common stock, between March 10, 2016 and

June 29, 2020, both dates inclusive, and were damaged thereby, except for those excluded in the Settlement (ECF No. 71-2, ¶ 1.36, PageID #2306–07) as set forth above.

## II.    Appointment of Class Counsel

Where a court certifies a class, it must appoint class counsel.  Fed. R. Civ. P. 23(g)(1).  Previously, the Court appointed The Rosen Law Firm, P.A. on an interim basis.  (ECF No. 73, PageID #2398.)  The Rosen Law Firm associated with Glancy Prongay & Murray LLP as additional counsel.  (*See* ECF No. 78, PageID #2490 n.5.) The Court also previously approved Karon LLC as liaison counsel.  (ECF No. 43.)

A court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)."  Fed. R. Civ. P. 23(g)(2).  Under Rule 23(g)(1)(A), the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Also, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Finally, Rule 23(g)(4) requires class counsel to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Based on these factors, the Court finds that the lawyers and firms representing Plaintiffs satisfy Rule 23(g)(1) and (4).  They have thoroughly identified and investigated the potential claims.  During the litigation, the firms successfully opposed in part a motion to dismiss, reviewed voluminous documents in discovery,

14

and participated in mediation and negotiation and implementation of the settlement. Each is experienced in securities class actions. As to the third factor, counsel's briefing throughout the litigation demonstrated sufficient knowledge of the law. Finally, counsel has committed significant resources to represent the class. On a contingent basis, The Rosen Law Firm had at least nine attorneys who report working nearly 1,000 hours on the matter. GPM invested more than 180 hours on the matter, and Karon LLC spent another 75 hours.

On this record, and because counsel has vigorously represented Plaintiffs, the Court finds that The Rosen Law Firm as lead counsel, Glancy Prongay & Murray LLP as additional counsel, and Karon LLC as liaison counsel have and will fairly and adequately represent the class. Accordingly, the Court **APPOINTS** The Rosen Law Firm as class counsel.

## III. Approval of the Settlement

Under Rule 23, approval of a class action settlement occurs in three stages. *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (citations omitted). First, the court preliminarily approves the parties' proposed settlement. *Id.* Second, the parties provide class members notice of the proposed settlement. *Id.* Finally, following a hearing, the court issues final approval. *Id.* Previously, the Court granted preliminary approval on November 20, 2023, after which the parties commenced the notice process. (ECF No. 73.) At this third and final stage, a court determines whether the notice process was sufficient and whether the proposed settlement agreement is fair, reasonable, and adequate. *Harsh v. Kalida Mfg., Inc.*, No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021).

15

### III.A. Sufficient Notice

Rule 23(c)(2)(B) requires all members of a class certified under Rule 23(b)(3), who can be identified through reasonable effort, to receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice "must clearly and concisely state in plain, easily understood language" all the information specified in Rule 23(c)(2)(B)(i)–(vii). *Id.* Further, the notice must comply with due process. *See Barnes v. Winking Lizard, Inc.*, No. 1:18-cv-952, 2019 WL 1614822, at *4 (N.D. Ohio Mar. 26, 2019); *Harsh*, 2021 WL 4145720, at *4.

In granting preliminary approval, the Court approved the class notice form and the protocol for distribution as consistent with Rule 23(c)(2)(B) and due process. (ECF No. 73, PageID #2358.) Therefore, the question becomes whether the results of the notice process uncovered inadequacies. *See Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *4 (S.D. Ohio Nov. 5, 2020). Based on its independent review of the record, the Court finds none. Strategic Claims Services sent initial class notices by first-class mail to potential members of the settlement class. (ECF No. 79-1, ¶ 4, PageID #2511.) Additionally, because many of the potential settlement class members purchased or owned securities through third-party banks, brokerage accounts, mutual funds, or other institutional groups, Strategic Claims Services mailed letters to a master list of 2,155 nominees. (*Id.*, ¶ 5, PageID #2512.) The letters directed the nominees either to contact customers who may be beneficial purchasers or owners or to provide Strategic Claims Services with a list of names and contact details. (*Id.*) Some nominees disseminated notice further. (*Id.*, ¶¶ 7 & 8, PageID #2512–13.)

16

In total, 56,169 settlement class members received notice. (*Id.*, PageID #2513.) These results suggest that no material deficiencies in notice occurred. Accordingly, the Court finds that the notice was the best practicable under the circumstances, as required under Rule 23(c)(2)(B), and was consistent with due process.

Defendants complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715. (*See* ECF No. 79-1, ¶ 2, PageID #2510–11.)

### III.B. Settlement Terms

Under Rule 23(e)(2), a court may approve a proposed class settlement "*only . . . after* considering whether" (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided is adequate; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D) (emphasis added). Where relevant, the Court may also consider the factors set forth in *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *see McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 661–62 (N.D. Ohio 2023) (discussing the 2019 amendment to the Rule and factors to apply when considering final approval of a class action settlement).

### III.B.1. Adequate Representation

Rule 23(e)(2)(A) requires a court to consider the "actual performance" of class representatives and counsel. *McKnight*, 655 F. Supp. 3d at 662; *see also* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. This factor repeats "the requirements of Rule 23(a)(4) and Rule 23(g)." 4 *Newberg and Rubenstein on Class*

*Actions* § 13:49 (6th ed.).  In this case, class counsel and Plaintiffs have performed satisfactorily.  Class counsel expended over 1,100 hours contesting the case, engaging in discovery, and undertaking mediation and settlement negotiations.  (ECF No. 79-2, PageID #2547; ECF No. 79-3, PageID #2552; ECF No. 79-4, PageID #2557.) Additionally, the named Plaintiffs communicated with counsel, assisted with discovery, and took an active role in the litigation.  (ECF No. 79-5; ECF No. 79-6; ECF No. 79-7.)  This factor weighs in favor of approval.

### III.B.2. Arm's Length Negotiation

Under Rule 23(e)(2)(B), the Court inquires whether the parties have negotiated the settlement at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  "This inquiry aims to root out . . . 'collusive settlements.'"  4 *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed.); *see also UAW*, 497 F.3d at 631.  Nothing in the record suggests any evidence of collusion.  The parties engaged in an adversarial bargaining process at each stage of the litigation.  They exchanged substantial discovery, involving more than 22,000 pages of documents.  (ECF No. 79, ¶ 26, PageID #2501.)  Further, the parties reached the settlement through a neutral mediator and spent several weeks after the mediation negotiating the final terms of the settlement agreement.  (ECF No. 79-11; ECF No. 79, ¶ 28, PageID #2502.)  Accordingly, the Court is satisfied that parties negotiated the settlement at arm's length.

### III.B.3. Adequate Relief

When determining whether the adequacy of relief, the Court must take into account:  "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing

class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Considering all of these factors, as explained below, the Court finds that the relief provided—$6,000,000—is adequate.

### III.B.3.i. Costs, Risks, and Delay

Here, the costs, risks, and delay of litigation, trial, and appeal warrant approval. Continued litigation would be costly. "Courts recognize that securities class actions are generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-6728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020). In this case specifically, where Defendant denies the allegations and has multiple defenses she would advance, continued litigation would be protracted and costly.

Additionally, continuing litigation presents substantial risks. At trial, Plaintiffs would need to prove loss causation and damages, which would involve conflicting expert testimony. Proving causation would present particular challenges on this record as Defendant contests whether her resignation and the company's insolvency, two factors that led to the decline in share price, were related to the alleged misrepresentations. These complexities also suggest that the litigation could extend for years, through appeal, without any certainty about the eventual outcome.

In the face of these risks and uncertainties, the settlement provides a recovery in a timely manner that reasonably accounts for the various risks associated with continued litigation.

### III.B.3.ii. Effectiveness of Distribution Method

The method of distribution also justifies approval. This factor requires the Court to ensure that claims processing (1) facilitates filing legitimate claims and (2) is not unduly demanding. Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. The settlement agreement accomplishes both goals. It provides multiple forms of notice and allows claimants to submit a claim form by mail or online. (ECF No. 71-4, PageID #2359.) Because no person has complete investor trading data or information, this method is necessary to effect the broadest possible notice. Also, claimants have the opportunity to cure any defects and to request review of a denied claim. (ECF No. 73, PageID #2404–05.) The administrator will distribute a *pro rata* share of the net settlement fund to authorized claimants. (ECF No. 71-4, PageID #2355.) Accordingly, the Court finds that these procedures facilitate legitimate claims and effectively distributes settlement proceeds.

### III.B.3.iii. Attorneys' Fees and Timing

A Court must examine the attorneys' fees requested and the timing of their payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). In this case, class counsel seeks $2,000,000 in attorneys' fees, which amounts to one-third of the settlement fund. (ECF No. 78-1, PageID #2471.) On this record, and for the reasons more fully discussed below, the Court finds that the requested amount of attorneys' fees is a reasonable percentage of the settlement as authorized under the Reform Act, 15 U.S.C. § 78u-4(a)(6), and does not compromise the adequacy of relief.

### III.B.3.iv. Rule 23(e)(3) Agreements

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).  In addition to the stipulated settlement (ECF No. 71-2), the parties also executed a supplemental agreement which gives Defendant the right to terminate the settlement if a certain threshold of class members opt out.  (ECF No. 71-2, ¶ 10.3, PageID #2322–23.)  Because no class member opted out of the settlement, this agreement has no bearing on the adequacy of the settlement.  Because it did not "influence the terms of the settlement," this sub-factor supports the adequacy of relief.  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment; *see also Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-2631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *Hospital Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Momenta Pharms., Inc.*, No. 3:15-cv-01100, 2020 WL 3053467 (M.D. Tenn. May 29, 2020).

### III.B.4. Equitable Treatment of Class Members

The final factor under Rule 23(e)(2) requires the Court to determine whether the settlement agreement treats class members equitably. Fed. R. Civ. P. 23(e)(2)(D). This factor "ensure[s] that similarly situated class members are treated similarly." 4 *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed.).  The settlement meets this standard.  Under the settlement, claimants who suffered losses on their securities during the settlement class period will receive a *pro rata* distribution of the funds, proportional to their loss amount.  (ECF No. 79-1, PageID #2526–29.)  This approach "takes appropriate account of differences among [each class member's]

21

claims," specifically their individual losses compared to those of others.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  And the named Plaintiffs are treated no more preferentially than other settlement class members.  Because the settlement agreement treats class members equitably, the fourth factor is met.

### III.B.5.  Objections by Class Members

Finally, the Court determines that the reaction of the class, another *UAW* factor, has relevance here.  *UAW*, 497 F.3d at 631.  Despite notice to more than 56,000 potential class members, not one sought exclusion or objected to the settlement.  (ECF No. 80-1, ¶¶ 6 & 7, PageID #2714.)  This result, uncommon in the Court's experience, lends strong support to approval of the class as fair, adequate, and reasonable.  *See Gresky v. Checker Notions Co. Inc.,* No. 3:21-cv-01203, 2022 WL 3700739, at *6 (N.D. Ohio Aug. 26, 2022); *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corp.*, No. 20-12698, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022).

\*     \*     \*

The factors listed in Rule 23(e)(2) favor final approval.  Therefore, the Court **APPROVES** the settlement as fair, reasonable, and adequate.  In accepting these terms, the Court **APPROVES** the release of Plaintiffs' claims as provided in the settlement agreement, including the waiver by Plaintiffs and each member of the settlement class (as defined in Section 1.36 of the Settlement Agreement) of the provisions, rights, and benefits of California Civil Code § 1542, and any comparable provision of any law, which provides:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

## IV.  Attorneys' Fees

Under the Private Securities Litigation Reform Act, Congress limits total attorneys' fees and expenses to a "reasonable percentage of the amount of any damages . . . actually paid to the class." 15 U.S.C. § 78u-4(a)(6). "A district court may rely on . . . its own knowledge and experience" when determining the reasonableness of attorneys' fees. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011); *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009). Based on the Court's knowledge and experience, one-third of the total settlement amount is a reasonable percentage of attorneys' fees. Additionally, the settlement allocates up to $500,000 for notice and administration and $82,181.60 in costs—bringing the total fees and expenses to 43% of the settlement amount. In the Court's experience, these expenses for notice and administration and the costs associated with this litigation are not unreasonable, and the total percentage of the settlement actually paid to the class is reasonable. Because the Reform Act specifically addresses attorneys' fees, the Court need not engage in a lodestar crosscheck or a percentage-of-the-fund analysis that would otherwise apply in, say, a settlement of a consumer class action.

## V.  Litigation Expenses and Administration Costs

Class counsel also asks the Court to approve a payment of $82,181.50 to reimburse litigation expenses incurred. (ECF No. 78-1, PageID #2492.) Generally,

class counsel is entitled to reimbursement of all reasonable and necessary expenses incurred in the prosecution and settlement of the claims. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). The expenses represent services rendered by Plaintiffs' experts and investigators, mediation fees, travel expenses, document and research fees, and other expenses of a type typically incurred in litigation.

Costs incurred for the purpose of providing notice to class members are also reimbursable. *See, e.g., Thompson v. Seagle Pizza, Inc.*, No. 3:20-cv-16, 2022 WL 1431084, at *13 (W.D. Ky. May 5, 2022); *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-00411, 2023 WL 3204684, at *9 (S.D. Ohio May 2, 2023); *Treviso v. National Football Museum, Inc.*, No. 5:17-CV-00472, 2024 WL 753560 (N.D. Ohio Feb. 12, 2024). Class counsel seek up to $500,000 for payment to the designated claims administrator, which the Court previously granted. (ECF No. 73, ¶ 22, PageID #2402.) Because the claims administrator continues to identify proper class members and finalize the list of class members for distribution of the settlement amount, the final sum of administrative costs incurred is not yet known.

Accordingly, the Court **APPROVES** the payment of $82,181.50 in litigation expenses and up to $500,000.00 in costs for administration of the settlement.

## VI. Service Awards

Finally, Plaintiffs request that the Court approve awards to individual Plaintiffs as follows: $10,000 to Lead Plaintiff Thomas Phelps, $10,000 to named Plaintiff Sergio Baron, and $5,000 to named Plaintiff Neville Arjani. (ECF No. 78-1, PageID #2493.) With respect to these awards, which would extend beyond Plaintiffs'

*pro rata* shares, and are variously called incentive awards, compensatory awards, or service awards, there is a split of authority. *See McKnight v. Erico Corp.*, 655 F. Supp. 3d at 668–69 (summarizing a circuit split on the propriety of such awards). But the Court need not wade into that split of authority because here too, as with attorneys' fees and expenses, Congress has spoken. Under the Reform Act, a representative party serving on behalf of a class may not receive an award beyond his *pro rata* share, except that a court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4).

Consistent with this statutory limitation, all three named Plaintiffs here currently seeking awards certified that they would not "accept any payment for serving as a representative party beyond his pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation," as required under the Reform Act. *See* 15 U.S.C. § 78u-4(a)(2)(A)(vi); ECF No. 8-4, PageID #306; ECF No. 36-1, PageID #722; ECF No. 50-2, PageID #1138.

Notwithstanding the statute and their certifications, Plaintiffs seek service or incentive awards "as compensation for [the Plaintiffs'] time and efforts spent prosecuting the Action and securing the Settlement for the Settlement Class." (ECF No. 78-1, PageID #2493.) Specifically, Dr. Phelps, as lead Plaintiff, declares that he spent "approximately 15 hours" assisting the litigation in this case. (ECF No. 79-5, ¶ 6, PageID #2562.) He characterizes this time as time that could have been spent

on other activities.  (*Id.*)  Mr. Baron estimates that he spent "between 50 and 70 hours" on this litigation, and similarly requests $10,000 as reimbursement for this time, which he acknowledges could have been spent on other activities.  (ECF No. 79-6, PageID #2567.)  Finally, Mr. Arjani requests a compensatory award of $5,000, estimating that he spent 50–70 hours overseeing the prosecution of this case.  (ECF No. 79-7, PageID #2570.)

Under the Reform Act, "reasonable costs and expenses" do not extend to "a traditional 'compensation' or 'incentive' award."  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL-1446, 2008 WL 2714176, at *3 (S.D. Tex. July 10, 2008). Nor do they include fees to compensate for time generally spent on the litigation outside of lost wages.  *In re AMF Bowling*, 334 F. Supp. 2d 462, 470 (S.D.N.Y 2004). Generalized requests for compensation fail to provide a basis under the Reform Act for a payment to a representative plaintiff that the statute permits.  *See, e.g.*, *In re AMF Bowling*, 334 F. Supp. 2d at 470 (denying awards to class representatives because an affidavit testifying to the hours spent in litigation and a reasonable rate was insufficient to demonstrate a recoverable expense under the statute); *In re Yahoo! Inc. Sec. Litig.,* No. 17-cv-00373 & No. 17-cv-01525, 2018 WL 4283377, at *2–3 (N.D. Cal., Sept. 7, 2018) (denying requested awards because the plaintiffs failed to demonstrate that amounts sought arose from actual costs and expenses incurred); *In re Enron Corp.*, 2008 WL 2714176, at *6 (denying the lead plaintiffs' request for an award based on time spent on the litigation); *In re KeySpan Corp. Sec. Litig.*, No. 01-cv-5852, 2005 WL 3093399, at *21 (E.D.N.Y. Sept. 30, 2005) (recommending against

26

an award because Plaintiffs failed to provide "any proof or detail" whether they incurred reimbursable expenses).

Here, no Plaintiff's declaration attests to lost wages or out-of-pocket expenses or costs, such as travel, copying costs, or the like. Indeed, none represents that he missed work or that the time accounted for occurred during work hours—just that he could have used the time on other activities, something that goes without saying. Nor does any Plaintiff make an effort to justify reimbursement at an unsubstantiated rate between $142.86 and $200.00 per hour (in the case of Mr. Baron). Because Plaintiffs make no showing of lost wages or expenses compensable under the Reform Act, the Court **DENIES** the request for service awards (under whatever name) to the named Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for class certification, final approval of the settlement, and associated relief, except to the extent the motion seeks awards to the named Plaintiffs beyond their *pro rata* shares of the settlement. (ECF No. 77; ECF No. 78.) In doing so, the Court **ORDERS** that the settlement agreement be implemented according to its terms and conditions except where stated; and:

**CERTIFIES** the Rule 23 class for purposes of settlement;

**APPOINTS** The Rosen Law Firm as class counsel;

**APPOINTS** Plaintiffs as class representatives;

27

**APPROVES** settlement of the securities class action, including the plan of allocation and notice procedure;

**APPROVES** the release of Plaintiffs' claims;

**AWARDS** The Rosen Law Firm $2,000,000 in attorney's fees;

**APPROVES** the payment of $82,181.60 in litigation expenses and up to $500,000 in settlement administration costs; and

**DENIES** the $10,000 service award to Dr. Phelps, the $10,000 service award to Mr. Baron, and the $5,000 service award to Mr. Arjani.

Pursuant to Paragraph 8.1 of the settlement (ECF No. 71-2, PageID #2317), the Court **ORDERS** Class Counsel to apply for distribution of the settlement fund. Further, the Court **DISMISSES** this action **WITH PREJUDICE**. The Court retains jurisdiction over the implementation, administration, interpretation, and enforcement of this settlement.

**SO ORDERED.**

Dated: May 9, 2024

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio

28